Kenneth A. Goldberg, Esq. (KG 0295)
**GOLDBERG & FLIEGEL LLP**
60 East 42nd Street, Suite 3421
New York, New York 10165
(212) 983-1077
Attorneys For The Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
TASSO KOUMOULIS, CHRISTOS HATZIS,
DOMINIC MILITO, AND PETER            :    **10-CIV-0887**
DAFNIOTIS,
                                     :    **AMENDED COMPLAINT**
            Plaintiffs,                   **AND JURY DEMAND**
                                     :
        - against -                       **JURY TRIAL DEMANDED**
                                     :
INDEPENDENT FINANCIAL MARKETING
GROUP, INC., LPL FINANCIAL           :
CORPORATION, AND ASTORIA FEDERAL
SAVINGS AND LOAN ASSOCIATION,        :

            Defendants.              :

- - - - - - - - - - - - - - - - x


## NATURE OF THE ACTION AND THE PARTIES

1.   This is an action to redress unlawful discrimination
and harassment based on religion, race, color, national origin,
age and/or disability, unlawful retaliation, and unlawful
employment practices, under Title VII of the Civil Rights Act of
1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq.; the
New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. L. §
290 et seq.; the New York City Human Rights Law, (the "NYCHRL"),
N.Y.C. Admin. Code § 8-101 et seq.; the Age Discrimination in
Employment Act of 1967, as amended (the "ADEA"), 29 U.S.C. § 621
et seq.,; the Americans with Disabilities Act (the "ADA"), 42
U.S.C. § 12101 et seq.; and the Civil Rights Act of 1866, as
amended ("Section 1981"), 42 U.S.C. § 1981 et seq.

2.     Plaintiffs Tasso Koumoulis, Christos Hatzis, Dominic Milito, and Peter Dafniotis are adult males, residing in New York and in the counties of Queens or Nassau.

3.     Upon information and belief, Independent Financial Marketing Group, Inc., is a Delaware corporation with a place of business at 100 Manhattanville Road, Purchase, New York 10577.

4.     Upon information and belief, LPL Financial Corporation is a California corporation, with a principal office at 9785 Towne Centre Drive, San Diego, California 92121.  Upon information in belief, in or about 2007 or 2008, LPL Financial Corporation acquired Independent Financial Marketing Group, Inc. Independent Financial Marketing Group, Inc. and LPL Financial Corporation are individually and collectively referred to herein as "LPL Financial."

5.     Upon information and belief, Astoria Federal Savings and Loan Association (also known as Astoria Federal Savings Bank) is a corporation with a place of business at One Astoria Federal Plaza, Lake Success, New York 11042.  Astoria Federal Savings and Loan Association is referred to herein as "Astoria."

6.     Each Plaintiff seeks to hold Defendants jointly and severally liable under various legal doctrines, including without limitation, integrated enterprise, single employer doctrine, alter ego, respondeat superior, joint employer doctrine, agency, successor liability, identity of interests, aiding and abetting liability, and/or other grounds.

-2-

## JURISDICTION AND VENUE

7.   This Court has jurisdiction over Plaintiffs' claims pursuant to federal law, including Title VII, 42 U.S.C. § 2000e-5(f), the ADEA,  29 U.S.C. §§ 216(b), 626(b) to (d), the ADA, 42 U.S.C. § 12101 et seq., Section 1981, 42 U.S.C. §§ 1981, 1981a, 1988, and 28 U.S.C. §§ 1331, 1343, 1367(a) and 2201.

8.   Venue is proper in this district pursuant to federal law, including Title VII, 42 U.S.C. § 2000e-5(f)(3), the ADEA, 29 U.S.C. §§ 216(b), 626(b) to (d), the ADA, 42 U.S.C. § 12101 et seq., Section 1981, 42 U.S.C. § 1981, 1981a, 1988, and 28 U.S.C. § 1391.

9.   In or about March 2008, each Plaintiff filed a timely charge of discrimination, harassment and retaliation with the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiffs supplemented and/or amended their EEOC Charges.

10.  In December 2009, the EEOC issued a Notice of Right To Sue Letter for each Plaintiff.

11.  Plaintiffs mailed a copy of this Complaint to the New York City Commission of Human Rights and the New York City Corporation Counsel.

12.  Plaintiffs filed this lawsuit in a timely fashion and satisfied all of the statutory prerequisites to filing same.

13.  Each Plaintiff seeks an award of appropriate relief.

-3-

## INTRODUCTION

14.   Plaintiffs Dominic Milito ("Mr. Milito"), Christos Hatzis ("Mr. Hatzis") and Tasso Koumoulis ("Mr. Koumoulis") are former employees of LPL Financial and Plaintiff Peter Dafniotis ("Mr. Dafniotis") is a current employee of LPL Financial.

