### GOLDBERG & FLIEGEL LLP
ATTORNEYS AT LAW
60 EAST 42ND STREET, SUITE 3520
NEW YORK, NEW YORK 10165
www.goldbergfliegel.com

KENNETH A. GOLDBERG                                    TELEPHONE: (212) 983-1077
MICHELE L. FLIEGEL                                     FACSIMILE: (212) 973-9577

April 16, 2013

**BY ECF**

Hon. Vera M. Scanlon
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom N504
Brooklyn, New York 11201

> Re:   **Koumoulis et al. v. Independent Financial Marketing Group, Inc. et al.**
>       **10-cv-0887 (MKB) (VMS)**

Dear Judge Scanlon:

We represent the Plaintiffs in the above-referenced matter. We write as a follow-up to the telephone conference of April 8, 2013. Plaintiffs seek a Court order compelling Defendants to produce various documents listed in their privilege log and withheld from Plaintiffs. The parties conferred but were unable to resolve this matter. Accordingly, pursuant to the Court's instructions, this letter is jointly submitted by the parties and contains the position of each party.

### PLAINTIFFS' POSITION

**A.    Introduction**

At the April 8, 2013 telephone conference with the Court, Defendants essentially stated that they are asserting an affirmative defense premised on the adequacy of their internal investigations of Plaintiffs' internal complaints. However, approximately one week earlier, Defendants served a privilege log listing documents relating to such "investigation" materials. All such documents must be produced. Prior to filing this letter, we sought to resolve this issue in good faith with Defendants' counsel, through emails dated April 3, 9 and 12, 2013 and telephone calls as well, but our efforts were unsuccessful.

First, Defendants' purported affirmative defense automatically precludes Defendants from asserting privilege as to all documents related in any way to the investigations on which Defendants' affirmative defense rests, including material identified in Defendants' privilege log. Defendants' eleventh-hour assertion of privilege as to material identified in their privilege log related to the investigations therefore is improper and all documents related in any way to the "investigations" must be produced forthwith.

Second, Defendants previously and on the record expressly waived privilege regarding information related to their investigations.  Upon such express waiver, all "investigation" materials were required to be produced as part of discovery, and must be produced forthwith.

As more fully discussed below, Defendants' eleventh-hour assertion of privilege as to additional information related to their investigations, while waiving privilege regarding other information related to their investigations, is an attempt at improper selective disclosure.

**B.    Background**

**1.    Defendants' Eleventh-Hour Assertion of Privilege**

On March 29, 2013, the previous end-date of fact discovery, we received Defendants' privilege log containing more than 50 entries, a copy of which is annexed hereto as Exhibit A.

Defendants' privilege log has many entries that appear to pertain to documents regarding Defendants' purported investigation(s) of Plaintiffs' internal complaints.  Specifically, Defendants' log contains categories of documents apparently relevant to Defendants' alleged investigations of and response to: (a) Mr. Koumoulis' protected complaint of February 24, 2009; (b) Mr. Koumoulis' protected complaint of, July 9, 2009; (c) Mr. Koumoulis' protected complaint of November 14, 2008; and (d) other investigations of Mr. Koumoulis.  Defendants' log also lists documents regarding relating to Plaintiffs' EEOC Charges.

We have identified numerous privilege log entries regarding such matters, and those entries are listed at Exhibit B hereto.  Because Defendants' privilege log has little detail regarding the listed documents, additional documents in Defendants' log other than those in Exhibit B may also relate to Defendants' investigations and responses.

**2.    During Depositions Defendants Waived Privilege As To Their Investigations**

Defendants' eleventh-hour claim of privilege as to investigation-related documents is contradicted by their previous <u>express</u> waiver of privilege as to investigation-related documents. Defendants' waiver was made <u>on the record</u> at the deposition of Defendants' witness Marjory Robertson ("MR"), the in-house counsel for Sun Life covering Defendants IFMG.  At that time, Defendants' counsel Ms. Varon stated on the record that the privilege was waived:

> "We've waived privilege with respect to three narrow issues, as to the investigations of Mr. Koumoulis and Mr. Hatzis' complaints and with respect to Mr. Hatzis' termination."

(<u>See</u> Exhibit C containing copies of all deposition transcript pages cited herein, MR Dep. Tr. 40).

Ms. Varon emphasized that communications in the course of such investigations are not privileged, stating:

"To the extent those conversations happened in connection with the company's internal investigation, then that's correct."

(*Id.*, MR Dep. Tr. 57-8).

Defendants' broad and express waiver of the privilege at the Robertson deposition required Defendants to produce in response to Plaintiffs' discovery requests all underlying documents and records covered by the waiver, including communications with counsel. That unequivocal express waiver did not exclude communications with outside counsel. Only when Defendants produced their extensive privilege log on March 29, the previous end-date of fact discovery, did Plaintiffs learn that Defendants withheld numerous documents covered by their prior express waiver.

Significantly, Defendants' outside counsel, Duane Morris, was apparently knee-deep in Defendants' alleged investigation of and response to Mr. Koumoulis' protected internal complaints. The Duane Morris firm edited and/or ghostwrote memos from Defendant LPL to Mr. Koumoulis, including among others memos dated December 2, 2008, February 5, 2009, July 29, 2009 and September 8, 2009 (annexed as Exhibit D hereto). The memos responded to Mr. Koumoulis's complaints and/or terminated him and they contained the Duane Morris "DM" footer. Deposition testimony from Defendants' Human Resources personnel Claudia Mellon ("CM") and Kathy Bakke ("KB") further confirmed Duane Morris's involvement in editing and drafting the memos and ongoing communications with outside counsel in connection with the investigations and responses (see CM Dep. 135-6, 141; KB Dep. 234 [Exhibit B hereto]).

**C.    If The Court Permits Defendants' Affirmative Defense, All Documents Regarding, Relating To, Or Referring To Such Investigation Must Be Produced**

As noted above, at the April 8, 2013 telephone conference with the Court, Defendants essentially stated that they are asserting an affirmative defense premised on the adequacy of their internal investigations of Plaintiffs' internal complaints, one of the *Faragher-Ellerth* affirmative defenses to a Title VII action. If Defendants are allowed to maintain such affirmative defense, then any privilege asserted by Defendants is waived as to such documents and all such documents must be produced — including witness interviews, notes and memoranda created and part of the investigation on which the affirmative defense rests. *See Angelone v. Xerox Corp.*, 09-CV-6019, 2011 WL 4473534 (W.D.N.Y. Sept. 26, 2011) *reconsideration denied*, 09-CV-6019-CJS, 2012 WL 537492 (W.D.N.Y. Feb. 17, 2012) ("when a Title VII defendant affirmatively invokes a *Faragher–Ellerth* defense that is premised, in whole in or part, on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation").

