UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
TASSO KOUMOULIS, CHRISTOS HATZIS,    :
DOMINIC MILITO and PETER DAFNIOTIS,  :
                                     :
             Plaintiffs,              :       **MEMORANDUM & ORDER**
                                     :
        -against-                  :       10-CV-0887 (PKC) (VMS)
                                     :
INDEPENDENT FINANCIAL MARKETING      :
GROUP, INC., LPL FINANCIAL           :
CORPORATION and ASTORIA FEDERAL      :
SAVING AND LOAN ASSOCIATION,         :
                                     :
           Defendants.             :
                                     :
---------------------------------------------------------- x

**Scanlon, Vera M., United States Magistrate Judge:**

      Plaintiffs move to compel the production of documents, withheld as privileged, that contain communications between Defendants and their outside counsel concerning internal investigations of Plaintiff Tasso Koumoulis's discrimination and retaliation complaints. See Letter from Kenneth A. Goldberg, Esq. to Hon. Vera M. Scanlon (the "Joint Letter"), ECF No. 41. Plaintiffs also seek to depose Defendants' outside counsel concerning these internal investigations. Id. at 4. Defendants move to compel Plaintiffs to provide a privilege log that would list communications between Plaintiffs and their counsel regarding internal complaints and internal investigations. Id. at 9. After reviewing the Parties' submissions, this Court ordered that Defendants file, under seal, selected documents for in camera review. See Order, Sept. 30, 2013, ECF. For the reasons stated herein, Plaintiffs' motion to compel is granted in part and denied in part. Defendants' motion to compel is granted in part and denied in part.

## I.    BACKGROUND

Plaintiffs Mr. Tasso Koumoulis ("Mr. Koumoulis"), Christos Hatzis ("Mr. Hatzis"),

Dominic Milito ("Mr. Milito") and Peter Dafniotis ("Mr. Dafniotis") are current and former

employees of Defendants Independent Financial Marketing Group, Inc., LPL Financial

Corporation (collectively, "LPL")[1] and Astoria Federal Savings and Loan Association ("Astoria

Federal").  Am. Compl. ¶¶ 14-19, Mar. 19, 2010, ECF No. 3.

Plaintiffs allege that Defendants discriminated against them on the basis of their religion,

national origin and race or color; subjected Plaintiffs to a hostile work environment; and

retaliated against Plaintiffs for their complaints of unlawful discrimination.  Id. ¶¶ 22-25.

Plaintiffs' religious affiliation is with the Greek Orthodox Church.  Id. ¶ 21.  Mr. Koumoulis,

Mr. Hatzis and Mr. Dafniotis are of Greek ancestry.  Id. ¶ 21.  Mr. Hatzis claims Defendants

further discriminated against him on the basis of his disability, which included major depressive

disorder.  Id. ¶¶ 48-58.  Mr. Koumoulis alleges Defendants also discriminated against him on the

basis of his age, which was fifty-eight at the time of his firing.  Id. ¶¶ 59-71.  Plaintiffs allege

that LPL's actions violated Title VII, 42 U.S.C. § 2000e et seq.; Section 1981 of the Civil Rights

Act of 1866 ("Section 1981"), 42 U.S.C. § 1981 et seq.; the Americans with Disabilities Act (the

"ADA"), 42 U.S.C. § 12101 et seq.; and the Age Discrimination in Employment Act (the

"ADEA"), 29 U.S.C. § 621 et seq.  Furthermore, Plaintiffs allege that all three Defendants'

discriminatory and retaliatory behavior violated the New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law

("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.  See Am. Compl.

---

[1] LPL Financial Corporation acquired Independent Financial Marketing Group, Inc. in 2007.  Id.
¶ 4; Answer ¶ 4.

Defendants generally deny these allegations and raise several affirmative defenses, including a Fifth Affirmative Defense that:

> Plaintiffs' claims are barred, in whole or in part, because Defendants exercised reasonable care to prevent and correct promptly any discriminatory behavior by having anti-discrimination policies and procedures for investigating and preventing discrimination with a complaint procedure and Plaintiffs unreasonably failed to take action, pursuant to these policies or otherwise, to be free from discrimination.

Answer 14, May 24, 2010, ECF No. 8.

The Parties have almost concluded discovery. They have exchanged thousands of documents and conducted depositions. The present dispute concerns the production of certain documents identified by Defendants on their privilege log. See Joint Letter Ex. A ("Privilege Log"). This privilege log lists fifty-seven documents, each one of which was withheld based on both attorney-client privilege and attorney work-product privilege. Id.

The withheld documents concern Mr. Koumoulis's internal complaints of unlawful discrimination and retaliation, and Defendants' internal investigations. See Joint Letter 2.[2] Mr. Koumoulis raised several internal complaints, the first of which was a complaint on or about January 9, 2008 to Ms. Mary Healy ("Ms. Healy"), a Human Resources employee, about Mr. Matt Baval ("Mr. Baval"), a Sales Manager. Am. Compl. ¶ 66; see Answer ¶ 66. Plaintiffs allege that Mr. Baval made numerous, derogatory comments about Greek people, the Greek Orthodox religion and Mr. Koumoulis's age. Am. Compl. ¶¶ 27-40, 59-65. Neither the pleadings nor the motion papers states whether Mr. Koumoulis's January 2008 complaint was a

---

[2] Details of the other Plaintiffs' complaints are not discussed in this Memorandum and Order because the withheld documents concern only Mr. Koumoulis's complaints.

3

protected complaint of unlawful discrimination and/or retaliation; the Parties also do not explain whether Defendants conducted an internal investigation at that time.[3]

Mr. Koumoulis's next complaint was raised in or around March 2008, when he and the other Plaintiffs filed their Charges against Defendants with the United States Equal Employment Opportunity Commission ("EEOC").  Am. Compl. ¶¶ 9, 67; see Answer ¶ 67.

On November 14, 2008, Mr. Koumoulis "submitted a memorandum regarding a meeting" that was held the prior day.  Am. Compl. ¶ 68.  Defendants placed Mr. Koumoulis on administrative leave while they conducted an investigation.  Id.  On December 2, 2008, they issued him a memorandum upon the completion of that investigation.  Id.; see Answer ¶ 68; Joint Letter Ex. D at P0832 (December 2, 2008 memorandum).  The pleadings again do not specify whether Mr. Koumoulis's November 14, 2008 complaint was a complaint of unlawful discrimination and/or retaliation, nor do the pleadings specify whether Defendants' investigation concerned discrimination and/or retaliation.  In their motion papers, Plaintiffs describe Mr. Koumoulis's November 14, 2008 memorandum as a "protected complaint," and Defendants do not dispute this point; this Court will therefore accept Plaintiffs' unrefuted representation for the purposes of this motion.  Joint Letter 2.

Plaintiffs further allege that Mr. Koumoulis was issued an "unjustified memorandum" related to customers' concerns on or about February 5, 2009, and he responded in writing on February 24, 2009.  Am. Compl. ¶ 69; Answer ¶ 69 (confirming these dates); Joint Letter Ex. D at P0311-12 (February 5, 2009 memorandum).  Plaintiffs contend, again without opposition, that Mr. Koumoulis's February 24, 2009 response was a "protected complaint."  Joint Letter 2.  The documents reviewed in camera provide some support for this assertion.

---

[3] Only one withheld document is dated around this time.  See Privilege Log Doc. No. 55 (document dated Jan. 18, 2008).

On July 7, 2009, Defendants issued Mr. Koumoulis a final warning that criticized his job performance. Am. Compl. ¶ 70; Answer ¶ 70. Two days later, on July 9, 2009, Mr. Koumoulis filed an internal complaint that the parties admit included allegations of discrimination, harassment and retaliation. Am. Compl. ¶ 70; Answer ¶ 70. Defendants sent Mr. Koumoulis a memorandum titled "Findings and Conclusions of Investigation" on July 29, 2009; in this memorandum, Defendants concluded that his complaints were "unfounded." Joint Letter Ex. D at P0846-47. Defendants fired Mr. Koumoulis on September 8, 2009. Am. Compl. ¶ 71; Answer ¶ 71. The Plaintiffs received their Notice of Right to Sue from the EEOC in December 2009, and they filed the present action on March 1, 2010. Am. Compl. ¶ 10; Compl., Mar. 1, 2010, ECF No. 1.