15.   Plaintiffs worked for LPL Financial, within various branches of Astoria.

16.   Mr. Milito was employed by LPL Financial from about June 2005 to June 2007, when he was unlawfully constructively discharged.

17.   Mr. Hatzis was employed by LPL Financial from about March 2005 until February 2008, when he was unlawfully discharged.

18.   Mr. Koumoulis was employed by LPL Financial from about 2004 until September 2009, when he was unlawfully discharged.  At the time of his discharge, he was 58 years old.

19.   Mr. Dafniotis has been employed by LPL Financial since about 2005.

20.   At all relevant times, Plaintiffs were qualified for their positions with Defendants.  Plaintiffs were often among the top producers, and most Plaintiffs were Pride & Glory recipients (award trip for top producers) and members of the President's Council or Executive Council.  For many years, Mr. Koumoulis was one of the top insurance revenue producers.

21.   Plaintiffs are of the Greek Orthodox religion and Plaintiffs Koumoulis, Hatzis and Dafniotis are of Greek ancestry,

-4-

ethnicity and/or heritage.  In 2004, Mr. Milito was baptized into the Greek Orthodox religion.

22.  Defendants discriminated against Plaintiffs (and/or aided and abetted same) because of religion, national origin, and/or race/color.  Defendants also unlawfully discriminated against Mr. Hatzis (and/or aided and abetted same) based on disability, and Defendants also unlawfully discriminated against Mr. Koumoulis (and/or aided and abetted same) based on age.

23.  Defendants unlawfully discriminated against Plaintiffs regarding compensation, terms, conditions and privileges of employment, and employment opportunities, and unlawfully harassed them, forced them to work in a hostile work environment, unlawfully retaliated against them, unlawfully discharged Plaintiffs Hatzis and Koumoulis, and unlawfully constructively discharged Plaintiff Milito, and/or aided and abetted the above unlawful conduct.

24.  During Plaintiffs' employment, Defendants made discriminatory compensation decisions and adopted discrimination compensation practices, and subjected Plaintiffs to discriminatory compensation decisions and discriminatory compensation practices, and/or aided and abetted the above unlawful conduct.

25.  Plaintiffs opposed, objected to and complained about the conduct.  However, Defendants failed to take appropriate remedial action and failed to put an end to the unlawful conduct. Defendants unlawfully retaliated against them for objecting to,

opposing and complaining about unlawful discrimination and harassment, and/or aided and abetted the above unlawful conduct. This included, among other items, unlawful constructive discharge of Mr. Milito and unlawful discharge of Mr. Hatzis and Mr. Koumoulis.

26.   Defendants' proffered reason for their conduct was a pretext for unlawful discrimination and retaliation.

## EXAMPLES OF DISCRIMINATORY COMMENTS BY MATT BAVAL, MANAGER

27.   During Plaintiffs' employment, and from at least 2005 forward, Matt Baval, Sales Manager, repeatedly discriminated against Plaintiffs and harassed them because of their religion, national origin and/or race/color (heritage, ethnicity and/or ancestry).

28.   Some examples of Mr. Baval's conduct are listed below.

29.   Mr. Baval stated that he wanted to "get those Greenpoint Greeks", which was a reference to Plaintiffs, who had previously worked for Greenpoint Financial Advisors.

30.   During 2006 Greek Holy Week, Mr. Baval was at the Glendale branch of Astoria and said to Mr. Dafniotis "He's not even a real Greek anyway, he's just married to one", referring to Mr. Milito. Mr. Baval asked about Mr. Milito's' religion, marriage and conversion to the Greek Orthodox religion.  Mr. Baval stated that Mr. Milito was using the Greek Religion as an excuse for taking off from work.  During the summer of 2006, Mr. Milito also observed a 40-day mourning period for the death of a relative.

-6-

31.   In or about March 2007, during a Pride & Glory trip to California, Mr. Baval said "Lazy Greeks" referring to Plaintiffs.

32.   In or about the week of March 19, 2007, after the Pride & Glory trip, Mr. Baval was at the Beechhurst branch of Astoria and said "Is your girlfriend Greek because she has a big mouth," referring to Mr. Hatzis' girlfriend.

33.   On or about March 27, 2007, during a telemarketing session at the call center located at 2000 Marcus Avenue in Lake Success, Mr. Baval said to Mr. Hatzis "Are you still going out with the Greek Boutana?"

34.   On or about April 4, 2007, during a unit meeting/call night at the call center located at 2000 Marcus Avenue, Lake Success, Mr. Baval made discriminatory comments about "Greek Holy Week." Mr. Baval made such comments to Mr. Dafniotis in the presence of other financial consultants.  These comments include "What's going on?" and "Is it some kind of Greek week this week?'