An employer cannot withhold such materials without privilege, nor can the employer selectively produce certain of such materials and attempt to shield other documents without valid privilege. *Id.; McGrath v. Nassau Cnty. Health Care Corp.*, 204 F.R.D. 240, 245-46 (E.D.N.Y. 2001) (defendant's invocation of a *Faragher-Ellerth* defense waived the work-product privilege); *Brownell v. Roadway Package Sys., Inc.*, 185 F.R.D. 19, 25 (N.D.N.Y. 1999) (defendant waived attorney-client privilege as to attorney's investigatory documents by assertion of adequacy of investigation as affirmative defense); *Pray v. New York City Ballet*, No. 96 Civ. 5723, 1997 WL 266980, *1 (S.D.N.Y. 1997) (by asserting thoroughness of investigation as defense in sexual harassment litigation, employer waived attorney-client privilege); *see also Favors v. Cuomo*, 285 F.R.D. 187, 197-99 (E.D.N.Y. 2012) (Mann, M.J.) (overview of standards for attorney-client privilege and attorney work product protection).

Here, Defendants not only invoke their affirmative defense, but also expressly waived any privilege as to the disputed documents, and did so on the record during the deposition of Ms. Robertson. Furthermore, Defendants' outside counsel edited and/or drafted documents regarding Defendants' investigations and responses to Plaintiffs' complaints. Having expressly waived privilege as to information regarding their investigation, Defendants are prohibited from shielding other information from disclosure. Defendants must produce all documents and records regarding such affirmative defense so that they may be tested by Plaintiffs. Such documents and records pertain to (1) investigations relating to Mr. Koumoulis; (2) investigations relating to Mr. Hatzis; and (3) Mr. Hatzis' termination.[1] All documents listed in Defendants' privilege log pertaining to these matters must be produced.

Further, while we have listed here documents that are clearly required to be produced, Defendants' privilege log has more than 50 entries and lacks sufficient detail to enable us to decipher and identify all the documents that are required to be produced based on the waiver of privilege. Thus, Defendants should produce all documents listed in this letter and all other documents identified in Defendants' privilege log within the scope of the waiver herein. Should the Court grant Plaintiffs' motion, Plaintiffs' reserve the right to depose the attorneys involved in the investigation upon which Defendants' affirmative defense is premised, in accordance with the holdings of *Pray v. New York City Ballet*, No. 96 Civ. 5723, 1997 WL 266980, *1 (S.D.N.Y. 1997) (employer's litigation defense counsel, who also served as attorney conducting internal investigation of discrimination complaints, subject to deposition; by asserting thoroughness of investigation as defense in sexual harassment litigation, employer waived attorney-client privilege).

---

[1] Defendants also alleged that documents relating to Plaintiffs' EEOC Charges are privileged, as shown by Defendants' privilege log. If Defendants seek to assert any defense based on their investigation of EEOC Charges, then any alleged privilege as to such documents is waived and all such materials must be produced or at least provided to the Court for in camera review to ensure that there is nothing in those documents relating to Defendants' investigation of Plaintiffs' internal complaints, as such materials are not protected by any privilege whatsoever.

4

**D.**     **Brief Response to Defendants' Position**

Defendants argue that their Answer includes an affirmative defense regarding the adequacy of their internal investigations.  However, Defendants' Answer fails to plead an adequate investigation of Plaintiffs' complaints—at most it essentially alleges that (a) Defendant had policies and (b) Plaintiffs failed to take appropriate action.  Cf. Fed. R. Civ. P. 8(c); *Shechter v. Comptroller of N.Y.C.*, 79 F.3d 265, 270 (2d Cir. 1996) (affirmative defenses have no efficacy when "not warranted by any asserted facts").  In any event, Defendants expressly waived the attorney-client privilege during depositions and, during the April 8 telephone conference, Defendants asserted that they have an "adequate investigation" defense.  As noted above, Defendants, by their actions, have indisputably waived the attorney client privilege as to all documents sought by Plaintiffs herein.

Defendants argue that LPL does not rely upon outside counsel's advice as a defense to Plaintiffs' claims.  This argument has no merit.  As noted above, Defendants' outside counsel was extensively involved in LPL's response to Plaintiffs' internal complaints. Defendants' outside counsel edited and/or drafted the memos from LPL to Plaintiff Koumoulis upon which Defendants' defense is based.  Defendants' privilege waiver and Defendants' outside counsel's drafting of responses to Plaintiffs' complaints renders the disputed documents discoverable. Here, the adequacy of Defendants' investigation and the sufficiency of Defendants' response to Plaintiffs' internal complaints is at issue in this litigation and Defendants' outside counsel was directly involved in preparing responses to Plaintiffs' internal complaints.

Defendants cite cases from other jurisdictions.  Such cases do not override Defendants' waiver of privilege and the relevant caselaw from this jurisdiction cited by Plaintiffs that warrants production of the materials in question.  Again, Defendants' outside counsel edited and/or drafted memos from LPL to Plaintiff Koumoulis responding to his internal complaints. By doing so, and by asserting a defense that waives any privilege, Defendants' outside counsel's impressions, conclusions and theories were injected into Defendants' investigation and response to Plaintiffs' internal complaints, rendering the disputed materials discoverable.

Finally, Defendants request a privilege log regarding communications between Plaintiff Koumoulis and his counsel regarding his internal complaints.  Such request should be denied.  I emailed Defendants' counsel a list of privileged redactions from Plaintiffs' document production. Defendants cannot and do not dispute that any communications between Plaintiff Koumoulis and his counsel regarding his internal complaints are protected from disclosure by the attorney client privilege and/or work product doctrine.  Except for Mr. Koumoulis's early 2008 complaint to Human Resources, his subsequent complaints to HR occurred during the pendency of his EEOC Charge and while he was represented by counsel.  His communications with his counsel during that time frame, in a litigation posture, are non-discoverable.  Unlike Defendants' express waiver of privilege, Plaintiffs did not waive any privilege.  Defendants deposed Mr. Koumoulis regarding, among other items, his internal complaints and the circumstances leading to his EEOC Charges and his claims.  Defendants' request cannot result in discoverable evidence and should

be denied.

## DEFENDANTS' POSITION

As an initial matter, Defendants did include an affirmative defense in its Answer regarding the adequacy of its internal investigations. Specifically, Defendants' Answer states that "Plaintiffs' claims are barred, in whole or in part, because Defendants exercised reasonable care to prevent and correct promptly any discriminatory behavior by having anti-discrimination policies and procedures for investigating and preventing discrimination with a complaint procedure and Plaintiffs unreasonably failed to take action, pursuant to those policies or otherwise, to be free from discrimination." The court in Angelone v. Xerox Corp., 09-CV-6019, 2011 WL 4473534 (W.D.N.Y. Sept. 26, 2011), a case cited by Plaintiffs, makes clear that such affirmative defense is sufficient for purposes of putting its internal investigations at issue in the litigation. See id. at *5 ("The ninth and tenth affirmative defenses alleged in Xerox's Answer are carefully and conspicuously couched in language which mirrors the Supreme Court's holdings in Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). Pursuant to Faragher and Ellerth, an employer faced with a hostile environment case may, under certain circumstances to avoid vicarious liability, affirmatively allege and prove that "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765 ; Faragher, 524 U.S. at 807. By pleading the so-called Faragher-Ellerth defense in its Answer, Xerox has affirmatively and deliberately put its internal investigation of Angelone's workplace complaints at issue in this litigation") (emphasis added)).