During a telephone conference with the Court, Defendants described the withheld attorney-client communications as documents concerning the present litigation and the EEOC Charges; concerning "general outside counsel used in conjunction with performance issues"; "generally privileged documents that are not even arguably part of the investigation"; and an estimated "six to ten" "isolated e-mails between outside counsel and the [human resources] individuals" related to the internal investigation, in which outside attorneys "provid[ed] legal advice but [did] not conduct[] the investigation, [and did] not decid[e] any business decisions." Tel. Conference Tr. 16:15-17:22, Apr. 8, 2013, ECF No. 47.

A few privilege log entries involve Defendants' in-house counsel Marjory Robertson, Esq. ("Ms. Robertson"), and not outside counsel. See Privilege Log. Based on Defendants' privilege log, Ms. Robertson was involved in matters related to Mr. Koumoulis since at least January 8, 2008. See Privilege Log Doc No. 55 (email "regarding T. Koumoulis" sent by Ms. Robertson on Jan. 8, 2008). The Parties have provided little explanation of Ms. Robertson's role

in the internal investigations.  In addition to Ms. Robertson and Ms. Healy, several members of Defendants' human resources staff participated in matters concerning Mr. Koumoulis: Ms. Claudia Mellon ("Ms. Mellon"), Ms. Anna Orsenigo ("Ms. Orsenigo"), Ms. Kathy Bakke ("Ms. Bakke") and Ms. Sheila Hunter ("Ms. Hunter").  <u>See</u> Joint Letter Ex. C at Mellon 141:3-17.

Most of the communications on the privilege log include Ann Bradley, Esq. ("Ms. Bradley") of the law firm Duane Morris LLP.  <u>See</u> Privilege Log.  The pleadings and motions papers are silent as to precisely when outside counsel became involved in matters related to Mr. Koumoulis, but Ms. Bradley has been involved since at least May 21, 2008.  <u>See</u> Privilege Log Doc. No. 30.  Other than a few pages of deposition transcripts and what is apparent from the documents reviewed <u>in camera</u>, there is no evidence before this Court as to the intended scope or purpose of Ms. Bradley's involvement.  <u>See</u> Joint Letter Ex. C at Mellon 136:4-22, 141:21-142:8 (Ms. Mellon consulted Ms. Bradley on the internal investigations); Joint Letter Ex. C at Bakke 234:9-25 (Ms. Bakke worked with counsel from Duane Morris LLP on a draft memorandum); <u>but see</u> Joint Letter 6 (contending that "outside counsel did not participate in the factual investigation, interview witnesses or otherwise create fact work product upon which Defendants will rely in this litigation . . . .").  Defendants did not provide sworn affidavits or additional deposition transcripts that might have clarified Ms. Bradley's role, but it appears that her role was focused on the internal investigations.  References to "EEOC counsel" in the documents filed under seal suggest that, in addition to hiring Ms. Bradley, Defendants used another attorney or other attorneys to assist with Plaintiffs' EEOC Charges.[4]  In addition, attorneys at Duane Morris other than Ms. Bradley represent Defendants before this Court.

---

[4] Privilege Log Document No. 30 refers to Lynette Sarno, Esq. ("Ms. Sarno").  The Parties have not explained Ms. Sarno's role in this matter or her employment relationship to Defendants.

## II.    DISCUSSION

Plaintiffs identify five categories of documents included on Defendants' privilege log which Plaintiffs believe are discoverable: (1) documents concerning Mr. Koumoulis's November 14, 2008 complaint, (2) documents concerning his February 24, 2009 complaint, (3) documents concerning his July 9, 2009 complaint, (4) documents concerning "other investigations of Mr. Koumoulis," and 5) documents related to Plaintiffs' EEOC Charges.  See Joint Letter 2. Plaintiffs specified twenty-eight documents described in Defendants' privilege log that appear to be related to these five categories, but Plaintiffs note that it is difficult to assess the documents based on Defendants' vague descriptions.  See id. at Ex. B.

Plaintiffs contend that notwithstanding any claim of privilege, Defendants should be ordered to produce documents related to the internal investigations.  Should this Court find that Defendants raised a defense based on the sufficiency of their investigations,[5] Plaintiffs allege that Defendants waived any attendant privilege by relying on the internal investigations as a defense.  Furthermore, Plaintiffs allege Defendants waived all claims of privilege when Defendants' counsel, Joanna Varon, Esq. ("Ms. Varon"), stated during Ms. Robertson's deposition that "[w]e've waived privilege with respect to three narrow issues, as to the investigations of Mr. Koumoulis and Mr. Hatzis'[s] complaints and with respect to Mr. Hatzis'[s] termination."  Joint Letter at 2; Id. Ex. C at Robertson 40:7-20.  According to Plaintiffs, Defendants must produce all documents related to the internal investigations, including their communications with outside counsel and outside counsel's drafts of disciplinary memoranda.  Id. at 4-5.  Plaintiffs also seek to depose outside counsel concerning the internal investigations.  Id. at 4.

---

[5] Plaintiffs assert that Defendants failed to plead any affirmative defense related to the sufficiency of their internal investigations.

Defendants maintain that the privilege remains intact because their affirmative defense relies on the sufficiency of their internal investigations, not on their communications with outside counsel.  Id. at 6.  Defendants also contend that because these attorney-client communications post-date Plaintiffs' EEOC Charges, they are inherently part of Defendants' litigation preparation, and are therefore privileged.  Id.[6]  According to Defendants, they have already produced all relevant, non-privileged documents related to the internal investigations, including notes and correspondence with their in-house counsel, Ms. Robertson; Plaintiffs also deposed Ms. Robertson "to the extent she was involved in the factual investigation of any complaint, [and] regarding the adequacy of these investigations."  Id. at 6-7; see Tel. Conference Tr. 16:2-18:3.[7]  Ms. Varon's statement, see Joint Letter Ex. C at Robertson 40:7-20, Defendants explain, was a waiver of privilege only as to Ms. Robertson's involvement in the internal investigations. Id. at 8-9.

In addition, Defendants seek the production of Plaintiffs' privilege log.  Id. at 9. Plaintiffs contend that a privilege log is unnecessary because a list of privileged redactions was emailed to Defendants and the information Defendants seek concerns indisputably privileged communications between Mr. Koumoulis and his counsel.  Id. at 5.

For the reasons stated below, Plaintiffs' motion to compel the production of withheld documents is granted in part and denied in part, and Plaintiffs may conduct a limited deposition

---

[6] In their motion papers, Defendants refer to "Plaintiffs' May 2008 EEOC Charge."  Id.  It appears that "May 2008" is a typographical error because, in their Answer, the Defendants admitted that Mr. Koumoulis filed his EEOC Charge in or about March 2008.  Answer ¶ 67; see Am. Compl. ¶¶ 9, 67.

[7] Defendants' counsel stated, "We've produced the investigation file, the underlying documents, the witness interviews, all the e-mail correspondence.  The only e-mails that have been withheld are e-mails with outside counsel that do not go to the fundamental basis of the internal investigation . . . ."  Tel. Conference Tr. 16:2-14.

of Ms. Bradley concerning the business advice she provided to Defendants.  Defendants' motion

to compel Plaintiffs to provide a privilege log is granted in part and denied in part.

### a.  Legal Standards Concerning Privilege and Waiver

Federal Rule of Civil Procedure ("FRCP") 26 requires that the party asserting a privilege

"(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or

tangible things not produced or disclosed—and do so in a manner that, without revealing

information itself privileged or protected, will enable other parties to assess the claim."  Fed. R.

Civ. P. 26(b)(5)(A).  In addition to these requirements, Local Civil Rule 26.2 mandates that for

documents the party asserting privilege provide a description of "(i) the type of document, e.g.,

letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the

document; and (iv) the author of the document, the addressees of the document, and any other

recipients, and, where not apparent, the relationship of the author, addressees, and recipients to

each."  Local Civil Rule 26.2(a)(2)(A).

### 1.  Attorney-Client Privilege

"'The attorney-client privilege protects communications (1) between a client and his or

her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of

obtaining or providing legal assistance.'"  Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v.

U.S. Dep't of Justice, 697 F.3d 184, 207 (2d Cir. 2012) (quoting United States v. Mejia, 655 F.3d

126, 132 (2d Cir.), cert. denied sub nom Rodriguez v. United States, 132 S. Ct. 533 (2011)).  The

purpose of the privilege "is to encourage full and frank communication between attorneys and

their clients and thereby promote broader public interests in the observance of law and

administration of justice."  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); see Fisher v.