35.   On or about April 7, 2007, Mr. Baval was at the West Hempstead branch of Astoria and made discriminatory comments about "Greek Holy Week" in the presence of Mr. Hatzis, including without limitation comments about Mr. Hatzis and the other Plaintiffs, including:

A.       "You must be real holy to miss work"

B.       "How holy are the other Greek guys"

C.       "Is it still Greek week?"

36.   On multiple occasions, Mr. Baval said to Mr. Hatzis and/or Mr. Dafniotis, "What's the matter you Greeks can't afford

-7-

a razor" Mr. Baval made such comments at branch visits, unit meetings, and telemarketing sessions.

37.   On multiple occasions, Mr. Baval said "You hairy Greeks don't shave" and made such comments to Mr. Hatzis and/or Mr. Dafniotis.  Robert Elbogen (former regional manager for Astoria) also made discriminatory comments.  On one occasion, Mr. Baval and Mr. Elbogen entered the Glendale branch of Astoria, approached Mr. Dafniotis, and made discriminatory comments about hairy Greeks.  Mr. Elbogen took a quarter out of his pocket, tossed it on Mr. Dafniotis' desk and said "Go out and buy a razor."  Mr. Baval also made discriminatory comments.

38.   On multiple occasions, Mr. Baval told a financial consultant to "Stay away from the Greenpoint Greeks", which was a reference to Plaintiffs.

39.   In or about September 2007, Mr. Baval was at the Glendale branch of Astoria and said to Mr. Dafniotis, "What's with you fucking Greeks and diners don't you know anything else", saying that the diner business was the only thing Greeks could do for a living. He said that Greeks weren't capable of doing anything else for a living.  Mr. Baval also commented to Mr. Dafniotis "Why aren't you in the diner business".   Mr. Baval also told Mr. Dafniotis that "off-the-boat Greeks" only knew the diner business.

40.   At a monthly unit meeting in or about July 2008, Mr. Louis Mastropietro (program manager) said to Mr. Dafniotis: "Hey Mr. Gillette, can't afford a razor?" and Mr. Baval laughed.

-8-

## ADDITIONAL FACTS REGARDING MR. MILITO

41.  As noted above, Mr. Baval (and others), repeatedly made discriminatory and harassing comments to Plaintiffs.

42.  In or about the late Summer to early Fall 2006, Mr. Milito told Mr. Baval that he was prepared to file a complaint with Human Resources.  Mr. Baval then threatened Mr. Milito's job and continued making discriminatory and harassing comments.

43.  In June 2007, Mr. Milito was unlawfully constructively discharged as a result of the discrimination and harassment.

44.  At that time, Mr. Milito filed a complaint with Defendants.  Specifically, Mr. Milito filed a complaint during his exit interview with Julie Lopez.  Mr. Milito complained about Mr. Baval's behavior and conduct as a manager.  Mr. Milito complained about Mr. Baval's discriminatory comments.  Mr. Milito was afraid that if he provided too much detail, Mr. Baval would seek to defame Mr. Milito on his securities license through the Form U-5 that needed to be filed with NASD (now FINRA).

45.  Julie Lopez told Mr. Milito that Mr. Baval would be told if any complaints were made about him, which indicated to Mr. Milito that Mr. Baval would know that it was Mr. Milito that made such a complaint.  Defendants never got back to Mr. Milito regarding his complaint to Ms. Lopez.

46.  The "exit interview" documents regarding Mr. Milito confirm that Mr. Milito complained to Defendants about Mr. Baval.

47.  Mr. Milito submitted a letter of separation to Defendants dated June 1, 2007, stating among other items, "it

saddens me to have to make this decision", which was a reference
to his constructive discharge.

### ADDITIONAL FACTS REGARDING MR. HATZIS

48.   In or about June 2007, Mr. Hatzis commenced a protected
medical leave under the Family and Medical Leave Act of 1993 (the
"FMLA"), 29 U.S.C. § 2601 et seq. to care for his own serious
health condition and disability, which included among other
items, major depressive disorder.

49.   In or about the first week of November 2007, Mr.
Hatzis' father was gravely ill with terminal cancer. Mr. Baval
asked Mr. Hatzis if the family had considered putting his father
in a hospice. Mr. Hatzis responded said no.  Mr. Baval said
"Yeah, I guess it's that off-the-boat Greek mentality."

50.   In November 2007, Mr. Hatzis' father passed away.  Mr.
Baval came to the wake and made discriminatory and harassing
comments.

51.   For example, Mr. Baval told Mr. Hatzis that "these
Greek wakes go on forever", "they really know how to stretch
things out", "like a big production."

52.   Mr. Baval also said "You Greeks are all drama at these
wakes."  Messrs. Dafniotis and Koumoulis witnessed this comment,
which was made in the presence of other guests, such as family
and friends of the Hatzis family, and other employees.