It is Defendants' position that Plaintiffs are not entitled to discovery of a very small number of emails that contain legal advice and mental impressions of LPL's outside legal counsel when its outside counsel did not participate in the factual investigation, interview witnesses or otherwise create fact work product upon which Defendants will rely in this litigation and when such communications occurred after LPL was on notice of Plaintiffs' May 2008 EEOC Charge and for purposes of defending against an anticipated federal complaint.

Defendants have produced tens of thousands of documents in this litigation due to Plaintiffs' overbroad requests. Among those documents are documents regarding the relevant in-house investigations performed by non-attorney personnel, as well as notes and correspondence of Defendants' in-house counsel to the extent such individual conducted any witness interviews or was otherwise the decision-maker in connection with any adverse employment action. Relevant to Mr. Koumoulis (the Plaintiff with respect to whom the at-issue emails relate), Defendants produced email correspondence regarding its investigations of Mr. Koumoulis' internal complaints, the investigation methodology, notes of all witness interviews, documents received in connection with the investigation, summaries of findings and conclusions, and all other documents upon which Defendants will rely to support the adequacy of its

investigations.  Plaintiffs have had the opportunity to depose LPL's HR and business persons, as well as IFMG's in-house counsel to the extent she was involved in the factual investigation of any complaint, regarding the adequacy of these investigations.  Accordingly, Plaintiffs have had complete discovery of LPL's internal investigations in response to Mr. Koumoulis's complaints and the corrective action taken.  Defendants seek only to protect limited communications between LPL's HR personnel and its outside counsel.  LPL does not rely upon the legal advice of outside counsel as a defense to plaintiffs' claims, but rather the facts gathered in its own internal investigation and the conclusions rendered by its decision-makers.

There appears to be limited case law regarding the precise issue before the Court.  However, courts addressing the issue have held that "if an employer has produced the substance of relevant in-house investigations performed by nonattorney personnel and seeks only to protect specific communications between those personnel and the employer's attorneys, the protections afforded by the law for communications between attorneys and their clients are not waived by the employer's pleading of the adequacy of its prelitigation investigation as a defense to an action for employee discrimination or harassment."    Kaiser Foundations Hospitals v. The Superior Court of San Mateo County, 66 Cal. App. 4th 1217, 1219-20 (First App. Div. 1998) (emphasis added).  See also Reitz v. City of Mt. Juliet, 680 F. Supp. 2d 888 (M.D. Tenn. 2010).  Defendants submit that the reasoning of these cases is persuasive here.

In Kaiser, the court expressly stated that the governing law does "not now hold that, once a defendant claims it has investigated a complaint of harassment and taken appropriate remedial action based on its own investigation, a plaintiff is entitled to discovery all communications involving the employer's internal investigation, whether or not the investigation was conducted by a nonattorney and regardless of the employer's invocation of the attorney-client privilege with respect to the nonattorney's confidential communications with employer's counsel."  Id. at 1223 (emphasis added).  Indeed, the court stated that "[a]doption of plaintiff's position would result in the destruction of the attorney-client privilege and the work product doctrine in every case of alleged employee discrimination or harassment in which an employer puts the adequacy of its prelitigation investigation at issue."  Rather than make a blanket holding, the Court concluded that "where a defendant has produced its files and disclosed the substance of its internal investigation conducted by nonlawyer employees, and only seeks to protect specified discrete communications which those employees had with their attorneys, disclosure of such privileged communications is simply not essential for a thorough examination of the adequacy of the investigation or a fair adjudication of the action.  Id. at 1227.  Here, as in Kaiser, LPL's investigation was performed by a "non-attorney human resources specialist" and defendants have produced "its entire investigation file in discovery, only claiming attorney-client or work product production of certain specified documents substantially all of its investigations files."  Id.

The reasoning of Reitz v. City of Mt. Juliet, 680 F. Supp. 2d 888 (M.D. Tenn. 2010), is also persuasive.  In that case, an employer raised a Faragher-Ellerth defense to a sexual harassment claim. The court noted that the assertion of such a defense "waives the attorney-client privilege and work-product protection for documents underlying the final investigative

report—including interview memoranda authored by the investigator." Id. at 893. The court held, however, that "only the 'fact' work product created" by the attorneys conducting the investigation was discoverable. Id. at 895. This "fact work-product" consisted of "portions of the documents memorializing the information gathered by the investigators." Id. The court refused to allow discovery of "[s]ections of the interview memoranda that reflect the lawyers' mental impressions, opinions, conclusions, judgments, or legal theories" because this information was irrelevant to the plaintiff's claim. Id. See also Brownell v. Roadway Package Sys., 185 F.R.D. 19, 25-26 (N.D.N.Y. 1999) (ordering disclosure of all investigative materials prepared in response to employee complaint where the materials revealed no "impressions, conclusions, or legal theories" of the attorney investigator).

The authorities relied upon by plaintiffs are not to the contrary and, in fact, support Defendants' position. Plaintiffs incorrectly cite Angelone v. Xerox Corp. for the broad legal premise that once a defendant invokes a Faragher-Ellerth defense, the defendant completely waives the attorney-client privilege and work product protections for all documents related to the internal investigation. Contrary to Plaintiffs' suggestion, the court in Angelone only held that there is a "limited waiver" upon assertion of a Faragher-Ellerth defense. 2011 WL 4473554, at *3 (W.D.N.Y. Sept. 26, 2011). In evaluating defendant's motion for reconsideration, the court stated "[t]he court's review of the legal precedent reveals that once the investigation shifted to defending against Plaintiff's EEOC claims, the resulting documents became privileged." 2012 WL 537492, at *3 (W.D.N.Y. Feb. 17, 2012). As the court noted, "at some point, the purpose and focus of the investigation had to have shifted from an internal investigation in response to plaintiffs' claims to an investigation for the purpose of mounting a legal defense against any such claims. Id., citing Prince v. Madison Square Garden, L.P., 240 F.R.D. 126, 128 (S.D.N.Y. 2007). Here, Plaintiffs filed their EEOC charges in May 2008. All of the at-issue communications are subsequent to that date. Outside counsel did not conduct the investigation and was not, using Mr. Goldberg's words, "knee-deep" in the investigation." Rather, outside counsel provided advice and mental impressions at various stages of Mr. Koumoulis' employment, including in connection with its investigations of Mr. Koumoulis' complaints, anticipating that Plaintiffs would file a federal civil action upon receipt of a right to sue letter and for the purpose of "mounting a legal defense" against anticipated claims. Simply put, no case cited by Plaintiffs addresses the precise issue here and supports Plaintiffs' position. Indeed, Mr. Koumoulis' complaints to HR occurred during the pendency of his EEOC Charge and Mr. Goldberg concedes that Mr. Koumoulis "communications with his counsel during that time frame, in a litigation posture, are non-discoverable."