United States, 425 U.S. 391, 403 (1976) (The privilege "encourage[s] clients to make full

disclosure to their attorneys.").  "[T]he privilege exists to protect not only the giving of

professional advice to those who can act on it but also the giving of information to the lawyer to

enable him to give sound and informed advice."  Upjohn Co., 449 U.S. at 390.

A more detailed consideration of the first and third factors is warranted in this case.

Concerning the first factor, "the mere fact that a communication is made directly to an attorney,

or an attorney is copied on a memorandum, does not mean that the communication is necessarily

privileged."  U.S. Postal Serv. v. Phelps Dodge Ref. Corp., 852 F. Supp. 156, 160 (E.D.N.Y.

1994).  Likewise, "[i]nvestigatory reports and materials are not protected by the attorney-client

privilege or the work-product doctrine merely because they are provided to, or prepared by,

counsel."  OneBeacon Ins. Co. v. Forman Int'l, Ltd., No. 04 Civ. 2271 (RWS), 2006 WL

3771010, at *5-6 (S.D.N.Y. Dec. 15, 2006) (insurance claim investigation documents were not

privileged because they were created in the ordinary course of business).

In the context of the attorney-client privilege, "legal advice involves the interpretation

and application of legal principles to guide future conduct or to assess past conduct."  In re Cnty.

of Erie, 473 F.3d 413, 419 (2d Cir. 2007) (explaining that legal advice also includes

"considerations and caveats" that are not severable from the core legal advice).  Obtaining or

providing such legal advice must be the "'predominant purpose'" of a privileged communication.

Favors v. Cuomo, 285 F.R.D. 187, 198 (E.D.N.Y. 2012) (quoting In re Cnty. of Erie, 473 F.3d at

420); see Mac-Ray Corp. v. Ricotta, No. 03 Civ. 524 (WMS) (LGF), 2004 WL 1368857, at *2

(W.D.N.Y. June 16, 2004) (a party's communication "limited to a reiteration of the basic facts of

defendant's separation and the submission of his resignation letter" was not a request for legal

advice); see also Allied Irish Banks v. Bank of Am., N.A., 240 F.R.D. 96, 104 (S.D.N.Y. 2007)

(attorneys' draft reports for investigation into rogue trading scheme were not protected where the

drafts were not created primarily to provide legal advice, but "for the purpose of generating the Report, which indisputably did not provide legal advice"); <u>In re 3 Com Corp. Sec. Litig.</u>, No. 89 Civ. 20480 (WAI) (PVT), 1992 WL 456813, at *2 (N.D. Cal. Dec. 10, 1992) (where attorney's edits to draft document were "related to factual information, not legal advice," the drafts were not protected by the attorney-client privilege); <u>but see</u> <u>In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983</u>, 731 F.2d 1032, 1037 (2d Cir. 1984) (draft documents that reflected "confidential requests for legal advice" were protected by the attorney-client privilege).

"Attorneys frequently give to their clients business or other advice which, at least insofar as it can be separated from their essentially professional legal services, gives rise to no privilege whatever." <u>Colton v. United States</u>, 306 F.2d 633, 638 (2d Cir. 1962) (attorney's investment advice was not privileged); <u>see</u> <u>Jacob v. Duane Reade, Inc.</u>, No. 11 Civ. 0160 (JMO) (THK), 2012 WL 651536, at *1-3 (S.D.N.Y. Feb. 28, 2012) (portions of human resources manager's email memorializing meeting with counsel discussing Fair Labor Standards Act exemptions were privileged, but portions discussing employee training were not privileged).  Thus, when an attorney is used as a business consultant, the resulting attorney-client communications will not be privileged.  <u>See</u> <u>In re Cnty. of Erie</u>, 473 F.3d at 421 ("When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged.").[8]  Each attorney-client

---

[8] <u>In re Human Tissue Prods. Liab. Litig.</u>, No. 06 Civ. 135 (WJM), 2009 WL 1097671, at *3 (D.N.J. Apr. 23, 2009) (where the defendant sent contract to outside counsel to obtain business advice, communication was not privileged); <u>Note Funding Corp. v. Bobian Inv. Co.</u>, No. 93 Civ. 7427 (DAB), 1995 WL 662402, at *3 (S.D.N.Y. Nov. 9, 1995) ("[I]f the attorney is called upon to render solely business advice based on an expertise that is distinct from his legal calling, his communications with his client are plainly not protected."); <u>Cal. Union Ins. Co. v. Nat'l Union Fire Ins. Co.</u>, No. 86 Civ. 609 (TJM), 1989 WL 48413, at *2 (N.D.N.Y. Apr. 27, 1989) (attorney's "memorandum contains solely business advice, of the type that would be given by a claims' manager or adjuster," was not privileged).

communication "need not specifically ask for legal advice," but the party asserting the privilege must first establish that "the information is sent to counsel in order for counsel to provide legal advice." Urban Box Office Network, Inc. v. Interfase Managers, L.P., No. 01 Civ. 8854 (LTS) (THK), 2006 WL 1004472, at *4, 6-7 (S.D.N.Y. Apr. 18, 2006) (although there were "legal ramifications" to stock purchase agreement, counsel's edits to capitalization table were not privileged where counsel was "making the same sort of suggestions that [plaintiff's] financial advisor was making"); see Buxbaum v. St. Vincent's Health Servs., Inc., No. 12 Civ. 117 (WWE) (HBF), 2013 WL 74733, at *2-7 (D. Conn. Jan. 7, 2013) (communications between defendants' attorneys and defendants' computer vendor concerning plaintiff's computer were not privileged where no legal advice was sought or provided).

It is well-recognized that in-house counsel may serve both legal and business functions, and courts will scrutinize the nature of their communications before finding that those communications are privileged. See In re Cnty. of Erie, 473 F.3d at 419, 421. Although outside counsel may be more "independent" and less likely "to play dual roles," there is nevertheless no presumption that communications with outside counsel are privileged. TVT Records, Inc. v. Island Def Jam Music Grp., a Div. of UMG Recordings, Inc., No. 02 Civ. 6644 (VM) (DF), 2003 WL 749801, at *2 (S.D.N.Y. Mar. 5, 2003) (portions of communications with outside counsel that did not contain legal advice were not privileged), aff'd in part & rev'd in part, 214 F.R.D. 143 (S.D.N.Y. 2003) (affirming findings concerning outside counsel); see GenOn Mid-Atl., LLC v. Stone & Webster, Inc., No. 11 Civ. 1299 (HB) (FM), 2011 WL 5439046, at *9 (S.D.N.Y. Nov. 10, 2011) (information from outside counsel on project management and project status was not privileged because it was business, not legal, advice); Bank Hapoalim, B.M. v. Am. Home Assur. Co., No. 92 Civ. 3561 (KMW), 1993 WL 37506, at *4 (S.D.N.Y. Feb. 8, 1993)

(documents created by outside counsel hired to "act as claims adjusters, claims process supervisors, or claims investigation monitor[s], rather than as legal advisors," were not privileged); see generally United States v. Ruehle, 583 F.3d 600, 608 n.8 (9th Cir. 2009) (the attorney-client relationship does not create a prima facie presumption of privilege).  Furthermore, "the attorney-client privilege is not available merely by stamping a document that was prepared by an attorney, which contains solely business advice, 'PRIVILEGED AND CONFIDENTIAL' [or] 'Advice of Counsel.'"  Cal. Union Ins. Co., 1989 WL 48413, at *2.

Ultimately, the burden is on the party asserting the attorney-client privilege to establish each element of the three-part standard.  See Mejia, 655 F.3d at 132.  Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege.  See Scholtisek v. Eldre Corp., 441 F. Supp. 2d 459, 462 (W.D.N.Y. 2006) (listing cases); see also Walker v. N.H. Admin. Office of the Courts, No. 11 Civ. 421 (PB), 2013 WL 672584, at *8 (D.N.H. Feb. 22, 2013) ("Defendants' blanket assertion of attorney-client privilege does not suffice to demonstrate that these emails constitute communications made for the purpose of seeking or transmitting legal advice."); Urban Box Office Network, Inc., 2006 WL 1004472, at *6 ("Where there are several possible interpretations of a document based upon the surrounding circumstances, the party asserting the privilege must produce evidence sufficient to satisfy a court that legal, not business, advice is being sought."); Cuno, Inc. v. Pall Corp., 121 F.R.D. 198, 203-04 (E.D.N.Y. 1988) (plaintiff did not establish that memoranda concerning patent review meetings were privileged, despite affidavits that decisions made during these meetings were based on legal advice, where memoranda did not include that legal advice and it was "entirely possible" that decisions were motivated by business, not legal, concerns).  In order to balance the competing values of confidentiality and public disclosure, the privilege is

construed "'narrowly because it renders relevant information undiscoverable'" and applied

"'only where necessary to achieve its purpose.'" Mejia, 655 F.3d at 132 (quoting In re Cnty. of

Erie, 473 F.3d at 418); see Cuno, Inc., 121 F.R.D. at 200 (the attorney-client privilege "is

confined within its narrowest possible limits").