53.   In December 2007, Mr. Hatzis (and Mr. Milito) executed
affidavits in support of an EEOC Charge (Charge Number 520-2008-

-10-

00470) filed by Maria Mauceli against Independent Financial
Marketing Group, Inc. and others.

54.  On or about December 3, 2007, Mr. Hatzis filed an
internal complaint with Mary Healy, Human Resources, regarding
Mr. Baval.

55.  While Mr. Hatzis was mourning his deceased father and
suffering from major depressive disorder, Marjorie Robertson
called Mr. Hatzis.  Ms. Robertson indicated that she was an
attorney representing Independent Financial Marketing Group.  Mr.
Hatzis advised Ms. Robertson that he was ill and requested that
such discussion be deferred until after his period of mourning.
She was seeking information to defend against Mr. Hatzis' claims.

56.  In January 2008, Mr. Hatzis spoke with Ms. Robertson by
phone.  She attempted to intimidate Mr. Hatzis and deter him from
pursuing his complaints.  Defendants never got back to Mr. Hatzis
with the results of any alleged investigation and never offered
Mr. Hatzis a transfer or other change regarding his position.

57.  In or about the first quarter of 2008, Mr. Baval was at
a unit meeting in the Lake Success office.  Mr. Baval said to Mr.
Dafniotis, "This 40 day mourning period is fucked up, bad for
business", which was a reference to Mr. Hatzis observing a 40 day
mourning period for the death of his father.

58.  Defendants unlawfully terminated Mr. Hatzis by letter
dated February 20, 2008.  At that time, Mr. Hatzis was on a
medical leave of absence, his doctors had previously diagnosed

-11-

him with severe, major depression and anxiety disorder, and he
was scheduled to return to work on or about March 31, 2008.

### ADDITIONAL FACTS REGARDING MR. KOUMOULIS

59.   In addition to the numerous incidents of discriminatory
comments about Greeks, Mr. Baval made numerous discriminatory
comments to Mr. Koumoulis (or about him) based upon his age.

60.   For example, Mr. Baval repeatedly said "Old man",
referring to Mr. Koumoulis.

61.   For example, Mr. Baval said "Turn up your hearing aid,"
referring to Mr. Koumoulis.

62.   For example, Mr. Baval said "Is it past your bedtime",
referring to Mr. Koumoulis.

63.   Mr. Baval made discriminatory remarks about Mr.
Koumoulis' age in a unit meeting with about 15 other employees
present.  A financial consultant said "who woke him up" referring
to Mr. Koumoulis.  Mr. Baval said "Is it past your bedtime?"  A
financial consultant mimicked Mr. Koumoulis about not hearing
something.  Mr. Baval said "Turn up your hearing aid."

64.   In addition, other discriminatory comments were made to
Mr. Koumoulis, including among others, "are you sleeping," "can
you hear us" and "get up."

65.   On Mr. Koumoulis' 2007 semi-annual performance
evaluation, Mr. Baval indicated that he thought that Mr.
Koumoulis should have stayed in Woodside.

66.   On or about January 9, 2008, Mr. Koumoulis complained
to Mary Healy, Human Resources, about Mr. Baval.  Mr. Koumoulis

-12-

reiterated that Mr. Hatzis and Mr. Milito had already complained about Mr. Baval.  Mr. Koumoulis and Defendants exchanged correspondence over a period of days.  Defendants did not take appropriate remedial action in response to Mr. Koumoulis's complaint.

67.  As noted above, in or about March 2008, Mr. Koumoulis filed an EEOC Charge.  Defendants continued to discriminate against him and retaliated against him.

68.  For example, on November 14, 2008, Mr. Koumoulis submitted a memorandum regarding a meeting held on November 13, 2008.  Defendants issued a letter to Mr. Koumoulis stating, among other items, "you are being placed on administrative leave pending an investigation effective today."  On or about December 2, 2008, Defendants issued a memorandum to Mr. Koumoulis.  Upon information and belief, Defendants did not take remedial action in response to Mr. Koumoulis's complaint.

69.  For example, on or about February 5, 2009, Defendants gave Mr. Koumoulis an unjustified memorandum, alleging, among other items, that there were "concerns from our customers."  Mr. Koumoulis responded by memorandum dated February 24, 2009.

70.  For example, on July 7, 2009, Defendants gave Mr. Koumoulis an unjustified final warning raising false criticisms of his job performance.  Mr. Koumoulis filed an internal complaint of discrimination, harassment and retaliation.  As of July 31, 2009, Mr. Koumoulis was ranked 19th out of 50 representatives in year to date production.