Contrary to Plaintiffs' assertions, Defendants did not waive privilege as to the email communications with outside counsel. Mr. Goldberg selectively quotes from the deposition transcript of IFMG's in-house counsel, Marjory Robertson, for the broad proposition that Defendants waived privilege as to all investigation documents. This is false. The nature of the deponent (an in-house counsel) and a complete reading of the relevant portion of the transcript makes clear that Defendants waived privilege only with respect to Ms. Robertson's testimony and only for those specifically enumerated issues. Mr. Goldberg omits excerpts from Ms.

Robertson's deposition, which states, in full:  "[Y]ou're taking the deposition of counsel for an organization.  We've waived privileged with respect to three narrow issues, as to the investigation of Mr. Koumoulis and Mr. Hatzis' complaints and with respect to Mr. Hatzis' termination, in which capacity Ms. Robertson served as a decision-maker, but to the extent that you're asking for information based on her duties as counsel for one or both companies, that is not why she's here today and she should not be testifying to those matters." (emphasis added).  Defendants have not withheld any of Ms. Robertson's documents for the issues set forth above.  And, as previously stated, has produced Defendants' entire investigation file.  Additionally, the Court should not entertain Plaintiff's "reservation of rights" to "depose the attorneys involved in the investigation upon which Defendants' affirmative defense is premised."  Plaintiffs deposed Ms. Robertson and, as repeatedly stated above, LPL's outside counsel  did not conduct the internal investigations.  The Pray case cited by Plaintiffs is in accord with Defendants' position.  See Pray v. New York City Ballet Company, 1997 WL 266980, at *2 (May 19, 1997) (holding that only attorneys that actually conducted internal investigations could be deposed and not attorneys that were "only remotely connected" and "did not play a significant role in the investigations").

Finally, Defendants seek production of Plaintiffs' privilege log.  Defendants initial document requests to Plaintiffs requested, inter alia, all documents relating to any complaint(s) that Messrs. Koumoulis, Hatzis, Milito and Dafniotis made regarding discrimination, harassment or retaliation.  Defendants requested a log for documents withheld on grounds of privilege.  Plaintiffs claim that Defendants have provided an "11th hour privilege log", yet Plaintiffs have not produced any privilege log.  Since Plaintiffs had engaged Mr. Goldberg long before the internal investigations regarding Mr. Koumoulis, Defendants understand that Plaintiffs were in contact with and likely received advice from Mr. Goldberg in connection with internal complaints and the Company's investigation.  Defendants therefore request a privilege log for all such communications between Mr. Koumoulis and Mr. Goldberg or any other counsel or a representation from Mr. Goldberg that there are no such documents/correspondence.  Plaintiffs cannot take the position, as they appear to do, that all pre-federal litigation communications between Plaintiffs and their counsel are privileged and therefore a log is not required.  Even if the underlying documents contain privileged information, Defendants have the right to receive and review a log, which may reveal that certain of the communications are not in fact privileged (i.e., copying a non-party).

Defendants do not specifically address any information set forth in Plaintiffs' Exhibits, which Plaintiffs did not provide to Defendants in advance of our joint submission.

Thank you for Your Honor's attention to this matter.

Respectfully submitted,
/s/ Kenneth A. Goldberg
Kenneth A. Goldberg

Enclosures

# EXHIBIT A

## PRIVILEGE LOG
### Koumoulis et al v. IFMG et al, Civ. Action No. 10-cv-0887

| Doc. | Date | Author/From | To | Cc | Subject | Privilege |
|------|------|-------------|-----|-----|---------|-----------|
| 1. | 11/14/08 | Claudia Mellon | Ann Bradley, Esq., Lou Mastropietro, Kathy Bakke | Matt Baval | 11/14/08 email from T. Koumoulis regarding 11/13 meeting | Attorney-Client Communication, Attorney Work Product |
| 2. | 11/17/08 | Claudia Mellon | Ann Bradley, Esq. | Kathy Bakke, Lou Mastropietro | T. Koumoulis meeting | Attorney-Client Communication, Attorney Work Product |
| 3. | 11/17/08 | Claudia Mellon | Ann Bradley, Esq. | | Email correspondence regarding 11/14/08 T. Koumoulis email | Attorney-Client Communication, Attorney Work Product |
| 4. | 11/18/08-11/20/08 | Claudia Mellon | Ann Bradley, Esq., David Freniere | | Email correspondence regarding 11/14/08 T. Koumoulis email | Attorney-Client Communication, Attorney Work Product |
| 5. | 11/18/08-11/20/08 | Ann Bradley, Esq. | Claudia Mellon, David Freniere, Esq. | | Email correspondence regarding 11/14/08 T. Koumoulis email | Attorney-Client Communication, Attorney Work Product |
| 6. | 11/20/08 | Claudia Mellon | Lynette Sarno, Esq., Marjory Robertson, Esq. | Ann Bradley, Esq. | Email correspondence regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 7. | 11/21/08 | Claudia Mellon | Ann Bradley, Esq. | | Email correspondence regarding T. Koumoulis administrative leave | Attorney-Client Communication, Attorney Work Product |
| 8. | 12/2/08 | Claudia Mellon | Ann Bradley, Esq. | | Email correspondence regarding T. Koumoulis investigation | Attorney-Client Communication, Attorney Work Product |

**PRIVILEGE LOG**
**Koumoulis et al v. IFMG et al, 10-cv-0887**

| Doc. | Date | Author/From | To | Cc | Subject | Privilege |
|------|------|-------------|-----|-----|---------|-----------|
| 9. | 12/3/08 | Claudia Mellon | Ann Bradley, Esq. | | Email correspondence regarding T. Koumoulis investigation | Attorney-Client Communication, Attorney Work Product |
| 10. | 1/6/09 | Claudia Mellon | Ann Bradley, Esq. | | Email correspondence regarding T. Koumoulis performance issues | Attorney-Client Communication, Attorney Work Product |
| 11. | 1/28/09 | Claudia Mellon | Ann Bradley, Esq. | | Email regarding T. Koumoulis performance issues | Attorney-Client Communication, Attorney Work Product |
| 12. | 6/3/08 | Claudia Mellon | Marjory Robertson, Esq. | | Email regarding EEOC Charge | Attorney-Client Communication, Attorney Work Product |
| 13. | 8/15/08 | Claudia Mellon | Lynette Sarno, Esq., Marjory Robertson, Esq., David DeBaun | | Email correspondence regarding T. Koumoulis performance issues | Attorney-Client Communication, Attorney Work Product |
| 14. | 11/20/08 | Claudia Mellon | Lynette Sarno, Esq., Marjory Robertson, Esq. | Ann Bradley, Esq. | Email correspondence regarding T. Koumoulis performance issues | Attorney-Client Communication, Attorney Work Product |
| 15. | 12/3/08 | Claudia Mellon | Lynette Sarno, Esq., Marjory Robertson, Esq. | Ann Bradley, Esq. | Email correspondence regarding T. Koumoulis performance issues | Attorney-Client Communication, Attorney Work Product |
| 16. | 12/5/08 | Claudia Mellon | Lynette Sarno, Esq. | Marjory Robertson, Esq., Sheila Hunter | Email correspondence regarding EEOC proceeding | Attorney-Client Communication, Attorney Work Product |
| 17. | 6/26/09 | Claudia Mellon | Ann Bradley, Esq., Anna Orsenigo | | T. Koumoulis | Attorney-Client Communication, Attorney Work Product |