### 2.  Work-Product Privilege

The work-product privilege protects documents created by counsel or per counsel's

directive, in anticipation of litigation.  See In re Grand Jury Subpoenas Dated March 19, 2002 &

August 2, 2002, 318 F.3d 379, 383 (2d Cir. 2003).  The attorney work-product privilege "shelters

the mental processes of the attorney, providing a privileged area within which he can analyze and

prepare his client's case."  United States v. Nobles, 422 U.S. 225, 238 (1975).

As with the attorney-client privilege, the party asserting the work-product privilege

"bears the heavy burden of establishing its applicability."  In re Grand Jury Subpoena Dated July

6, 2005, 510 F.3d 180, 183 (2d Cir. 2007).  However, the work-product privilege "is distinct

from and broader than the attorney-client privilege."  Nobles, 422 U.S. at 238 n.11.  It includes

both opinion work product, such as an attorney's mental impressions or legal theories, and fact

work product, such as factual investigation results.  See In re Grand Jury Subpoena Dated July 6,

2005, 510 F.3d at 183; see also Fed. R. Civ. Proc. 26(b)(3)(B) (codifying protection for opinion

work product).  "To be entitled to protection for opinion work product, the party asserting the

privilege must show 'a real, rather than speculative, concern' that the work product will reveal

counsel's thought processes 'in relation to pending or anticipated litigation.'"  In re Grand Jury

Subpoena Dated July 6, 2005, 510 F.3d at 183-84 (quoting In re Grand Jury Subpoenas Dated

Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d at 386).  A party's conclusory assertions that a

document constitutes opinion work product will be insufficient to establish that the document is privileged.  Id. at 184.

Once a party establishes that a document constitutes fact work product, it is not discoverable absent a showing of "substantial need"; in contrast, opinion work product is not discoverable absent a "highly persuasive showing" of need.  In re Grand Jury Proceedings, 219 F.3d 175, 190-91 (2d. Cir. 2000); see United States v. Ghavami, 882 F. Supp. 2d 532, 540 (S.D.N.Y. 2012) (opinion work product "is entitled to virtually absolute protection").  Furthermore, courts have "been reluctant to hold that implied waiver of non-opinion work product extends to opinion work product."  Shinnecock Indian Nation v. Kempthorne, 652 F. Supp. 2d 345, 367 (E.D.N.Y. 2009) (listing cases).

When assessing whether a document was prepared in anticipation of litigation, courts consider "if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998) (quoting Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 8 Federal Practice & Procedure § 2024 at 343 (1994)).  "[T]he mere relation of documents to litigation does not automatically endow those documents with privileged status."  Shinnecock Indian Nation, 652 F. Supp. 2d at 362 (quoting State of Maine v. U.S. Dep't of the Interior, 298 F.3d 60, 69 (1st Cir. 2002)).

Even where the document "might also help in preparation for litigation," it will not be protected by the work-product doctrine if it was "prepared in the ordinary course of business" or "would have been created in essentially similar form irrespective of the litigation."  Id.; see Allied Irish Banks, 240 F.R.D. at 107 (finding no work-product privilege where moving party failed "to provide a witness to attest to the question of what [the party] 'would have' done had

there been no threat of litigation"); OneBeacon Ins. Co., 2006 WL 3771010, at *6 (counsels'

insurance claim investigation documents were not privileged because they were created in the

ordinary course of business).  In cases involving attorney-assisted investigations, the court must

make "a fact-specific inquiry" to determine if and when an investigation changed from being

within the ordinary course of business to being because of litigation.  See U.S. Fid. & Guar. Co.

v. Braspetro Oil Servs. Co., No. 97 Civ. 6124 (JGK) (THK), 2000 WL 744369, at *9 (S.D.N.Y.

June 8, 2000).  A party's decision to retain outside counsel may suggest that the party anticipates

litigation, but that party must still establish that outside counsel's work product was because of

litigation.  Id. at *9-10 (finding no work-product protection where outside counsel's insurance

claims investigation "would have been done for business purposes, regardless of the possibility

of litigation.").

### 3.  At-Issue Waiver

Both the attorney-client and work-product privileges may be waived if a party puts the

privileged communication at issue by relying on it to support a claim or defense.  Such a waiver

"may be implied in circumstances where it is called for in the interests of fairness," In re Sims,

534 F.3d 117, 132 (2d Cir. 2008), such as when a "'party attempts to use the privilege both as a

shield and a sword,'" id. (quoting In re Grand Jury Proceedings, 219 F.3d at 182).  See

Shinnecock Indian Nation, 652 F. Supp. 2d at 365 (listing cases).  "In other words, a party cannot

partially disclose privileged communications or affirmatively rely on privileged communications

to support its claim or defense and then shield the underlying communications from scrutiny by

the opposing party."  In re Grand Jury Proceedings, 219 F.3d at 182; see In re Cnty. of Erie, 546

F.3d 222, 229 (2d Cir. 2008) (same); United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir.

16

1991) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.").

Whether a waiver may be implied is determined on a case-by-case basis. In re Sims, 534 F.3d at 132. "The key to a finding of implied waiver . . . is some showing by the party arguing for a waiver that the opposing party relies on the privileged communication as a claim or defense or as an element of a claim or defense." In re Cnty. of Erie, 546 F.3d at 228-29 (declining "to specify or speculate as to what degree of reliance is required").

### 4.  Waiver and the Faragher/Ellerth Defense

In a discrimination action where "no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any [discriminatory] behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." Vance v. Ball State Univ., — U.S. —, 133 S. Ct. 2434, 2439 (2013);[9] see Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 765 (1998); see also Redd v. N.Y. Div. of Parole, 678 F.3d 166, 182 (2d Cir. 2012).[10] The affirmative defense is referred to as the Faragher/Ellerth defense. "Whether an employer's response to an employee's allegation of [discrimination] is reasonable must be assessed from the totality of the circumstances . . . ." Brownell v. Roadway Package Sys., Inc., 185 F.R.D. 19, 25 (N.D.N.Y. 1999) (requiring defendant to produce statements collected as part of internal investigation, including a statement collected after plaintiff was fired).

_____

[9] The Parties have not addressed to which of Mr. Koumoulis's claims this defense applies. As he alleges some tangible employment actions were taken against him—including his firing—the defense may not apply to all claims.

[10] This affirmative defense "does not apply in cases brought under the NYCHRL." Zakrzewska v. New Sch., 620 F.3d 168, 170 (2d Cir. 2010).

When an employer puts the reasonableness of an internal investigation at issue by asserting the <u>Faragher/Ellerth</u> defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation.  This waiver encompasses "not only the [investigative] report itself, but [] all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation."  <u>Angelone v. Xerox Corp.</u>, No. 09 Civ. 6019 (CJS) (JWF), 2011 WL 4473534, at *2 (W.D.N.Y. Sept. 26, 2011), <u>reconsideration denied</u>, No. 09 Civ. 6019 (CJS) (JWF), 2012 WL 537492 (W.D.N.Y. Feb. 17, 2012).  "[A]ny document or communication considered, prepared, reviewed, or relied on by [the defendant] in creating or issuing the [investigatory report] must be disclosed to [the] plaintiff."  <u>Id.</u> at *3.[11]

However, the implied waiver does not apply to every type of investigation; such a broad interpretation would "eviscerate both the attorney-client privilege and the work product doctrine."  <u>McGrath</u>, 204 F.R.D. at 244.  For example, there is no implied waiver concerning investigations related to EEOC charges or future litigation.  <u>See</u> <u>Angelone</u>, 2012 WL 537492, at *3 (listing cases).  Thus, in <u>Prince v. Madison Square Garden, L.P.</u>, 240 F.R.D. 126, 128 (S.D.N.Y. 2007), where the defendants conducted separate investigations for an internal complaint and for litigation defense, the court recognized that "at some point" the purpose of the investigation changed from responding to the plaintiff's complaint to preparing a legal defense.