71.   For example, on September 8, 2009,  Defendants unlawfully discharged Mr. Koumoulis' employment.

### ADDITIONAL FACTS REGARDING MR. DAFNIOTIS

72.   Mr. Baval repeatedly came to Mr. Dafniotis' branch and unlawfully verbally abused and harassed him.

73.   Mr. Dafniotis complained directly to Mr. Baval about his discriminatory and harassing conduct.

74.   On or about December 10, 2006, Mr. Dafniotis said he was prepared to file a complaint with Human Resources about Mr. Baval.  Mr. Baval replied "I wouldn't do that unless you want to find yourself out the door."  Mr. Baval essentially threatened to fire Mr. Dafniotis, which deterred Mr. Dafniotis from filing a formal complaint with Human Resources.

75.   Mr. Dafniotis is a current employee of Defendants.

### DEFENDANTS' CONDUCT WAS UNLAWFUL

76.   Plaintiffs' claims are supported by the Affidavit Of Maria Mauceli, dated November 3, 2008.

77.   Defendants' conduct, as alleged herein, constituted unlawful discrimination, harassment and retaliation.  Defendants' proffered reason for the conduct was a pretext for unlawful discrimination, unlawful discharge and unlawful retaliation.

78.   Defendants' unlawful conduct was unwelcome and offensive and occurred against Plaintiffs' will and over their objections and complaints.  Defendants' discrimination and harassment was severe and pervasive, adversely affected the terms, conditions and privileges of Plaintiffs' employment,

-14-

resulted in adverse tangible employment actions, and created a hostile, offensive and abusive work environment.

79.   Tolerance of unlawful discrimination and harassment was a term and condition of Plaintiffs' employment, and Plaintiffs suffered adverse tangible employment actions because they refused to acquiesce to that conduct and protested such conduct. Plaintiffs have also been the victims of "quid pro quo" harassment based on their protected classes.

80.   Defendants' unlawful conduct was intentional and was carried out with malice or reckless indifference to Plaintiffs' protected rights to be free from unlawful discrimination, harassment and retaliation.

81.   Defendants knew or should have known of the unlawful discrimination, harassment and retaliation.  Defendants failed to exercise reasonable care to prevent and correct unlawful discrimination, unlawful harassment and unlawful retaliation.

82.   Defendants authorized unlawful discrimination, unlawful harassment and unlawful retaliation and the employees who engaged in such unlawful conduct were unfit and Defendants were reckless and/or negligent in employing them.  Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled, supported, ratified, approved, condoned and/or coerced the unlawful conduct.

83.   Upon information and belief: (a) Defendants discriminated against and/or harassed other employees; (b) one or more other employees opposed, objected to and/or complained about

-15-

discrimination and/or harassment; and (c) Defendants retaliated against one or more other employees who objected to, opposed and/or complained about discrimination and/or harassment.

84. Defendants engaged in a continuing violation of law.

85. As a result of Defendants' unlawful conduct, each Plaintiff has suffered, and continues to suffer, among other items, substantial damages.  Each Plaintiff is entitled to the relief sought herein.

<u>**COUNT ONE**</u>

**(TITLE VII - All Plaintiffs)**

86. Plaintiffs repeat and reallege every allegation in paragraphs 1 through 85 of this Complaint with the same force and effect as though fully set forth herein.  For purposes of this Count, the term "Defendant" refers to Independent Financial Marketing Group, Inc. and LPL Financial Corporation (which are individually and collectively referred to herein as "LPL Financial").

87. This Count is brought under Title VII, 42 U.S.C. § 2000e <u>et seq.</u>, as amended, and reference is made to Title VII in its entirety and to 42 U.S.C. §§ 2000e, 2000e(b), 2000e(f), 2000e-2(a), 2000e-3(a), 2000e-5(g), 2000e-5(k), and 42 U.S.C. § 1981a.

88. At all relevant times, each Defendant was an "employer" within the meaning of Title VII.

89. At all relevant times, each Plaintiff was an "employee" within the meaning of Title VII.

-16-

90.  Defendants' conduct, as alleged herein, constituted unlawful employment practices and unlawful discrimination, including without limitation on the basis of religion, national origin, and race/color, in violation of Title VII.

91.  In addition, Defendants made discriminatory compensation decisions and adopted discrimination compensation practices, and subjected Plaintiffs to discriminatory compensation decisions and discriminatory compensation practices.

92.  Defendants' conduct, as alleged herein, constituted unlawful retaliation in violation of Title VII.

93.  Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for each Plaintiff's protected rights to be free from discrimination, harassment, and retaliation.

94.  As a result of Defendants' unlawful conduct, each Plaintiff has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation, lost wages/bonuses, commissions, lost benefits, pension monies and contributions, lost interest and attorneys' fees and costs.  Each Plaintiff is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from Defendants under Title VII.

95.  As a further result of Defendants' unlawful conduct, each Plaintiff has suffered and continues to suffer, among other items, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering,

-17-

inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.  Each Plaintiff is entitled to recover damages for such injuries from Defendants under Title VII.

## COUNT TWO

### (NYSHRL - All Plaintiffs)

96.  Plaintiffs repeat and reallege every allegation in paragraphs 1 through 95 of this Complaint with the same force and effect as though fully set forth herein.