2

**PRIVILEGE LOG**
**Koumoulis et al v. IFMG et al, 10-cv-0887**

| Doc. | Date | Author/From | To | Cc | Subject | Privilege |
|---|---|---|---|---|---|---|
| 18. | 7/1/09 | Claudia Mellon | Ann Bradley, Esq. | | T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 19. | 7/2/09 | Claudia Mellon | Ann Bradley, Esq., Anna Orsenigo | | Email correspondence regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 20. | 7/6/09-7/7/09 | Claudia Mellon | Anna Orsenigo, Ann Bradley, Esq. | | Email correspondence regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 21. | 7/9/09 | Claudia Mellon | Ann Bradley, Esq. | Sheila Hunter, Anna Orsenigo | Email regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 22. | 7/10/09 | Ann Bradley, Esq. | Claudia Mellon | | Email correspondence regarding T. Koumoulis memo | Attorney-Client Communication, Attorney Work Product |
| 23. | 10/10/08 | Claudia Mellon | Ann Bradley, Esq. | | Email regarding meeting with T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 24. | 1/28/09 | Claudia Mellon | Ann Bradley, Esq. | | Email regarding meeting with T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 25. | 2/4/09-2/5/09 | Claudia Mellon | Ann Bradley, Esq. | | Email correspondence regarding T. Koumoulis performance | Attorney-Client Communication, Attorney Work Product |
| 26. | 2/24/09-2/25/09 | Claudia Mellon | Ann Bradley, Esq. | | Email correspondence regarding T. Koumoulis 2/24/09 email | Attorney-Client Communication, Attorney Work Product |

3

## PRIVILEGE LOG
### Koumoulis et al v. IFMG et al, 10-cv-0887

| Doc. | Date | Author/From | To | Cc | Subject | Privilege |
|------|------|-------------|-----|-----|---------|-----------|
| 27. | 3/2/09 | Ann Bradley, Esq. | Claudia Mellon | | Email correspondence regarding T. Koumoulis 2/24/09 email | Attorney-Client Communication, Attorney Work Product |
| 28. | 3/4/09 | Claudia Mellon | Ann Bradley, Esq. | | Email regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 29. | 3/10/09 | Claudia Mellon | Ann Bradley, Esq. | | Email regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 30. | 5/21/08 | Kathy Bakke | Marjory Robertson, Esq., Ann Bradley, Esq. | Kim Halpin, Lynette Sarno, Esq. | Email regarding EEOC complaint | Attorney-Client Communication, Attorney Work Product |
| 31. | 7/14/09 | Kathy Bakke | Ann Bradley, Esq. | | Email regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 32. | 7/16/09 | Kathy Bakke | Ann Bradley, Esq., Sheila Hunter | | Email correspondence regarding T. Koumoulis email | Attorney-Client Communication, Attorney Work Product |
| 33. | 7/20/09 | Kathy Bakke | Ann Bradley, Esq. | Sheila Hunter | Email correspondence regarding T. Koumoulis investigation | Attorney-Client Communication, Attorney Work Product |
| 34. | 7/20/09 | Kathy Bakke | Ann Bradley, Esq. | Sheila Hunter | Email correspondence regarding T. Koumoulis investigation | Attorney-Client Communication, Attorney Work Product |
| 35. | 7/30/09 | Kathy Bakke | Ann Bradley, Esq. | | Email correspondence regarding T. Koumoulis investigation | Attorney-Client Communication, Attorney Work Product |

4

**PRIVILEGE LOG**
**Koumoulis et al v. IFMG et al, 10-cv-0887**

| Doc. | Date | Author/From | To | Cc | Subject | Privilege |
|---|---|---|---|---|---|---|
| 36. | 7/31/09 | Kathy Bakke | Ann Bradley, Esq. | Sheila Hunter | Email correspondence regarding T. Koumoulis investigation | Attorney-Client Communication, Attorney Work Product |
| 37. | 8/4/09 | Kathy Bakke | Ann Bradley Esq. | Sheila Hunter | Email correspondence regarding T. Koumoulis investigation | Attorney-Client Communication, Attorney Work Product |
| 38. | 8/11/09 | Kathy Bakke | Ann Bradley, Esq. | Sheila Hunter | Email correspondence regarding T. Koumoulis investigation | Attorney-Client Communication, Attorney Work Product |
| 39. | 8/12/09 | Kathy Bakke | Ann Bradley, Esq. | Sheila Hunter | Email correspondence regarding T. Koumoulis investigation | Attorney-Client Communication, Attorney Work Product |
| 40. | 8/14/09 | Kathy Bakke | Ann Bradley, Esq., Chad Perry, Esq., Sheila Hunter | | Email correspondence regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 41. | 8/24/09 | Kathy Bakke | Ann Bradley, Esq. | | Email correspondence regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 42. | 8/27/09 | Kathy Bakke | Ann Bradley, Esq. | | Email correspondence regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 43. | 8/28/09 | Kathy Bakke | Ann Bradley, Esq. | | Email correspondence regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 44. | 8/31/09 | Kathy Bakke | Ann Bradley, Esq | Sheila Hunter, Chad Perry, Esq. | Email correspondence regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |

5

**PRIVILEGE LOG**
**Koumoulis et al v. IFMG et al. 10-cv-0887**

| Doc. | Date | Author/From | To | Cc | Subject | Privilege |
|------|------|-------------|-----|-----|---------|-----------|
| 45. | 9/1/09-9/2/09 | Kathy Bakke | Ann Bradley, Esq. | | Email correspondence regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 46. | 9/2/09 | Kathy Bakke | Sheila Hunter, Ann Bradley, Esq., Chad Perry, Esq. | | Email correspondence regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 47. | 12/9/09 | Kathy Bakke | Ann Bradley, Esq. | | Email correspondence regarding EEOC | Attorney-Client Communication, Attorney Work Product |
| 48. | 7/20/09 | Ann Bradley, Esq. | Kathy Bakke | | Email regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 49. | 8/3/09 | Ann Bradley, Esq. | Kathy Bakke | | Email regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 50. | 11/18/08 | Ann Bradley, Esq. | Kathy Bakke | | Email regarding T. Koumoulis email | Attorney-Client Communication, Attorney Work Product |
| 51. | 11/20/08 | David Freniere, Esq. | Claudia Mellon, Ann Bradley, Esq. | Sheila Hunter | Email regarding T. Koumoulis email | Attorney-Client Communication, Attorney Work Product |
| 52. | 1/6/09 | Ann Bradley, Esq. | Claudia Mellon | | Email correspondence regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 53. | 3/2/09 | Ann Bradley, Esq. | Claudia Mellon | | Email correspondence regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |

6

**PRIVILEGE LOG**
**Koumoulis et al v. IFMG et al, 10-cv-0887**

| Doc. | Date | Author/From | To | Cc | Subject | Privilege |
|---|---|---|---|---|---|---|
| 54. | | Kathy Bakke | | | Questions from A. Bradley, Esq. regarding T. Koumoulis investigation | Attorney-Client Communication, Attorney Work Product |
| 55. | 1/18/08 | Marjory Robertson, Esq. | Lou Mastropietro, Kim Halpin, Mary Healy, Matt Baval, Robert Summa | | Email correspondence regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 56. | 8/7/08 | Lou Mastropietro | Marjory Robertson, Esq. | | Email regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 57. | 7/30/09 | Kathy Bakke | Ann Bradley, Esq. | | Redacted question from Investigation File regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |

7

# EXHIBIT B

**DEFENDANTS' PRIVILEGE LOG ENTRIES AS TO ALLEGED INVESTIGATIONS:**

| SUBJECT | PRIVILEGE LOG ENTRY NO. |
|---|---|
| 1.   Mr. Koumoulis' complaint of Feb. 24, 2009: | 26, 27, 28, 29, 53 |
| 2.   Mr. Koumoulis' complaint of July 9, 2009: | 21, 22, 31, 32, 33, 34, 35, 36, 37, 38, 39, 48, 49, 57 |
| 3.   Mr. Koumoulis' complaint of Nov. 14, 2008: | 8, 9, 50, 51 |
| 4.   Investigations regarding Mr. Koumoulis: | 54 |
| 5.   Investigations of Plaintiffs' EEOC Charges: | 12, 16, 30, 47 |

# EXHIBIT C

1           ROBERTSON

2           MS. VARON:  Objection.

3      Q.    As an in-house employment lawyer at

4   Sun Life and covering IFMG, have you ever as an

5   in-house attorney concluded that there was

6   discrimination going on at Sun Life or IFMG?

7           MS. VARON:  Objection.  Again, this

8           is a -- you're taking the deposition of

9           counsel for an organization.  We've waived

10          privilege with respect to three narrow

11          issues, as to the investigations of

12          Mr. Koumoulis and Mr. Hatzis' complaints

13          and with respect to Mr. Hatzis'

14          termination, in which capacity

15          Ms. Robertson served as a decision-maker,

16          but to the extent that you're asking for

17          information based on her duties as counsel

18          for one or both companies, that is not why

19          she's here today and she should not be

20          testifying to these matters.

21          MR. GOLDBERG:  I would ask you to

22          let the witness answer whether she's ever

23          found discrimination as an employer lawyer

24          covering Sun Life or IFMG.  She either

25          says I found discrimination or no, I have

```
 1                    ROBERTSON
 2        with the witness.
 3              MS. VARON:  Okay.  If you recall.
 4        A.    Yes.
 5              MR. GOLDBERG:  Jodi, are you taking
 6        the position that any communications
 7        between Mr. Keating and Ms. Robertson are
 8        covered by the attorney/client privilege?
 9              MS. VARON:  To the extent that
10        those communications would have been in
11        connection with the EEOC charge, the
12        company's response to that charge, then
13        yes.
14              MR. GOLDBERG:  Okay.  So the notes
15        that Ms. Robertson -- the notes that I've
16        seen in the production that concern
17        Mr. Hatzis talking to Ms. Robertson or
18        Ms. Healy, you're not claiming a
19        privilege, because you produced those?
20              MS. VARON:  Correct.  To the extent
21        those conversations happened in connection
22        with the company's internal investigation,
23        then that's correct.  Just so I'm clear
24        for the record, to the extent there were
25        internal investigations separate and apart
```

1          ROBERTSON

2      from the plaintiffs' EEOC charges and the

3      company's defense of those charges --

4          MR. GOLDBERG:  Is the company --

5      Jodi, I'll ask you this then, is the

6      company relying on its EEOC submissions to

7      defend this lawsuit?

8          MS. VARON:  Mr. Goldberg, I don't

9      understand the question.

10     Q.    Let me ask it this way then,

11  Ms. Robertson, when you spoke with Mr. Keating,

12  did you prepare notes?

13         THE WITNESS:  Can I answer that?

14         MS. VARON:  Again, are you speaking

15     about conversations with Mr. Keating?

16         (Cell phone ringing.)

17     A.    Who is that?

18     Q.    It's not me.  Do you need a break?

19     A.    No.  I have no idea why that's

20  happening.  I don't have alarms.  Apparently I

21  do.  Sorry.  Go ahead.

22         MS. VARON:  If Ms. Robertson had

23     conversations with Mr. Keating in

24     connection with the company's response to

25     the EEOC charges, there was a pending

1                        MELLON

2         A.    What I can say is I suggested

3    adding language with respect to focusing on

4    what is within his control.  I don't know that

5    I specifically provided that sentence that is

6    included here.

7                   MS. KLEIN:  "Here" is 81.

8         Q.    And "here" is the evaluation, 81.

9         A.    The last sentence.

10        Q.    Understood, understood.

11        A.    I don't know if this can indicate

12   if there's an attachment.

13        Q.    I'll go back and double check but I

14   did not see one.

15        A.    Okay.

16        Q.    Exhibit 35 and the second page

17   which was your December 2, 2008 memo.  Is that

18   one of the -- is that a document that you

19   worked on with outside counsel?  It has the

20   footer on it that seems to indicate that.

21        A.    My practice would be to draft the

22   findings and consult with outside counsel, but

23   I would draft the document and have it reviewed

24   by outside counsel.

25        Q.    And you see the footer, the DM, for

1                              **MELLON**

2    Duane Morris?

3              A.    Yes.

4              Q.    So this document you drafted and

5    got in consultation with Ann Bradley, an

6    attorney at Duane Morris?

7              A.    So, according to my recollection

8    and my practice, I would draft a document and

9    would have outside counsel review it,

10   particularly in this matter.

11                  Again, we were providing

12   Mr. Koumoulis the benefit of the doubt wanting

13   to make sure that there was -- everything was

14   viewed, you know, in his favor.  So I would

15   have consulted with Ann Bradley and I would

16   have requested for her to review that document.