---

[11] <u>See</u> <u>McGrath v. Nassau Cnty. Health Care Corp.</u>, 204 F.R.D. 240, 246 (E.D.N.Y. 2001) (allowing discovery of opinion work product of outside counsel who conducted internal investigation); <u>Worthington v. Endee</u>, 177 F.R.D. 113, 118 (N.D.N.Y. 1998) (allowing deposition of outside counsel who conducted an internal investigation); <u>Pray v. N.Y.C. Ballet Co.</u>, No. 96 Civ. 5723 (RCL) (HBP), 1997 WL 266980, at *1 (S.D.N.Y. May 19, 1997) (where outside counsel conducted defendant's internal investigations, defendant voluntarily agreed to the production of "certain documents concerning the investigations" and the depositions of non-supervising attorneys who participated in the investigations), <u>aff'd in part & rev'd in part</u>, No. 96 Civ. 5723 (RLC), 1998 WL 558796, at *2-3 (S.D.N.Y. Feb. 13, 1998) (permitting the depositions of two outside counsel who supervised the investigations, but maintaining the privilege for "the initial and concluding communication" between outside counsel and the defendant).

Id.  The court required the defendants to produce "all internal investigation materials" created before the litigation defense investigation began, "as well as documents related to any corrective actions taken as a result of the internal investigation and that may form part of the [d]efendants' Faragher-Ellerth defense."  Id.; cf. Asberry v. Corinthian Media, Inc., No. 09 Civ. 1013 (CM) (DFE), 2009 WL 3073360, at *3 (S.D.N.Y. Sept. 18, 2009) (where employer asserted advice of outside counsel as legitimate reason for firing plaintiff, allowing plaintiff discovery of attorney-client communications that extended shortly past her dismissal, but denying discovery of subsequent "litigation communications" concerning EEOC charge), order aff'd, No. 09 Civ. 1013 (CM) (DFE) (S.D.N.Y. Oct. 5, 2009) (ECF No. 37).

In cases where counsel had an advisory, rather than a fact-gathering, role in the investigation, courts have come to differing conclusions as to whether the implied waiver extends to attorney-client communications.  For example, in Kaiser Foundation Hospitals v. Superior Court of San Mateo County, 66 Cal. App. 4th 1217, 78 Cal. Rptr. 2d 543 (1998), the petitioners sought to protect thirty-eight pages of withheld or partially redacted communications between their human resources consultant and the in-house attorney who was "periodically consulted."  Id. at 1220-21.  The court held that

> [w]here a defendant has produced its files and disclosed the substance of its internal investigation conducted by nonlawyer employees, and only seeks to protect specified discrete communications which those employees had with their attorneys, disclosure of such privileged communications is simply not essential for a thorough examination of the adequacy of the investigation or a fair adjudication of the action.

Id. at 1227.[12]

---

[12] However, the court in Kaiser Foundation Hospitals still required the trial court to obtain detailed privilege logs and, where appropriate, conduct in camera inspection to determine if the documents at issue were protected by the attorney-client or work-product privilege.  Id. at 1228.

In contrast, in Walker, 2013 WL 672584, the court required the defendants to produce contemporaneous communications about an internal investigation that were made between the human resources manager who conducted the investigation and outside counsel. Id. at *1-2, 5-8. In that case, "[t]he vast majority of documents for which [the] defendants claim[ed] attorney-client privilege are emails wherein [outside counsel] and/or [the human resources manager] are summarizing the testimony of various witnesses and keeping [the defendants'] employees updated on the progress of [the defendants'] investigation"; such communications did not constitute legal advice and likely would have been made absent [the] plaintiff's retention of counsel and the subsequent threat of litigation. Id. at *7-8. Likewise, in Jackson v. Deen, No. 12 Civ. 139, 2013 WL 2027398 (S.D. Ga. Apr. 3, 2013), reconsideration denied, No. 12 Civ. 139, 2013 WL 1911445 (S.D. Ga. May 8, 2013), objections overruled, No. 12 Civ. 139, 2013 WL 3863889 (S.D. Ga. July 25, 2013), and objections overruled, No. 12 Civ. 139, 2013 WL 3991793 (S.D. Ga. Aug. 2, 2013), the court granted a motion to compel the deposition of and document production from outside counsel when the employer's CFO kept outside counsel "in the loop" about the plaintiff's discrimination complaints. Id. at *7-8.

Finally, a party may withdraw a claim or defense in order to preserve a privilege that would otherwise be forfeited. See In re Sims, 534 F.3d at 138 (no breach of psychotherapist-plaintiff privilege when plaintiff withdrew his claim for emotional distress damages); see generally Geller v. N. Shore Long Island Jewish Health Sys., No. 10 Civ. 170 (ADS) (ETB), 2011 WL 5507572, at *4 (E.D.N.Y. Nov. 9, 2011) (denying motion to compel privileged investigatory documents where defendants were not asserting a Faragher-Ellerth defense).

### b.   Legal Analysis of Privilege and Waiver

As discussed above, Defendants claim that each of the fifty-seven documents listed on their privilege log are protected by the attorney-client and work-product privileges.  See Privilege Log.

### 1.   Defendants' Privilege Log

By way of example, a sample of Defendants' privilege log entries is reproduced below.

| Doc. | Date | Author/From | To | Cc | Subject | Privilege |
|------|------|-------------|-----|-----|---------|-----------|
| 1. | 11/14/08 | Claudia Mellon | Ann Bradley, Esq., Lou Mastropietro, Kathy Bakke | Matt Baval | 11/14/08 email from T. Koumoulis regarding 11/13 meeting | Attorney-Client Communication, Attorney Work Product |
| 17. | 6/26/09 | Claudia Mellon | Ann Bradley, Esq., Anna Orsenigo | | T. Koumoulis | Attorney-Client Communication, Attorney Work Product |
| 56. | 8/7/08 | Lou Mastropietro | Marjory Robertson, Esq. | | Email regarding T. Koumoulis | Attorney-Client Communication, Attorney Work Product |

Privilege Log 1-2, 7.

Concerning the documents not reviewed in camera, this Court cannot determine, based on Defendants' privilege log, whether these documents are protected by the attorney-client or work-product privileges.  Although the burden is on Defendants to establish that the privileges apply, Defendants fail to provide descriptions on their privilege log that "without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A); see United States v. Constr. Prods. Research, 73 F.3d 464, 473-74 (2d Cir. 1996) (privilege log descriptions such as "'Letter Re: Customer Orders" with comment 'Re: Five Star Products'" were insufficient to support a finding of privilege).

There is no dispute concerning whether Defendants had an attorney-client relationship with outside counsel or whether Defendants kept their attorney-client communications confidential.  However, Defendants' privilege log provides insufficient information as to the third factor required for finding that the attorney-client privilege applies: whether the communications' predominant purpose was to obtain or provide legal advice.

Defendants also fail to meet their burden concerning the work-product privilege.  Most of the documents on their privilege log were sent from a non-attorney—usually Ms. Mellon or Ms. Bakke—and there is no explanation offered for why their writings should be considered attorney work product.  As to those documents written or partially written by an attorney, the privilege log provides insufficient information to determine whether an attorney created these documents because of litigation or whether, absent the threat of future litigation, no comparable communications would have been created.  Defendants' reliance on a Faragher/Ellerth defense suggests that Defendants would have conducted an internal investigation regardless of whether the complaining employee also pursued litigation.  See U.S. Fid. & Guar. Co., 2000 WL 744369, at *9-10.  Defendants did not provide any affidavits that might have remedied these deficiencies.  This is a sufficient reason to deny Defendants' claim of privilege.

In an abundance of caution, the Court will allow Defendants to amend their privilege log to include the required information for the documents that were not reviewed in camera.  See Fed. R. Civ. P. 26(b)(5)(A).  The Parties should then re-consider whether the production of any withheld documents is warranted in light of the amended privilege log and the analysis in this Memorandum and Order as to the documents reviewed in camera.   For example, it appears that Ms. Robertson, the in-house counsel, was the only attorney involved in Document Nos. 55-56 (emails "regarding T. Koumoulis" that were not reviewed in camera).  Defendants expressly

"waived privilege with respect to . . . [her] investigations of Mr. Koumoulis['s] . . . complaints," Joint Letter Ex. C at Robertson 40:7-20,[13] including all "notes and correspondence of Defendants' in-house counsel to the extent such individual conducted any witness interviews or was otherwise the decision-maker in connection with any adverse employment action."  Joint Letter 6 (emphasis removed).  Therefore, Defendants may have waived the privilege as to Document Nos. 55-56.  If Defendants wish to prove otherwise as to this and other documents not reviewed by the Court, they must provide significantly more explanation than the current description of these documents as "regarding T. Koumoulis."  Privilege Log Doc. Nos. 55-56.