97.  This Count is brought under the NYSHRL, N.Y. Exec. L. § 290 et seq. and reference is made to the NYSHRL in its entirety and to N.Y. Exec. L. §§ 292, 292(1), 292(5), 292(6), 296, 296(1), 296(1)(a), 296(1)(e), 296(3-a)(c), 296(6), 296(7), and 297(9).

98.  At all relevant times, each Defendant was an "employer" within the meaning of the NYSHRL.

99. At all relevant times, each Plaintiff was an "employee" within the meaning of the NYSHRL, and a "person" within the meaning of the NYSHRL.

100. At all relevant times, Plaintiff Hatzis had a disability within the meaning of the NYSHRL, because, among other items:  (1) he has a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques; (2) he has a record of such an

impairment; and/or (3) he was and is perceived or regarded as having such an impairment.

101. Plaintiff Hatzis was able to perform the functions of his job with or without a reasonable accommodation, as that term is defined under the NYSHRL.

102. Defendants' conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination on the basis of religion, national origin, race/color, and disability, in violation of the NYSHRL.

103. Defendants' conduct, as alleged herein, constituted unlawful retaliation in violation of the NYSHRL.

104. Defendants are liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e.g., NYSHRL § 296(1) and § 296(6).

105. As a result of Defendants' unlawful conduct, each Plaintiff has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation, lost wages/bonuses, commissions, lost benefits, pension monies and contributions, lost interest and attorneys' fees and costs.  Each Plaintiff is entitled to recover such monetary and other damages, from Defendants under the NYSHRL.

106. As a further result of Defendants' unlawful conduct, each Plaintiff has suffered and continues to suffer, among other items, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering,

-19-

inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.  Each Plaintiff is entitled to recover damages for such injuries from Defendants under the NYSHRL.

## COUNT THREE

### (NYCHRL - All Plaintiffs)

107. Plaintiffs repeat and reallege every allegation in paragraphs 1 through 106 of this Complaint with the same force and effect as though fully set forth herein.

108. This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq. and reference is made to the NYCHRL in its entirety and to N.Y.C. Admin. Code §§ 8-102, 8-102(1), 8-102(5), 8-102(17), 8-107, 8-107(1), 8-107(1)(a), 8-107(6), 8-107(7), and 8-502.

109. At all relevant times herein, each Defendant was an "employer", "covered entity" and a "person" within the meaning of the NYCHRL.

110. At all relevant times herein, each Plaintiff was a "person" within the meaning of the NYCHRL.

111. At all relevant times, Plaintiff Hatzis had a disability within the meaning of the NYCHRL, because, among other items:  (1) he has a physical, medical, mental or psychological impairment, as that term is defined under the NYCHRL; (2) he has a history or record of such an impairment; and/or (3) he was and is perceived or regarded as having such an impairment.

-20-

112. Plaintiff Hatzis was able to perform the functions of his job with or without a reasonable accommodation, as that term is defined under the NYCHRL.

113. Defendants' conduct, as alleged herein, constituted "unlawful discriminatory practices" and unlawful discrimination, including without limitation on the basis of religion, national origin, race/color, and disability, in violation of the NYCHRL.

114. Defendants' conduct, as alleged herein, constituted unlawful retaliation in violation of the NYCHRL.

115. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for each Plaintiff's protected rights to be free from discrimination and harassment, and retaliation.

116. Defendants are liable for the unlawful conduct herein, including without limitation as an "employer" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL §§ 8-107(1) and § 8-107(6).

117. As a result of Defendants' unlawful conduct, each Plaintiff has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation, lost wages/bonuses, commissions, lost benefits, pension monies and contributions, lost interest and attorneys' fees and costs.

118. As a further result of Defendants' unlawful conduct, each Plaintiff has suffered and continues to suffer, among other items, impairment and damage to his good name and reputation,

-21-

emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.  Each Plaintiff is entitled to recover damages for such injuries from Defendants under the NYCHRL.

119. Each Plaintiff is entitled to recover monetary damages and other damages and relief, punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## COUNT FOUR

### (ADEA - Plaintiff Koumoulis)

120. Plaintiffs repeat and reallege every allegation in paragraphs 1 through 119 of this Complaint with the same force and effect as though fully set forth herein.  For purposes of this Count, the term "Defendant" refers to Independent Financial Marketing Group, Inc. and LPL Financial Corporation (which are individually and collectively referred to herein as "LPL Financial").

121. At all relevant times, each Defendant was an "employer" within the meaning of the ADEA, 29 U.S.C. § 630(b).

122. At all relevant times, Plaintiff Koumoulis was a "person" within the meaning of the ADEA, 29 U.S.C. § 630(a).

123. Defendants' conduct, as alleged herein, constituted unlawful discriminatory practices, unlawful discrimination on the basis of age, and unlawful retaliation, in violation of the ADEA. See, e.g., 29 U.S.C. §§ 623, 623(a), 623(d).