17             Q.    And you would consider any feedback

18   from counsel, suggestions for the document?

19             A.    Counsel generally provides

20   recommendations on courses of action and then I

21   would make the decision whether or not to

22   include them.

23             Q.    Okay.  Do you know who made the

24   decision to give Mr. Koumoulis a final written

25   warning dated July 7, 2009?

                        MELLON
1
2    yes.
3          Q.    Okay.  And the HR personnel that
4    participated in making that recommendation,
5    you're including yourself?
6          A.    Yes.
7          Q.    You're including Anna Orsenigo?
8          A.    Yes.
9          Q.    And if Ms. Bakke was back from
10   maternity leave, you're including her as well?
11         A.    Yes.
12         Q.    And you're not sure about Sheila
13   Hunter?
14         A.    Yes, I just don't recall.
15         Q.    What about outside counsel, was
16   outside counsel involved in the decision to
17   give the final warning?
18              + MS. KLEIN:  Objection,
19         privileged.
20              Don't answer.
21         Q.    Was outside counsel conferred,
22   consulted with, with respect to giving a final
23   warning to Mr. Koumoulis?
24              MS. KLEIN:  You can answer that.
25         A.    We would have likely consulted with

```
 1                        MELLON
 2    outside counsel.
 3            Q.    And is it the same person, Ann
 4    Bradley?
 5            A.    Yes.
 6            Q.    Okay.  It's certainly the Duane
 7    Morris law firm but most likely Ann Bradley?
 8            A.    Yes.
 9            Q.    When the final warning was given to
10    Mr. Koumoulis, did that place his employment in
11    jeopardy?
12            A.    I'd like to understand what you
13    mean by placing it in jeopardy.  I'd like to
14    understand what that means.
15            Q.    Did that final warning have a
16    threat of termination in it?
17            A.    I think, again, what we're trying
18    to do is provide corrective action so that it's
19    clear what the expectations are so that action
20    can be taken to correct it.  I mean, at any
21    point we can't guarantee employment, of course,
22    I mean, but I think here it says --
23    specifically states, "You must demonstrate
24    immediate, consistent and sustained
25    improvement.  Any further unsatisfactory
```

```
 1                         BAKKE
 2        Q.        I'm showing you your July 29, 2009
 3   memo to Mr. Koumoulis.  Who prepared this memo?
 4        A.        I prepared it.
 5        Q.        Okay.  I see that it has on it --
 6   at the bottom left it has a footer with a
 7   document ID code?
 8        A.        Yes.
 9        Q.        Is that code something that means
10   it came from LPL's -- it was prepared on LPL's
11   computer system?
12        A.        I would have prepared it on my
13   computer system.  It would have been a
14   conversation that I would have worked with our
15   counsel on and then if they sent it back it
16   looks like it had this on it.
17        Q.        Looking at Exhibit 9 which is Duane
18   Morris' -- it's the defendant's interrogatory
19   responses which my understanding came from the
20   Duane Morris computer system, it has a very
21   similar footer, do you see?
22                  So would it be correct that this
23   document in its final form came from the Duane
24   Morris computer system?
25        A.        Yes, but I don't know that -- that
```

# EXHIBIT D

MEMORANDUM

| | |
|---|---|
| Date: | December 2, 2008 |
| To: | Tasso Koumoulis |
| Cc: | Lou Mastropietro |
| From: | Claudia Mellon, Human Resources |
| Subject: | Findings and Conclusion of Investigation |

We have completed our internal investigation regarding the communication that you drafted and sent to James Griffin, Regional Manager of Astoria Bank, dated November 14, 2008, which you forwarded to LPL Human Resources, as well as other LPL client contacts and employees.

During the investigation we interviewed you, Lou Mastropietro and referred to Matt Baval's notes regarding the November 13th meeting that is referenced in your communication to James Griffin.

Based on the review of the available facts and circumstances, we believe James Griffin requested a meeting with you to address a comment he had made to his managers about the financial consultants. At the meeting, you reported you felt "attacked," which led you to "lash out" by sending the email to James Griffin, with copies to others at Astoria Bank and LPL Financial. In a follow-up conversation with me, you mentioned feeling "harassed" and "defamed" by James Griffin; however, you quickly recanted these statements. I stressed how seriously LPL takes such concerns, but you reassured me that you wanted to return to Astoria and had no problem working with James Griffin or Matt Baval. Based on your request and assurances, we agreed you would return to work at Astoria on December 3, 2008.

As a reminder, we discussed professionalism in the workplace and you indicated that you understood the expectation and importance of professional communications with all bank personnel and LPL employees. You further agreed to continue working with Lou Mastropietro on the plan you had proposed to address your ongoing efforts in the Astoria Branch.

LPL is committed to a workplace free of illegal discrimination, harassment or unprofessional conduct in a work-related context. In addition, LPL Financial will not tolerate any retaliation against individuals who raise concerns about possible inappropriate conduct in the workplace or those who may have participated in this investigation.

Thank you for cooperating with this investigation. If you have any questions or further concerns, or feel that you are the recipient of any retaliatory or improper treatment by LPL or Bank employees, you should contact me immediately.



MEMORANDUM

| | |
|---|---|
| Date: | February 5, 2009 |
| To: | Tasso Koumoulis |
| Cc: | Human Resources |
| From: | Lou Mastropietro |

Subject:     Findings and Conclusion of Investigation

As we discussed in our meeting of January 7, 2009, several concerns have been brought to our attention by our customers related to your performance including meeting deadlines and professionalism. The following are the issues and findings.

Pre-qualifying bank customers. On December 9, 2008, we received an email from James Griffin concerning a $100,000 potential sale. You acknowledged you knew of the situation and agreed that the statements in the email are, in fact, accurate. As we discussed, you are the expert in the branch as far as investment and insurance products/services and need to be the one to qualify potential customers. We discussed that you should take more initiative to communicate with the branch as to why it was not a qualified referral.

Professional behavior. On December 19, 2008, we received a complaint concerning you asking for "a new job" as your Secret Santa grab bag gift. You acknowledged that you made this statement and admitted, in hindsight, it was inappropriate.

Schedule at the Branch offices. On December 26, 2008, you did not work your allotted time at the 29th Branch. You admitted your absence and explained to me that your agreement with the former manager of the 29th Street Branch was that, if the branch lived up to the agreed-upon expectations, you would spend your allotted time in that branch.

To clarify any confusion that may have existed due to prior management, for first quarter 2009 you are to spend your allotted time in the 29th Street Branch. If you need to conduct business at the Main Branch on your scheduled day at the 29th Branch, you should complete the business at the Main Branch and return to the 29th Street Branch to provide coverage for the balance of your assigned day. At the end of first quarter 2009, we will review the results and adjust the schedule accordingly.

Bank customer issue. On January 5, 2009 James Griffin expressed concerns regarding your handling of a potential $250,000 sale for a bank customer. You acknowledged that you knew of the situation and stated that the circumstances stated in the email were not accurate. In that instance, you did contact the customer and followed up to complete the transaction. Unfortunately, your actions were unclear to our customer, which raised unnecessary concerns.