Defendants must provide an amended privilege log by November 12, 2013 concerning the documents that were not reviewed in camera, produce any such documents that are not privileged under the parameters of this Memorandum and Order and confer with Plaintiffs' counsel to resolve any outstanding issues.

## 2. Documents Reviewed In Camera

About half of the documents listed on Defendants' privilege log were provided to and reviewed by the Court.[14]  The reviewed documents include those that Plaintiffs identified as relating to Mr. Koumoulis's complaints and related investigations.  See Joint Letter Ex. B.[15]  Having carefully reviewed these documents, this Court finds that much of the information

---

[13] Plaintiffs incorrectly assert that this statement, made by Ms. Varon during Ms. Robertson's deposition, constituted a universal waiver of privilege; the statement, in context, was specific to in-house counsel.

[14] Specifically, this Court reviewed Document Nos. 8-9, 21-22, 26-29, 31-39, 48-51, 53-54, and 57.  See Ex Parte Letter from Ms. Varon to the Hon. Magistrate Judge Vera M. Scanlon (the "Ex Parte Letter"), Oct. 3, 2013, ECF No. 49 (containing Defendants' letter to the Court and attached documents, filed under seal).  Defendants also filed a copy of their Ex Parte Letter, without attachments, as ECF No. 48.  The Clerk of Court may unseal ECF No. 48.

[15] This Court was not provided with and thus did not review the documents Plaintiffs identified as related to investigations of Plaintiffs' EEOC Charges.  Such documents are likely privileged. See Angelone, 2012 WL 537492, at *3.

23

contained therein is not protected by either privilege, primarily because it is either a factual

record of the investigation or seeks business advice.

### i.  Non-Privileged Attorney-Client Documents Reviewed In Camera

Concerning the attorney-client privilege, Defendants met their burden as to the first two

prongs of the standard, but again fail to establish that the disputed communications' predominant

purpose was to provide legal advice.

It is Defendants' position that "LPL's outside counsel did not conduct the internal

investigations," Joint Letter 9, but outside counsel was undeniably involved in the investigations.

In the deposition excerpts Plaintiffs provided,[16] Defendants testified that their "practice would be

to draft the [investigatory] findings and consult with outside counsel . . . ."  Joint Letter Ex. C at

Mellon 135:21-24.  Ms. Mellon further testified that "Counsel generally provides

recommendations on courses of action and then I would make the decision whether or not to

include them."  Id. at Mellon 136:17-22.[17]  In addition, Defendants' litigation counsel asserted

that some of the withheld communications related to "general outside counsel [being] used in

conjunction with performance issues."  Tel. Conference Tr. 17:13-22.

The communications reviewed in camera provide some clarity as to the purpose of

outside counsel's advice.  In general, these documents show that Ms. Bradley was not a

consultant primarily on legal issues, but instead she helped supervise and direct the internal

investigations primary as an adjunct member of Defendants' human resources team.  She

---

[16] In the Joint Letter, Defendants wrote that they did "not specifically address any information set forth in Plaintiffs' Exhibits [because] Plaintiffs did not provide [these exhibits] Defendants in advance of [the] joint submission."  Joint Letter 9.  Defendants have since had ample time to address Plaintiffs' exhibits or to request permission to do so.  Defendants' submissions are therefore complete.

[17] This testimony suggests that outside counsel did not have a decision-making role, but the documents reviewed in camera and discussed below suggest otherwise.

instructed Defendants' human resources personnel on what actions (including disciplinary actions) should be taken, when to take those actions, and who should perform them; told Defendants what should be documented and how it should be documented; drafted written communications to Mr. Koumoulis responding to his complaints; and drafted scripts for conversations with Mr. Koumoulis about his complaints.  In their emails to Ms. Bradley, Defendants reported the outcome of actions she directed; asked her what they should do next; and updated her on new developments.  See, e.g., Privilege Log Doc. Nos. 8-9, 22, 26, 29, 31, 35, 37, 48-51, & 53-54.  Thus, many of the communications concerned advice on human resources issues,[18] summaries of fact-related communications[19] and instructions from outside counsel on conducting the internal investigations.[20]

---

[18] See Privilege Log Doc. Nos. 8 (request about documenting conversations), 22 (providing a draft email to Mr. Koumoulis to acknowledge receipt of his complaint), 32 (regarding encouraging Mr. Koumoulis to speak to Defendants and on how to respond to an email from him), 33 (asking whether a response should be in writing), 34 (sending Ms. Bradley four documents concerning the investigation, and asking her to edit one document), 35 (discussing the format of an investigative report and who would author it), 37 (suggesting a report be more specific), 48 (suggesting that certain information be written down), 49 (same as Document No. 37), 50 (concerning Mr. Koumoulis's work status), 51 (same).

[19] See Privilege Log Doc. Nos. 8 (relating conversations with Mr. Mastropietro and Mr. Koumoulis), 9 (recounting what another employee said about the investigation process), 22 (summarizing a conversation with Mr. Koumoulis), 27 (specifying whom Ms. Mellon had contacted), 29 (relating Ms. Orsenigo's conversation with Mr. Mastropietro), 33 (relating Ms. Bakke's conversations with Mr. Koumoulis, Mr. Mastropietro and Ms. Allison Cooper ("Ms. Cooper"), an LPL employee), 36 (summarizing conversations with Mr. Koumoulis and other employees); 39 (concerning conversations between non-attorney employees and their conversations with Mr. Koumoulis); see also Privilege Log Doc. No. 38 (relaying information about Mr. Koumoulis's performance).

[20] See Privilege Log Doc. Nos. 9 (instructions on what to say to Mr. Koumoulis and others), 27 (instructions on responding to Mr. Koumoulis's complaint, including what to say to him concerning his work), 29 (identifying issues to explore and an email between human resources personnel delegating that task), 35 (providing revisions to a memorandum), 36 (concerning a report that Ms. Bradley requested be written), 37 (providing revised documents, per Ms. Bradley's instructions), 39 (discussing how to close the human resources investigation), 48 (instructing Defendants on witnesses to interview, questions to ask, issues to research and other

Determining whether Ms. Bradley's advice was predominantly legal- or business-related is made somewhat more difficult by the overlapping nature of legal advice and human resources advice.  A primary purpose of a company's human resources program is to ensure compliance with the myriad of laws regulating employer-employee relations, such as the laws raised in this case, as well as, inter alia, wage-and-hour laws, benefits laws and health-and-safety laws.  Even without any attorney's participation, human resources work may very likely require consideration of relevant laws, and their application to the facts presented.  Despite its legal content, human resources work, like other business activities with a regulatory flavor, is part of the day-to-day operation of a business; it is not a privileged legal activity.  Thus, just as an employment lawyer's legal advice may well account for business concerns, a human resources employee's business advice may well include a consideration of the law.  Cf. In re Cnty. of Erie, 473 F.3d at 420 (the "complete lawyer" considers the "risks and costs of taking the advice or doing otherwise").

An examination of the content of the disputed communications shows that their predominant purpose was to provide human resources and thus business advice, not legal advice. For example, Ms. Bradley sometimes told human resources employees exactly what questions to ask during interviews and what statements to make during meetings, including on routine human resources topics like improving Mr. Koumoulis's job performance, customer interactions and communication skills.  See, e.g., Privilege Log Doc. Nos. 27 & 54 (see also Privilege Log 7). Ms. Bradley wrote that her advice would advance business goals, such as improving business relationships, avoiding damage to LPL's reputation or assisting management in their supervisory role.  See, e.g., Privilege Log Doc. Nos. 27, 50.  Moreover, her advice rarely involved "the

---

investigatory measures), 54 (Ms. Bakke's list of questions to ask Mr. Koumoulis, purportedly based on questions from Ms. Bradley, see Joint Letter Ex. A at 7).

interpretation and application of legal principles to guide future conduct or to assess past

conduct," In re Cnty. of Erie, 473 F.3d at 419, and rarely explicitly considered future litigation.

Ms. Bradley's status as an attorney does not transform what would otherwise be human

resources and business communications into legal communications.  For example, Document No.