-22-

124. Defendants' unlawful conduct, as alleged herein, was willful within the meaning of the ADEA.  See, e.g., 29 U.S.C. §§ 626, 626(b).

125. As a result of Defendants' unlawful conduct, Plaintiff Koumoulis has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation, lost wages/bonuses, commissions, lost benefits, pension monies and contributions, lost interest and attorneys' fees and costs.  Plaintiff Koumoulis is entitled to recover monetary and other damages, liquidated damages, interest, and attorneys' fees and costs, from Defendants, under the ADEA.

**COUNT FIVE**

**(Americans With Disabilities Act - Plaintiff Hatzis)**

126. Plaintiffs repeat and reallege every allegation in paragraphs 1 through 125 of this Complaint with the same force and effect as though fully set forth herein.  For purposes of this Count, the term "Defendant" refers to Independent Financial Marketing Group, Inc. and LPL Financial Corporation (which are individually and collectively referred to herein as "LPL Financial").

127. This Count is brought under the ADA, 42 U.S.C. § 12101 et seq. and reference is made to the ADA in its entirety, and to 42 U.S.C. §§ 12102, 12111, 12112, 12117 and to 42 U.S.C. 2000e-5.

128. At all relevant times, Plaintiff Hatzis was an employee and person within the meaning of the ADA.

129. At all relevant times, each Defendant was and is an employer within the meaning of the ADA.

130. Under the ADA, the term disability means, with respect to an individual: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

131. At all relevant times, Plaintiff Hatzis was a qualified individual with a disability within the meaning of the ADA, because: (1) he has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) he has a record of such an impairment; and/or (3) he is regarded as having such an impairment.  See, e.g., 42 U.S.C. § 12102.

132. Defendants committed unlawful employment practices and discriminated against Plaintiff Hatzis because of a disability, regarding compensation, terms, conditions and privileges of employment, and employment opportunities, and unlawfully discharged him because of a disability.  Defendants unlawfully retaliated against Plaintiff Hatzis and unlawfully discharged him for engaging in protected activity, in violation of the ADA.

133. Defendants unlawfully discharged Plaintiff Hatzis in violation of the ADA.

134. Defendants' conduct, as alleged herein, constituted unlawful employment practices, unlawful discrimination on the

-24-

basis of a disability, and unlawful retaliation, in violation of the ADA.

135. Defendants' unlawful conduct was intentional and was carried out with malice or reckless indifference to Plaintiff Hatzis' protected rights to be free from unlawful discrimination and retaliation.

136. As a result of Defendants' unlawful conduct, Plaintiff Hatzis has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation, lost wages/bonuses, commissions, lost benefits, pension monies and contributions, lost interest and attorneys' fees and costs.  Plaintiff Hatzis is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from Defendants under the ADA.

137. As a further result of Defendants' unlawful conduct, Plaintiff Hatzis has suffered and continues to suffer, among other items, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.  Plaintiff Hatzis is entitled to recover damages for such injuries from Defendants under the ADA.

## COUNT SIX

### (SECTION 1981 - All Plaintiffs)

138. Plaintiffs repeat and reallege every allegation in paragraphs 1 through 137 of this Complaint with the same force and effect as though fully set forth herein.  For purposes of

-25-

this Count, the term "Defendant" refers to Independent Financial Marketing Group, Inc. and LPL Financial Corporation (which are individually and collectively referred to herein as "LPL Financial").

139. This Count is brought under Section 1981, 42 U.S.C. § 1981 et seq. and reference is made to Section 1981 in its entirety and to 42 U.S.C. §§ 1981, 1981a, 1988, 1988(b).

140. Defendants' conduct, as alleged herein, constituted unlawful discrimination against Plaintiffs in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," in violation of Section 1981.

141. Defendants' conduct, as alleged herein, constituted unlawful retaliation in violation of the Section 1981.

142. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiffs' rights to be free from discrimination and retaliation.

143. As a result of Defendants' unlawful conduct, each Plaintiff has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation, lost wages/bonuses, commissions, lost benefits, pension monies and contributions, lost interest and attorneys' fees and costs.  Each Plaintiff is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from Defendants under Section 1981.