Timely completion of the Business Expectation Plans. You did not complete the assigned task of meeting with both your branch managers by October 24, 2008 to establish a mutually agreeable expectations plan. I informed you of this assignment in my October 8, 2008 meeting with you. I also reminded you about the Main Office Branch plan in my October 24, 2008 email to you. You finally submitted the Main Office plan on January 23, 2009.

Tasso, on several occasions we discussed professionalism in the workplace, and you indicated that you understood the expectation and importance of professional communications with all bank personnel and LPL employees. However, we continue to receive concerns from our customers.

It is critical for your continued employment to develop trust and confidence with our customer by acting professionally, meeting deadlines and proactively working to improve your relationship with

DMZ\1695523.2



P0311

the bank. You need to demonstrate immediate, consistent and sustained improvement in these key areas. I will continue meeting with you periodically to work on these areas.

Thank you for your cooperation in discussing these matters. Please call me if you have any questions. If you feel that you are the recipient of any retaliatory, unequal or improper treatment by LPL or Bank employees, you should contact me immediately.

**CONFIDENTIAL MEMORANDUM**

**To:**   Tasso Koumoulis

**From:** Kathy Bakke

**Date:** July 29, 2009

**Re:**   Findings and Conclusions of Investigation

We have completed our investigation of your complaint of alleged discrimination, harassment, and retaliation, which you submitted to the company on Thursday afternoon July 9, 2009. During the period July 13 – July 29, 2009, I interviewed Lou Mastropietro, Warren Bausert, Bruce Miller, and Claudia Mellon. I also reviewed all documents pertaining to this matter including the Final Written Warning, past emails, investigation conclusions, and documented conversations.

As you know, I attempted to interview you, as well; however, you would not discuss the issues with me unless LPL Financial rescinded your Final Written Warning in writing. I explained that we would potentially modify or rescind the warning if facts uncovered during the investigation warranted such an action. I encouraged you to be part of this investigation, yet you were unwilling to do so if we did not agree to your requests.

All the facts and findings have now been reviewed. Based upon the information obtained in this investigation, we conclude that the allegations you raised about discrimination, harassment, and retaliation are unfounded. Following is a summary of our findings:

- Professionalism was properly addressed by LPL management due to continuing complaints received from LPL's client, Astoria Bank, where you are assigned as a Financial Consultant. The complaints occurred over a period of time, were judged credible by the managers receiving them and were discussed with you each time. The content of the Final Warning is consistent with these prior complaints and your failure to improve your relationship with the bank.

- Adherence to schedule was properly addressed by LPL management due to repeated complaints from the bank that you did not maintain your assigned schedule. You admitted you did not maintain your schedule at the 29th Street branch despite repeated counseling and Letters of Expectations you signed clearly indicating that schedule adherence is a requirement of the Financial Consultant job. We confirmed that other Financial Consultants are required to adhere to their assigned schedules and, when issues arise, employees are similarly counseled. Accordingly, you have not been "singled out for this treatment," as you claim. In any event, we have learned that your schedule has been adjusted to avoid any further issues.



PLAINTIFF'S
EXHIBIT
51
ALL-STATE LEGAL®

**P0846**

- Your allegation that complaints from bank employees are "frivolous" and intended to "distract the bank from the employee's own lack of performance" seems unlikely given the multiple sources of the complaints, your admissions as to certain conduct about which bank employees have complained, the observations of LPL management in a position to observe your conduct and the consistency of the feedback obtained from bank management. Even if true, such criticism does not constitute illegal discrimination based on a protected status.

- We found no basis to believe that the Final Warning was issued in retaliation for the EEOC Charge you filed. Not only was the Charge filed more than a year ago based on alleged events that occurred before you became an LPL employee, but your performance has failed to meet legitimate business expectations and the counselings and warnings you have received are an appropriate response to ongoing client complaints.

- We found the "Outstanding Client Service" award you received to be irrelevant to the issues raised because the award is based solely on year-end 2008 total gross production, as was noted in the card you received with the desk plaque. We confirmed that the award does not take into account how Astoria Bank, its employees or its customers actually view your customer service or professionalism.

LPL management has had multiple conversations with you in the past on this subject and has made every attempt to investigate issues and complaints that you have brought to the company's attention. As a result of this investigation, we have determined that the Final Written Warning was in line and appropriate with LPL's standards of performance and disciplinary procedures.

Thank you for bringing your concerns to our attention. LPL Financial is committed to a workplace free of illegal discrimination, harassment or unprofessional conduct. In addition, LPL Financial will not tolerate retaliation against individuals who raise concerns of inappropriate conduct in the workplace or those who participated in this investigation.

If you have any questions or additional concerns please contact me at (704) 348-4123.

**CONFIDENTIAL MEMORANDUM**

**To:** Tasso Koumoulis

**From:** Kathy Bakke

**Date:** September 8, 2009

**Re:** Findings and Conclusions of Investigation & Termination of Employment

We have completed our investigation of the complaint of Daniel Cristescu, Licensed Branch Employee of Astoria, about your conduct at the bank on August 7, 2009, when Daniel attempted to enlist your help to close a sale with a customer. The complaint was submitted to LPL on Wednesday August 12, 2009 by James Griffin. The investigation occurred August 14 -- August 31, 2009.

As you know, Lou Mastropietro, Warren Bausert, and I attempted to discuss this complaint with you on August 14, 2009; however, you refused without your attorney present. We explained that this was an internal matter and that hearing your perspective on the incident was important to us, because you are on a Final Written Warning (as discussed with you on July 7, 2009) due, in part, to your lack of professionalism at Astoria. Your response was "no comment" and "draw your own conclusions."

Two further attempts to interview you were unsuccessful; however, you did send me an e-mail recounting an incident in which Daniel Cristescu turned the GIS kiosk in such a way that your photograph was facing the wall not in view of the customers. We investigated this incident, as well as Daniel's complaint.

All the facts and findings have now been reviewed. Following is a summary of our findings:

- Other witnesses corroborated the details of Daniel Cristescu's account of your lack of professionalism on August 7, 2009, which included an inappropriate display of anger toward an Astoria employee and the repeated use of profanity in front of a customer of Astoria; and

- Although Daniel did turn the GIS kiosk, Branch Manager Andrew Materese had it returned it to its normal position as soon as he was aware that it had been moved. In any event, this incident does not justify your conduct toward Daniel on August 7.

LPL management has repeatedly counseled you, both orally and in writing, regarding your lack of professionalism, including issuing a Final Written Warning to you on July 7, 2009. As stated in this Warning, any further unsatisfactory performance would lead to additional disciplinary action. LPL finds your behavior on August 7, 2009 to be highly unprofessional and inappropriate. As a result, your employment is terminated effective today.

DMZ00016833.2



P0849