22 is an email string between Ms. Mellon and Ms. Bradley.  In this email string, Ms. Mellon

describes a discussion she had with Mr. Koumoulis, and Ms. Bradley provides a draft of a letter

to be sent from Ms. Mellon to Mr. Koumoulis about his complaint.  Privilege Log Doc. No. 22.

The fact that Ms. Bradley, an attorney, drafted this human resources communication and

received an update about a discussion with Mr. Koumoulis does not turn the Bradley-Mellon

exchange into a privileged legal communication.  See Walker, 2013 WL 672584, at *7-8

(investigation summaries and updates are not legal advice); see also Privilege Log Doc. No. 31.[21]

Although, to obtain informed legal advice, a client might provide her attorney with such

factual background information, see Upjohn Co., 449 U.S. at 390, the documents reviewed in

camera do not support a finding that obtaining legal advice was Defendants' predominant

purpose.  For example, in Document No. 34, Ms. Bakke provided a detailed summary of the

investigation of Mr. Koumoulis's complaint.  See Privilege Log Doc. No. 34; see also Privilege

Log Doc No. 37.  This is clearly a human resources report on the investigation, not a legal

communication.

Furthermore, several documents concerned the scheduling of conversations with outside

counsel.  See Privilege Log Doc. Nos. 9, 21, 26, 50, 51.  Communications about scheduling are

not privileged.  See Weinstein v. Univ. of Connecticut, No. 11 Civ. 1906 (WWE) (HBF), 2013

---

[21] Nor does writing "Attorney Client Communication" at the top of an email transform a
summary of events and request for human resources-related advice into a legal communication.
Privilege Log Doc. No. 32.

WL 2244310, at *6 (D. Conn. May 21, 2013) (emails about scheduling were not substantive and not privileged, although other portions of those email chains were privileged).  Thus, most of the documents submitted for <u>in camera</u> review are not privileged, except as noted below.

There is nothing in the record beyond the documents themselves that might change the Court's understanding of the purpose of outside counsel's participation in the investigation.  As discussed above, Defendants did not supplement their motion papers with sworn affidavits, deposition transcripts or other evidence, despite participating in two telephone conferences with the Court after the motion papers were filed.  <u>See</u> Docket (Minute Entries for telephone conferences dated August 14, 2013 and September 26, 2013).  Thus, the Court can only review the documents themselves, which are largely not privileged.

### ii.  Privileged Attorney-Client Documents Reviewed <u>In Camera</u>

As mentioned above, a few of the withheld documents related, in whole or in part, to Plaintiffs' EEOC Charges.  <u>See</u> Privilege Log Doc. Nos. 27, 28, 31, 50, 51.  In addition, some documents contained, in part, requests for or provisions of legal advice.  <u>See</u> Privilege Log Doc. Nos. 8 (legal strategy), 29 (attorney's mental impressions and legal strategy), 35 (litigation planning), 36 (litigation planning and request for legal advice concerning claims), 37 (same), 39 (litigation strategy), 48 (mental impressions and legal strategy), 50 (litigation strategy), 51 (same), 57 (request for legal advice).  In the limited instances where outside counsel provided legal advice or legal impressions, those portions of the communications concerned anticipated litigation.  They are not relevant to the reasonableness of Defendant's internal investigations.  <u>See</u> <u>Angelone</u>, 2012 WL 537492, at *3.[22]  As discussed below, the Court has identified the privileged portions of these documents so that Defendants may make the appropriate redactions.

---

[22] The mere fact that communications occurred after Mr. Koumoulis filed his EEOC Charge is not sufficient to render all post-Charge communications privileged.  <u>See</u> Joint Letter 8; <u>Walker</u>,

### iii.   The Work-Product Privilege and Documents Reviewed <u>In</u> <u>Camera</u>

Concerning the work-product privilege, the content of the documents reviewed <u>in camera</u> was not sufficient to establish that Defendants have met their burden, with the exception of a few passages that may be redacted.  The communications do not clarify why documents authored by non-attorneys are purportedly privileged.  Defendants have not offered evidence that any of the documents were created because of litigation, rather than simply in the course of a human resources investigation.  Instead, advice related to anticipated litigation was occasionally included as an aside in communications that were predominantly related to human-resources issues.

Defendants also note that they produced to Plaintiffs the final versions of certain investigatory documents, but not draft versions shared with outside counsel, because Defendants contend that these drafts are protected by the attorney-client and work-product privileges.  <u>See</u> Ex Parte Letter 1 (concerning drafts attached to Privilege Log Doc. Nos. 34, 36-37); Privilege Log.  However, "changes [in draft reports] may also be relevant in assessing the reasonableness of [defendants' remedial] efforts."  <u>Austin v. City & Cnty. of Denver ex rel. Bd. of Water Comm'rs</u>, No. 05 Civ. 01313 (PSF) (CBS), 2006 WL 1409543, at *8 (D. Colo. May 19, 2006) (requiring production of human resources consultant's draft investigatory reports); <u>see</u> <u>Angelone</u>, 2011 WL 4473534, at *2-3 (all documents prepared or reviewed while creating the investigatory report were discoverable).  Defendants have not met their burden of establishing that the privilege applies to these drafts.  For example, in Document No. 34, Ms. Bakke emailed four attachments to Ms. Bradley and Ms. Hunter.  Privilege Log Doc. No. 34.  Ms. Bakke, a non-

_____

2013 WL 672584, at *1-2, 5-8 (despite contemporaneous complaint to state agency, communications between human resources manager and outside counsel about internal investigation were not privileged).  Indeed, it seems that Defendants hired separate outside counsel to address the EEOC Charge.

attorney, appears to be the author of each of these draft documents. [23]  Moreover, she asked for Ms. Bradley's "review/edits" of only the last document.  Forwarding the first three documents to counsel does not confer any privilege and concerning the last document, the request for "review/edits" is not a request for legal advice in the context of Ms. Bakke's email and Defendants' other communications with Ms. Bradley.  Therefore, there is no clear basis for finding that the work-product privilege applies.

Thus, except for the redacted portions of documents and documents discussed below, Defendants have failed to carry their burden to show that the documents reviewed in camera are privileged.

### iv.  At-Issue Waiver and Documents Reviewed In Camera

Assuming arguendo that the communications reviewed in camera were privileged (most of which were not), Defendants would have waived that privilege by asserting, as an affirmative defense, both the reasonableness of their efforts to "prevent and correct promptly any discriminatory behavior" and the reasonableness of their "policies and procedures for investigating and preventing discrimination."  See Answer 14.  Contrary to Plaintiffs' contention, Defendants' pleading adequately asserts the Faragher/Ellerth defense.  See Vance, 133 S. Ct. 2434 (articulating the Faragher/Ellerth defense using similar language); Angelone, 2011 WL 4473534, at *5 (same).

Recognizing that their internal investigations are at issue, Defendants admittedly waived privilege concerning in-house counsel's notes and correspondence related to those investigations.

---

[23] Drafts authored by outside counsel may also be discoverable.  "Drafts of documents prepared by an attorney for subsequent transmission to third parties are protected by the attorney-client privilege only where the draft document contains confidential information communicated by the client to the attorney that is maintained in confidence."  S.E.C. v. Beacon Hill Asset Mgmt. LLC, 231 F.R.D. 134, 145 (S.D.N.Y. 2004) (listing cases); see Bowne of N.Y.C., Inc. v. AmBase Corp., 150 F.R.D. 465, 490 (S.D.N.Y. 1993) (same).