144. As a further result of Defendants' unlawful conduct, each Plaintiff has suffered and continues to suffer, among other items, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.  Each Plaintiff is entitled to recover damages for such injuries from Defendants under Section 1981.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment on all Counts, as follows:

(A)  On Count One, enter a judgment declaring the acts and practices of Defendants to be in violation of Title VII;

(B)  On Count One, award each Plaintiff as against Defendants the amount of wages, including without limitation back pay, front pay, bonuses, commissions, benefits, pension monies and contributions, and interest lost as a result of Defendants' unlawful conduct, and reinstatement of employment;

(C)  On Count One, award each Plaintiff as against Defendants consequential damages for losses resulting from Defendants' unlawful conduct;

(D)  On Count One, award each Plaintiff as against Defendants compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering,

-27-

inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses;

(E)   On Count One, award each Plaintiff as against Defendants punitive damages;

(F)   On Count One, award each Plaintiff as against Defendants the costs of this action, together with reasonable attorneys' fees;

(G)   On Count Two, enter a judgment declaring the acts and practices of Defendants to be in violation of the NYSHRL;

(H)   On Count Two, award each Plaintiff as against Defendants the amount of wages, including without limitation back pay, front pay, bonuses, commissions, benefits, pension monies and contributions, and interest lost as a result of Defendants' unlawful conduct, and reinstatement of employment;

(I)   On Count Two, award each Plaintiff as against Defendants consequential damages for losses resulting from Defendants' unlawful conduct;

(J)   On Count Two, award each Plaintiff as against Defendants compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses;

(K)   On Count Three, enter a judgment declaring the acts and practices of Defendants to be in violation of the NYCHRL;

-28-

(L)   On Count Three, award each Plaintiff as against Defendants the amount of wages, including without limitation back pay, front pay, bonuses, commission benefits, pension monies and contributions, and interest lost as a result of Defendants' unlawful conduct, and reinstatement of employment;

(M)   On Count Three, award each Plaintiff as against Defendants consequential damages for losses resulting from Defendants' unlawful conduct;

(N)   On Count Three, award each Plaintiff as against Defendants compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses;

(O)   On Count Three, award each Plaintiff as against Defendants punitive damages;

(P)   On Count Three, award each Plaintiff as against Defendants the costs of this action, together with reasonable attorneys' fees;

(Q)   On Count Four, enter a judgment declaring the acts and practices of Defendants to be in violation of the ADEA;

(R)   On Count Four, award Plaintiff Koumoulis as against Defendants the amount of wages, including without limitation back pay, front pay, bonuses, commissions, benefits, pension monies and contributions, and interest lost as a result of Defendants' unlawful conduct, and reinstatement of employment;

-29-

(S)  On Count Four, award Plaintiff Koumoulis as against Defendants consequential damages for losses resulting from Defendants' unlawful conduct;

(T)  On Count Four, award Plaintiff Koumoulis as against Defendants liquidated damages;

(U)  On Count Four, award Plaintiff Koumoulis as against Defendants the costs of this action and disbursements, together with attorneys' fees;

(V)  On Count Five, enter a judgment declaring the acts and practices of Defendants to be in violation of ADA;

(W)  On Count Five, award Plaintiff Hatzis as against Defendants the amount of wages, including without limitation back pay, front pay, bonuses, commissions, benefits, pension monies and contributions, and interest lost as a result of Defendants' unlawful conduct, and reinstatement of employment;

(X)  On Count Five, award Plaintiff Hatzis as against Defendants consequential damages for losses resulting from Defendants' unlawful conduct;

(Y)  On Count Five, award Plaintiff Hatzis as against Defendants compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses;

(Z)  On Count Five, award Plaintiff Hatzis as against Defendants punitive damages;

-30-

(AA) On Count Five, award Plaintiff Hatzis as against Defendants the costs of this action and disbursements, together with attorneys' fees;

(BB) On Count Six, enter a judgment declaring the acts and practices of Defendants to be in violation of Section 1981;

(CC) On Count Six, award each Plaintiff as against Defendants the amount of wages, including without limitation back pay, front pay, bonuses, commissions, benefits, pension monies and contributions, and interest lost as a result of Defendants' unlawful conduct, and reinstatement of employment;

(DD) On Count Six, award each Plaintiff as against Defendants consequential damages for losses resulting from Defendants' unlawful conduct;

(EE) On Count Six, award each Plaintiff as against Defendants compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses;

(FF) On Count Six, award each Plaintiff as against Defendants punitive damages;

(GG) On Count Six, award each Plaintiff as against Defendants the cost of this action, together with reasonable attorneys' fees;

(HH) On All Counts, award each Plaintiff any and all other damages and relief provided by the applicable statutes; and

(II) Grant each Plaintiff such other and further relief as may be necessary and proper.

## JURY DEMAND

Plaintiffs demand a jury trial for all issues triable.

Dated:    New York, New York
          March 19, 2010

                              GOLDBERG & FLIEGEL LLP

                      By:    /s/ Kenneth A. Goldberg
                             Kenneth A. Goldberg (KG 0295)

                             60 East 42nd Street, Suite 3421
                             New York, New York 10165
                             (212) 983-1077

                             Attorneys for Plaintiffs