Joint Letter 6.  Defendants describe the remaining emails with outside counsel as "a very small number of emails," id., but in the context of the investigations, the number of emails is not insignificant.[24]  Furthermore, the communications show that rather than following a pre-determined in-house policy, Defendants' procedure was to have outside counsel determine the process as it developed.  See Ex Parte Letter (withheld communications); Joint Letter Ex. C at Mellon 135:16-136:22.  Plaintiffs have a substantial need for the withheld communications in which outside counsel directs the investigation, not only to fully test the reasonableness of Defendants' remedial efforts, but to understand what constituted Defendants' investigatory policies and procedures.  For example, it may not have been part of Defendants' policies and procedures to create an investigatory report until outside counsel advised that one be written.  See Privilege Log Doc. No. 36.  Moreover, Defendants cannot cloak outside counsel's participation with privilege by delegating fact-gathering tasks to lower-level employees.  See Pray, 1998 WL 558796, at *1 (affirming that plaintiffs could depose an outside counsel whose role, as described by the Magistrate Judge, had been to supervise an associate who conducted interviews, see Pray 1997 WL 266980, at *1).  Given the extensive reporting on the statements made by the various actors and witnesses between counsel and Defendants' human resources staff that is set forth in the documents, Plaintiffs have a substantial need to see the record as it was developed to be able to test whether the grounds given by Defendants as the basis for their actions were in fact actually reported to them; whether Defendants deliberately developed an

---

[24] Defendants cite to Kaiser Foundations Hospitals, in which the court denied discovery of "specified discrete communications," numbering less than forty pages, between an attorney and client.  Kaiser Foundation Hospitals, 66 Cal. App. 4th at 1220-21, 1227.  In this case, the attorney-client communications at issue are neither discrete in subject matter nor number.  This Court has reviewed about half of the withheld documents, and they number about a hundred pages.  It appears that Defendants were in continual contact with outside counsel concerning the internal investigations.  Therefore, their withholding of documents differs from the limited claims of privilege asserted in Kaiser Foundation Hospitals and Pray.

incomplete record or did a thorough investigation; and whether the conclusions of the investigation are substantiated by an accurate record.  All of these factors would go to a reasonableness analysis under <u>Faragher/Ellerth</u>.

Therefore, assuming <u>arguendo</u> that the withheld communications were privileged, Defendants would have waived the privilege by relying on the reasonableness of their investigatory policies and procedures as a defense.  Defendants would need to choose whether to assert the affirmative defense or the privilege, but could not preserve both by selectively omitting certain communications.   In this case, however, the majority of the claimed attorney-client communications relate to business advice that is not privileged, and Defendants cannot waive a privilege that never existed.

Nevertheless, those portions of Defendants' communications containing legal advice do remain privileged despite Defendants' assertion of the <u>Faragher/Ellerth</u> defense.  Opinion work product receives enhanced protection, and Plaintiffs have not made a highly persuasive showing of need for outside counsel's legal impressions.  <u>See</u> <u>In re Grand Jury Proceedings</u>, 219 F.3d at 190-91; <u>Shinnecock Indian Nation</u>, 652 F. Supp. 2d at 367.

### v.  Summary of Documents Reviewed <u>In Camera</u>

Therefore, the Court will file, under seal except as to Defendants, a copy of their Ex Parte Letter, with attachment, in which privileged material has been highlighted by the Court.   These highlighted portions relate to the EEOC Charge, anticipated litigation and counsel's "mental impressions, conclusions, opinions, or legal theories," Fed R. Civ. Proc. 26(b)(3)(B); these portions are privileged and may be redacted by Defendants.  Except as to the highlighted

sections, Defendants did not meet their burden of establishing privilege as to Document Nos. 8,[25] 9, 21-22, 26-27, 29, 31-39, 48-51, 53-54, and 57, and these documents must be produced. As to Document No. 28, this document contains legal advice related to Mr. Koumoulis's EEOC Charge and is privileged in its entirety.

The withheld communications often forwarded or attached non-privileged communications that Defendants should produce, if they have not done so already.[26] In addition, some documents included handwritten notes. See Privilege Log Doc. Nos. 48, 50, 53. Defendants should amend their privilege log to identify who wrote these notes.[27]

Plaintiffs may depose Ms. Bradley concerning non-privileged matters, consistent with this Memorandum and Order. See Pray, 1998 WL 558796, at *1 (allowing depositions of "two key members of the firm who exercised supervision over the conduct of the investigations actually engaged in by associates of the firm"). Any deposition to be taken of Ms. Bradley because of this Memorandum and Order must be concluded by November 29, 2013.

### c. Plaintiff's Failure to Produce a Privilege Log

Defendants allege that Plaintiffs must produce a privilege log concerning any advice they received from their attorney "in connection with internal complaints and the Company's

---

[25] Document No. 8 references a request by "Astoria's" legal department. Defendants did not make any argument or provide information concerning whether this portion of the communication was privileged.

[26] Defendants should confirm with Plaintiffs that these underlying documents have been produced. See Privilege Log Doc. Nos. 8 (forwarding emails between Ms. Mellon and non-attorney employees), 9 (forwarding emails between Ms. Mellon and Mr. Koumoulis), 26 (forwarding emails from Mr. Koumoulis and emails between Ms. Mellon and other employees), 31 (forwarding an email between Ms. Bakke and Ms. Hunter), 32 (forwarding emails between Ms. Bakke and Mr. Koumoulis), 38 (forwarding emails among non-attorney employees). In addition, Documents Nos. 33 and 39 may be missing attachments. Defendants should assess the privilege of any missing attachments in light of this Memorandum and Order.

[27] The notes do not appear to contain privileged information, but are not completely legible.

investigation." <u>See</u> Joint Letter 9.[28]  As discussed above, FRCP 26 requires that a party asserting privilege provide information sufficient to allow other parties to evaluate whether the privilege applies.  Fed. R. Civ. P. 26(b)(5)(A).  However, Local Civil Rule 26.2 states that "[e]fficient means of providing information regarding claims of privilege are encouraged . . . ."  Local Civil Rule 26.2(c) (describing categorical privilege logs).  In this case, Defendants offer no basis— other than speculation that a privilege log might reveal non-parties copied on attorney-client communications—for why such communications would not be privileged.  <u>See</u> Joint Letter 9. Nothing in the record suggests that these individual Plaintiffs retained an attorney for a predominantly non-legal purpose or for a reason other than possible litigation.  Moreover, Defendants' assertion of an affirmative defense concerning Defendants' internal investigations does not put Plaintiffs' attorney-client communications at-issue; those communications are irrelevant to the reasonableness of Defendants' actions.

Defendants' motion is granted to the extent that Plaintiffs must provide information concerning any allegedly privileged communications.  Defendants' motion is denied to the extent that Plaintiffs will not be required to file a privilege log and may instead file a declaration as described below.  If, to enforce strict compliance with FRCP 26, this Court required Plaintiffs to list each attorney-client communication, it would no more promote efficiency than if the Court likewise required Defendants to compile a list of their communications with their EEOC and litigation counsel.

In lieu of filing a Privilege Log, Plaintiffs' counsel may file a declaration stating and describing:

> (1) That Plaintiffs have made a diligent and good faith effort to
> locate and produce all relevant and non-privileged documents,

---

[28] Plaintiffs allege they emailed Defendants a list of privileged redactions.  <u>See</u> Joint Letter 5.

including emails, responsive to Defendant[s'] requests. (2) The
number, or a reasonable estimate of the number, of the privileged
email communications that exist. (3) That Plaintiffs have reviewed
the alleged attorney-client or work-product privileged emails to
ensure that relevant, non-privileged email communications are not
being withheld from production and that Plaintiffs' counsel verifies
that no arguably non-privileged email communications are being
withheld. (4) In the case of emails as to which the attorney-client
[or work-product] privilege is claimed, the affidavit or declaration
should include a verification that the emails were not provided to
persons other than the client and attorney. If such communications
were provided to non-clients, and the attorney-client [or work-
product] privilege[] is still claimed, then a privilege log consistent
with [FRCP 26 . . . ] should be provided.

<u>Fifty-Six Hope Rd. Music, Ltd. v. Mayah Collections, Inc.</u>, No. 05 Civ. 1059 (KJD) (GWF),

2007 WL 1726558, at *8 (D. Nev. June 11, 2007).

## III.     CONCLUSION

For the reasons stated above, Plaintiffs' motion to compel discovery is granted in part and denied in part.  Defendants' motion to compel Plaintiffs to produce a privilege log is granted in part and denied in part.  On or before November 12, 2013, the Parties must serve amended privilege logs that fully comport with the requirements of FRCP 26.  In the alternative, Plaintiff may file a declaration as described above.  In addition, on or before November 12, 2013 and with the redactions noted above, Defendants must produce Document Nos. 8, 9, 21-22, 26-27, 29, 31-39, 48-51, 53-54, and 57 from their privilege log.  Defendants must also produce withheld documents that were not reviewed by this Court, to the extent that production is warranted in light of this Memorandum and Order.  Defendants must make Ms. Bradley available for deposition consistent with this Memorandum and Order by November 28, 2013.  Finally, the Clerk of Court may unseal ECF No. 48.

**SO ORDERED.**

Dated:  Brooklyn, New York
            November 1, 2013

                                                                        /s/
                                                _____
                                                VERA M. SCANLON
                                                United States Magistrate Judge