UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

TASSO KOUMOULIS, ET AL.                    NOT FOR PUBLICATION

               Plaintiffs,          **MEMORANDUM & ORDER**
        v.                          10-CV-0887 (PKC) (VMS)

INDEPENDENT FINANCIAL MARKETING
GROUP, INC., ET AL.,

               Defendants.

----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Pursuant to Federal Rule of Civil Procedure ("FRCP") 72(a), Defendants LPL financial

Corporation ("LPL"), Independent Financial Market Group, Inc., and Astoria Federal Savings

and Loan Association (collectively, "Defendants") have submitted objections to the

Memorandum and Order issued by Magistrate Judge Vera M. Scanlon on November 1, 2013

("Order"), regarding (1) Plaintiffs' motion to compel Defendants to produce documents,

withheld as privileged, that contained communications between Defendants and their outside

counsel concerning internal investigations of Plaintiff Tasso Koumoulis's discrimination and

retaliation complaints; (2) Plaintiffs' motion to compel the deposition of Defendants' counsel

regarding these internal investigations; (3) and Defendants' motion to compel Plaintiffs to

produce a privilege log.  (Dkt. Nos. 55 ("Def. Obj.") and 50 (Order).)

      In the Order, Judge Scanlon found that the majority of information contained in the

documents submitted for *in camera* review ("Submitted Documents") was not covered by either

the attorney-client or work-product privilege, and ordered the production of the Submitted

Documents with certain redactions, as well as the remainder of the withheld documents to the

extent warranted by the Order. (Order at 36; Dkt. No. 49 (Submitted Documents with redactions).) Judge Scanlon also ordered Defendants' outside counsel, Ann Bradley, Esq., to be made available for deposition by Plaintiffs. (Order at 36.) Lastly, Judge Scanlon ordered both parties to submit amended privilege logs that fully comport with FRCP 26, but permitted Plaintiffs to satisfy this requirement by submitting a declaration in lieu of a privilege log. *Id.*

In challenging the Order, Defendants contend that Judge Scanlon misapplied the law relating to privilege and discovery, and made clearly erroneous factual findings. (Def. Obj. at 3-4.) Defendants ask the Court to "set aside or modify the Magistrate's determination that Defendants produce documents from the privilege log and make Ms. Bradley available for deposition." *Id.* at 25. Defendants also ask that Plaintiffs be required to produce a privilege log, instead of a declaration. *Id.* Defendants further seek to have the Court, in ruling on their objections, consider supplemental evidence that was not before Judge Scanlon at the time she rendered her decision. *Id.* at 22-25.

For the reasons set forth below, Defendants' application to modify or set aside the Order is DENIED, in its entirety.

I.   Standard of Review

As Defendants acknowledge, a magistrate judge's ruling on non-dispositive pretrial matters should not be disturbed by the district judge absent a determination that such findings were "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); (*see* Def. Obj. at 5.) Pursuant to this highly deferential standard of review, magistrate judges are thus afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused. *See Conway v. Icahn*, 16 F.3d 504, 510 (2d Cir. 1994). "A court abuses its discretion when its decision rests on an error of law or on a clearly erroneous factual finding, or when its

decision-though not necessarily the product of a legal error or a clearly erroneous factual finding-cannot be located within the range of permissible decisions." *Arista Records,* LL v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *CFTC v. Standard Forex*, 882 F. Supp. 40, 42 (E.D.N.Y. 1995). Thus, "a party seeking to overturn a discovery order bears a heavy burden." *AP Links, LLC v. Global Golf, Inc.*, 08–CV–1730, 2011 WL 888261, at *4 (E.D.N.Y. Mar. 14, 2011).

II.   <u>Defendants Have Failed to Demonstrate that the Order was Clearly Erroneous</u>

In their objections, Defendants do not challenge the legal standards applied by Judge Scanlon on the privilege issue; rather, they challenge her application of those standards. (Def. Obj. at 6.) Defendants assert that Judge Scanlon's finding that the communications between Defendants and their outside counsel predominantly involved business, not legal, advice, and were therefore not protected by the attorney-client or work-product privilege, was clearly erroneous. *Id*. at 3. Defendants also argue that Judge Scanlon erroneously ruled that any privilege was waived by Defendants' assertion of a *Faragher/Ellerth* defense because Defendants' outside counsel "had no role in the investigation other than to render legal advice for the purpose of preventing retaliation claims and mounting a legal defense," and "Plaintiffs have no valid need for this information." *Id*.

However, a review of the Submitted Documents, as well as the deposition testimony offered by Defendants, does not support these contentions. Rather, as Judge Scanlon concluded after carefully reviewing the Submitted Documents and related evidence, almost all of the information contained in the Submitted Documents relates to business advice provided by

outside counsel to Defendants' human resources personnel or the factual record of Defendants' internal investigation, and was not provided in anticipation of litigation.  (Order at 23-24.)  This information, therefore, is not protected by attorney-client or work-product privilege.  *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007); *see also TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 144 (S.D.N.Y.2003) ("[O]nly those communications related to legal, as contrasted with business, advice are protected.") (internal quotation marks omitted). Furthermore, as Judge Scanlon found, even if the disputed materials were covered by a privilege, that privilege was waived by Defendants' assertion of an affirmative defense based on the reasonableness of Defendants' internal investigation and efforts to correct the allegedly discriminatory behavior.  Accordingly, based on the entire record before it, the Court is not "left with the definite and firm conviction that a mistake has been committed," *CFTC*, 882 F. Supp. at 42, and affirms the Order in its entirety.

A.    Attorney-Client Privilege

In conducting her analysis, Judge Scanlon was guided by the well-established principle that "[i]n the context of the attorney-client privilege, 'legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct' . . . . Obtaining or providing such legal advice must be the "'predominant purpose'" of a privileged communication."  *Id*. (quoting *In re Cnty. of Erie*, 473 F.3d at 419; *Favors v. Cuomo*, 285 F.R.D. 187, 198 (E.D.N.Y. 2012) (quoting *In re Cnty. of Erie*, 473 F.3d at 420)).  Judge Scanlon was also sensitive to the inherent difficulty presented by the communications at issue in this case:

> Determining whether Ms. Bradley's advice was predominantly legal- or business-related is made somewhat more difficult by the overlapping nature of legal advice and human resources advice. A primary purpose of a company's human resources program is to ensure compliance with the myriad of laws regulating employer-employee relations, such as the laws raised in this case, as well as, inter alia, wage-and-hour laws, benefits laws and health-and-safety laws. Even without any attorney's participation, human resources

4

work may very likely require consideration of relevant laws, and their application to the facts presented. Despite its legal content, human resources work, like other business activities with a regulatory flavor, is part of the day-to-day operation of a business; it is not a privileged legal activity. Thus, just as an employment lawyer's legal advice may well account for business concerns, a human resources employee's business advice may well include a consideration of the law. Cf. In re Cnty. of Erie, 473 F.3d at 420 (the "complete lawyer" considers the "risks and costs of taking the advice or doing otherwise").

*Id.* at 26.

In this connection, Judge Scanlon aptly noted two other relevant principles: (1) "the mere fact that a communication is made directly to an attorney, or an attorney is copied on a memorandum, does not mean that the communication is necessarily privileged," *id.* at 10 (quoting *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 160 (E.D.N.Y. 1994)); and (2) "[i]nvestigatory reports and materials are not protected by the attorney-client privilege or the work-product doctrine merely because they are provided to, or prepared by, counsel." *Id.* (quoting *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271 (RWS), 2006 WL 3771010, at *5-6 (S.D.N.Y. Dec. 15, 2006)). Judge Scanlon further noted that Defendants' assertion of a *Faragher/Ellerth* affirmative defense, based on Defendants efforts to prevent and correct the alleged discriminatory behavior, could result in the waiver of otherwise privileged materials. *Id.* at 17-18.

With these considerations in mind, Judge Scanlon concluded that "[a]n examination of the content of the disputed communications shows that their predominant purpose was to provide human resources and thus business advice, not legal advice." *Id.* Judge Scanlon specifically found that Defendants' outside counsel, Ms. Bradley, "was not a consultant primarily on legal issues, but instead . . . helped supervise and direct the internal investigations as a primary adjunct member of Defendant's human resources team." *Id.* at 24. Judge Scanlon provided a detailed summary of her analysis of the Submitted Documents:

These documents show that Ms. Bradley was not a consultant primarily on legal issues, but instead she helped supervise and direct the internal investigations primary as an adjunct member of Defendants' human resources team. She instructed Defendants' human resources personnel on what actions (including disciplinary actions) should be taken, when to take those actions, and who should perform them; told Defendants what should be documented and how it should be documented; drafted written communications to Mr. Koumoulis responding to his complaints; and drafted scripts for conversations with Mr. Koumoulis about his complaints. In their emails to Ms. Bradley, Defendants reported the outcome of actions she directed; asked her what they should do next; and updated her on new developments. See, e.g., Privilege Log Doc. Nos. 8-9, 22, 26, 29, 31, 35, 37, 48-51, & 53-54. Thus, many of the communications concerned advice on human resources issues, summaries of fact-related communications and instructions from outside counsel on conducting the internal investigations.

Order at 24-25 (footnotes omitted).[1]

Based on its own review of the Submitted Documents, the Court concludes that these findings are not clearly erroneous and that the vast majority of information contained in the Submitted Documents relate to business advice concerning LPL's internal investigation and Mr. Koumoulis's complaints and work performance issues. Examples supporting this conclusion are set forth in Exhibit A hereto.[2]

In arguing that this determination is clearly erroneous, Defendants seize on Judge Scanlon's finding that portions of 10 of the 22 Submitted Documents constituted legal advice and strategy covered by the privilege. (Def. Obj. at 4, 16.) Defendants argue that this fact is sufficient to show that the predominant purpose of all of the disputed communications was to provide legal advice. (Id. at 15-16.) This argument, however, ignores the actual contents of the

_____

[1] In the footnotes, Judge Scanlon further annotated her findings with references to specific Submitted Documents. Id. at 24-25, n. 18-20. Judge Scanlon also considered the deposition testimony of Claudia Mellon, an LPL human resources officer, and defense counsel's statements during court conferences. See Order at 24 (noting Ms. Mellon's deposition testimony about Defendants' practices with respect to consultation with outside counsel, and defense counsel's statement that "some of the withheld communications related to 'general outside counsel [being] used in conjunction with performance issues.'").

[2] ECF access to Exhibit A has been restricted to the parties only.

documents, which directly contradict this claim, since the overwhelming majority of these communications discuss how Defendants should conduct the internal investigation and how to respond to and ameliorate Mr. Koumoulis's complaints. That a stray sentence or comment within an e-mail chain references litigation strategy or advice does not render the entire communication privileged, nor does it alter the business-related character of the rest of the communication.

Document No. 27 illustrates this point. (*See* Exhibit A at 4-5.) This document contains an e-mail from Defendants' outside counsel, Ann Bradley, Esq., setting forth more than a full page of detailed, multi-part instructions on how to deal with Mr. Komoulis's personnel issues, including a recommendation that Defendants call Mr. Komoulis "to express concern and disappointment, identify the fundamental problem and find out who he trusts to advise him," and goes so far as to prescribe detailed instructions to be given to Plaintiff on how he should conduct himself with Defendants' customers. *Id.* This advice plainly is not legal advice, but rather human resources advice on personnel management and customer relations. At the end of the e-mail there is a single sentence containing "action items," one of which directs Ms. Mellon to check on the status of Mr. Komoulis's "EEOC charges." (*Id.* at 5.) The text immediately preceding it strongly suggests that, while there may be a subject matter overlap, it is an entirely separate topic from the preceding human resources discussion, included in this particular email merely for convenience. *Id.* References to litigation strategy or advice in other Submitted Documents are similarly isolated and limited in nature, and do not relate to the rest of the advice provided in the e-mails in which they appear. (*See, e.g.*, Exhibit A.) Even viewed in aggregate, these scattered litigation-related references do not support Defendants' claims that all

7

communications, or any particular communication, between Defendants and their outside counsel constituted legal advice protected by the attorney-client privilege.

This finding largely disposes of Defendants' objection that Judge Scanlon "improperly extended" the waiver principle associated with the *Faragher/Ellerth* defense to legal advice provided by Ms. Bradley regarding the internal investigation. (Def. Obj. at 7.) Given that the majority of outside counsel's advice was predominantly non-legal, the issue of waiver is largely irrelevant. Furthermore, even if these communications were covered by the attorney-client privilege, Judge Scanlon properly concluded that, by asserting a *Faragher/Ellerth* defense, Defendants waived that privilege with respect to any documents relating to the reasonableness of Defendants' efforts to correct the allegedly discriminatory behavior and the reasonableness of its investigative policies and practices. (Order at 20); *see Angelone v. Xerox Corp.*, No. 09 Civ. 6019 (CJS) (JWF), 2011 WL 4473534, at *2-3 (W.D.N.Y. Sept. 26, 2011), *reconsideration denied*, No. 09 Civ. 6019 (CJS) (JWF), 2012 WL 537492 (W.D.N.Y. Feb. 17, 2012) (defendant asserting a *Faragher/Ellerth* defense waives any privilege that might otherwise apply to "[a]ny document or communication considered, prepared, reviewed, or relied on by [the defendant] in creating or issuing the [investigatory report]"). [3]

Judge Scanlon also correctly concluded that Plaintiffs had a substantial need for these communications, *i.e.*, to "understand what constituted Defendants' investigatory procedures" and "fully test the reasonableness of Defendants' remedial efforts." (Order at 31); *Cf. Pray v. N.Y.C. Ballet Co.*, No. 96 Civ. 5723(RLC), 1998 WL 558796, *3 (S.D.N.Y. Feb. 13, 1998) (finding defendant's attorney-client privilege should not be breached where plaintiffs had no need for the contents of the attorney-client communications). For example, while Defendants may contend

---

[3] Indeed, recognizing this principle, Defendants waived the privilege with respect to their in-house counsel notes and correspondence relating to the internal investigation. (Order at 30-31.)

that they had their own investigatory policies and practices (*e.g.*, Def. Obj. at 13), Plaintiffs could use Defendants' communications with outside counsel to prove otherwise.  (*See* Order at 31) (finding that "the communications show that rather than following a pre-determined in-house policy, Defendants' procedure was to have outside counsel determine the process as it developed.").

Accordingly, the Court affirms the Order with respect to the attorney-client privilege issue.

B.      Work-Product Privilege

Judge Scanlon concluded that the Submitted Documents failed to demonstrate that the withheld documents, as a whole, were created in anticipation of litigation and thus were not protected work-product.  (Order at 29.)  Judge Scanlon further explained that:

> The communications [contained in the Submitted Documents] do not clarify why documents authored by non-attorneys are purportedly privileged.  Defendants have not offered evidence that any of the documents were created because of litigation, rather than simply in the course of a human resources investigation.  Instead, advice related to anticipated litigation was occasionally included as an aside in communications that were predominantly related to human-resources issues.

*Id*. at 29.

Based on its review of the Submitted Documents, the Court concurs with Judge Scanlon's assessment that the communications between Defendants and outside counsel related to human resources issues, *e.g.*, the internal investigation related to Mr. Komoulis and responding to his complaints.  Such advice would have been provided even absent the specter of litigation, and therefore do not constitute litigation-related work product.  *See Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 362 (E.D.N.Y. 2009) (even where the document "might also help in preparation for litigation," it will not be protected by the work-product doctrine if it was "prepared in the ordinary course of business" or "would have been created in essentially similar

9

form irrespective of the litigation." ) (quoting *State of Maine v. U.S. Dep't of the Interior*, 298 F.3d 60, 69 (1st Cir. 2002)).

Defendants challenge this finding on the basis that Defendants only sought the advice of outside counsel because of the potential for litigation and, therefore, these communications categorically constitute work product.   (Def. Obj. at 21.)  While it may be true that the possibility of litigation prompted Defendants to seek outside counsel's advice, the communications themselves demonstrate that rather than discussing litigation strategy or advice, Ms. Bradley advised Defendants on how to conduct the internal investigation and how to address Mr. Koumoulis's ongoing work performance issues and internal complaints, *i.e.*, human resources advice that would have been given regardless of a specific threat of litigation.   Indeed, Defendants concede that "LPL ha[d] an obligation to investigate" Koumoulis's complaints about alleged discrimination and retaliation," regardless of the potential for litigation.  (Def. Obj. at 21.)[4]  The alleged motivation for which these documents were sought is not enough to overcome what appears on the face of the documents themselves.

Even assuming that Ms. Bradley's advice was given with the possibility of litigation in mind, this awareness does not convert her advice on dealing with Mr. Koumoulis's internal complaints or his work performance issues into advice given in "anticipation of litigation." Indeed, Defendants acknowledge that this advice was intended, in part, to prevent Plaintiff from

---

[4] Defendants argue, however, that this fact "does not mean that such investigations cannot be in anticipation of litigation where, as here, the at-issue investigations took place after Koumoulis filed an EEOC Charge against [LPL] and [LPL] reasonably anticipated a lawsuit.  (Def. Obj. at 21.)   However, even assuming the internal investigation was conducted in anticipation of litigation, otherwise work-product privileged communications relating to the investigation would still be discoverable once Defendants assert a *Faragher/Ellerth* defense.  Indeed, Defendants acknowledged as much when they disclosed their in-house attorneys' notes and correspondence regarding the investigation.  Defendants offer no justification for treating their outside counsel's communications regarding the investigation differently than their in-house counsel's communications on that topic.

bringing claims of retaliation.  (Def. Obj. at 2, 21, 24-25.)  Legal advice given for the purpose of *preventing* litigation is different than advice given in an *anticipation* of litigation.  *See, e.g., Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74 (S.D.N.Y. 2010) ("The mere 'possibility' of litigation is insufficient to obtain work-product protection." (quoting *Kingsway Fin. Servs., Inc. v. Pricewaterhouse–Coopers LLP,* 03-CV-5560, 2007 WL 473726, at *5 (S.D.N.Y. Feb. 14, 2007) (citing cases)).

Defendants seize on Judge Scanlon's recognition that the privilege applies to isolated portions of the Submitted Documents to bolster their claim that she incorrectly failed to find all of the documents, in their entirety, privileged.  (Def. Obj. at 4.)  Defendants' argument appears to be that the reference to the possibility of litigation in a communication establishes that Ms. Bradley's sole function was to provide legal advice in anticipation of such litigation, and that everything discussed in those communications therefore constitutes work product.  But simply declaring that something is prepared in "anticipation of litigation" does not necessarily make it so.  *P. & B. Marina, Ltd. P'ship v. Logrande*, 136 F.R.D. 50, 57 (E.D.N.Y. 1991) *aff'd sub nom. P&B Marina Ltd. v. LoGrande*, 983 F.2d 1047 (2d Cir. 1992) ("A blanket assertion that the documents are work-product or reflect anticipated litigation is not sufficient to attach the immunity.")  As discussed, here, the contents of the communications directly contradict Defendants' privilege claim.  These communications, on their face, relate to advice given by Ms. Bradley on how to prevent a lawsuit, not on how to defend one.  Indeed, in those few instances where Ms. Bradley focused on a defensive strategy in anticipation of litigation, Judge Scanlon ruled that those parts of the communications are protected from discovery.  Thus, far from demonstrating inconsistency in her application of the relevant legal standards, Judge Scanlon's limited recognition of the privilege demonstrates the rigor and precision of her analysis.

Finally, as previously discussed, Defendants' assertion of a *Faragher/Ellerth* defense further undermines their claim of work product privilege.  By asserting this defense, Defendants waive any otherwise applicable privilege with respect to all documents relating to the reasonableness of their efforts to correct the allegedly discriminatory behavior and the reasonableness of their investigatory policies and procedures.  *See Angelone,* 2011 WL 4473534, at *2-3.

Accordingly, the Court affirms the Order with respect to the work-product privilege issue.

C.     Privilege Log

Defendants contend that Judge Scanlon "committed clear error" by permitting Plaintiffs to submit a declaration, instead of a privilege log, documenting advice they received from their attorney about internal complaints and LPL's investigation.  (Def. Obj. at 21-22; Order at 33-34.) This contention is meritless.

Judge Scanlon properly exercised her discretion to allow Plaintiffs to use a declaration to satisfy their disclosure obligation under FRCP 26(b)(5)(A).  The rule does not prescribe any particular format for disclosing privilege claims.  So long as Plaintiffs provide Defendants with the information required by FRCP 26(b)(5)(A), *i.e.*, "the nature of the documents, communications, or tangible things not produced or disclosed" . . . "in a manner that  . . . will enable other parties to assess the claim," the format used to do so is irrelevant.  Indeed, as Judge Scanlon noted, Local Civil Rule 26.2 encourages the use of "[e]fficient means of providing information regarding claims of privilege."  (Order at 34.)

Defendants further argue that Judge Scanlon improperly "shifted the burden" by noting that Defendants offered no basis why Plaintiffs' should produce a privilege log rather than a

declaration.  (Def. Obj. at 21-22; Order at 34.)  Defendants either misunderstand or refuse to accept Judge Scanlon's simple point:  Local 26.2 allows for the most "[e]fficient means of providing information regarding claims of privilege," and Defendants provided her no reason to use one form over another.  To the extent that Defendants disagreed with that decision, they bear the burden of demonstrating why Judge Scanlon's exercise of discretion was wrong or prejudicial to Defendants, *e.g.*, that the declaration would not reveal all of the information required by FRCP 26(b)(5)(A) or necessary for a challenge to Plaintiffs' assertions of privilege. They have not done so.

Defendants argue that "[i]f Plaintiffs withhold an otherwise discoverable document on the basis of privilege, they, no different than Defendants, must provide the information required by the Rules."  (Def. Obj. at 21.)  While this statement is true, it says nothing about the format in which that information must be provided, nor does the case cited by Defendants in support of this statement.[5]  In fact, the declaration format prescribed by Judge Scanlon fully satisfies the requirements of FRCP 26(b)(5)(A) and requires Plaintiffs to provide all of the information required by the rule and necessary for Defendants to assess Plaintiffs' privilege claims.

Accordingly, the Court affirms the Order with respect to the privilege log issue.

III.    <u>Defendants' Request for the Court to Consider Supplemental Evidence</u>

Defendants ask that if the Court finds, as it has, that they have failed to meet their burden justifying the setting aside or modification of the Order, it consider supplemental evidence consisting of the affidavit of Kathy Bakke, LPL Senior Vice President of Human Resources, and

---

[5] In the case cited by Defendants, *Bujnicki v. American Paving and Excavating, Inc.*, 99 CV 0646S (SR), 2004 WL 1071736 (W.D.N.Y. Feb. 25, 2004), the magistrate judge ruled on a series of motions to compel discovery filed by both parties, and, in sum, directed each side to supplement their discovery responses.

deposition testimony of Ms. Bakke and Ms. Mellon. (Dkt. No. 56). This evidence is "new," in that it was not presented to Judge Scanlon at the time she rendered her decision on the privilege issue. The Court declines to consider Defendants' new evidence.

As the Court previously ruled in response to Defendants' request to submit this additional evidence, the district court's review of a magistrate judge's *non-dispositive* ruling under FRCP 72(a) is limited to the evidence that was before the magistrate judge. *Compare* Fed. R. Civ. P. 72(a) (discussing disposition of non-dispositive matters by magistrate judges without mention of "receiving further evidence") *with* Fed.R.Civ.P. 72(b) (discussing disposition of dispositive matters by magistrate judges, and expressly allowing the receipt of "further evidence"); *see also State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 158 (E.D.N.Y. 2005).[6] Defendants do not cite any legal authority to support its request for the Court to consider the new evidence.[7] Rather, Defendants argue that they "did not have sufficient opportunity before the Magistrate to submit relevant evidence as the [Order] was not rendered following motion practice and opportunities to submit affidavits and other evidence." (Def. Obj. at 22 (emphasis in original)). The Court rejects this contention.

Defendants had ample opportunity throughout the six-month period during which the parties litigated the privilege and other discovery issues before Judge Scanlon to introduce the

_____

[6] Plaintiffs urge the Court to strike Defendants' objections solely on the basis of their failure to adhere to the Court's prior ruling that its consideration would be limited to the evidence before the magistrate judge and not any "further evidence" offered by Defendants. (Dkt. 57 ("Pl. Opp.") at 6-7.) However, in light of the Court's decision not to consider Defendants' additional evidence and to deny the objections on the merits, the request to strike is moot.

[7] Defendants note that "[a]t least one court in this Circuit has considered additional evidence in a privilege dispute, but even this is an overstatement." (Def. Obj. at 23) (citing *Graves v. Deutsche Bank Sec.,* 2011 U.S. Dist. LEXIS 140429 (S.D.N.Y. Dec. 5, 2011). In that case, however, the Court simply mentioned—in a single sentence without explanation—that that the "additional deposition testimony submitted … offer[ed] no help" to the objecting party. *See Graves*, 2011 LEXIS at *5.

testimonial evidence it now asks this Court to consider.  While the Court will not recapitulate the entire procedural history, it notes the following facts, which contradict Defendants' claim of insufficient opportunity: (1) following a conference before Judge Scanlon on April 8, 2013, during which Plaintiffs raised a challenge to Defendants' assertion of privilege, Judge Scanlon directed the parties, *inter alia*, to submit a joint letter setting forth their respective positions, if they could not resolve it themselves (Pl. Opp. at 4-5); (2) the parties submitted their joint letter on April 16, 2013 (Dkt. No. 39); (3) between the end of April 2013 and September 2013, the parties communicated with Judge Scanlon numerous times about discovery issues, either in writing or by telephone, (Pl. Opp. at 5-6); (4) on September 30, 2013, Judge Scanlon directed Defendants to submit certain of the disputed documents for her *in camera* review, which Defendants did on October 3, 2013; (5) on October 25, 2013, Judge Scanlon held a telephone conference with the parties; and (6) on November 1, 2013, Judge Scanlon issued her decision. *Id*. at 6.  At no time during the six-month period during which the privilege issue was before Judge Scanlon, including, most significantly, on April 16th, when the parties filed their joint letter regarding the privilege issue, or on October 3rd, when Defendants filed the Submitted Documents for Judge Scanlon's review.  The record clearly establishes that not only did Defendants have ample opportunity to submit *all* evidence relevant to the privilege issue, but they also had notice one month prior to the issuance of the Order as to the specific documents on which Judge Scanlon would base her decision.  Thus, there is simply no merit to Defendants' claim that they were not provided sufficient opportunity to submit the evidence they now claim is relevant and ask the Court to consider.

The time to have proffered this evidence was during the six months when the privilege issue was before Judge Scanlon.  Defendants fail to explain why they failed, at a minimum, to

include this evidence as part of the April 16, 2013, joint letter, the express purpose of which was to give the parties the opportunity to set forth their respective positions on the privilege issue. (Order at 6 (noting that "Defendants did not provide sworn affidavits or additional deposition transcripts that might have clarified Ms. Bradley's role . . . .").)[8]  Indeed, at that time, the parties had no reason to believe, or expect, that they would be given any additional opportunity to state or support their positions.

Defendants argue that the additional evidence warrants consideration because of the "sacrosanct nature of the attorney-client and work product privileges and the potential sweeping impact of the [Order.]"  (Def. Obj. at 23).  However, the gravity of these privileges existed prior to the Order just as they do now, and yet Defendants did not move to provide the evidence they now claim is relevant when it would have mattered, *i.e.*, before the magistrate judge who was deciding the issue.  It is now too late to do so.  As  Judge Kaplan aptly observed in *Housing Works, Inc. v. Turner*, 362 F. Supp. 2d 434 (S.D.N.Y. 2005):  "[L]itigants cannot be permitted to use litigation before a magistrate judge as something akin to [a] spring training exhibition game, holding back evidence for use once the regular season begins before the district judge."  *Id.* at 438.

In any event, even if the Court were to consider the new evidence offered by Defendants, it would not alter the Court's decision.  The new evidence proffered by Defendants merely buttresses arguments that Defendants made to Judge Scanlon about the confidential and litigation-oriented nature of the purportedly privileged documents.  As discussed below, because

---

[8] The failure to do so is noteworthy given that Plaintiffs submitted portions of Ms.  Bakke's and Ms. Mellon's depositions with the April 16th joint letter, yet Defendants never sought to supplement the record with other portions of these witnesses' testimony.  *See* Order at 24, n. 16 (finding Defendants' privilege submissions complete where Defendants had "ample time [since the filing of the parties' joint letter] to address Plaintiffs' exhibits or to request permission to do so.").

Judge Scanlon duly considered and rejected Defendants' position based substantially on her own review and assessment of the documents, the testimonial evidence offered by Defendants supporting their own characterization of the documents, even if considered, would have no effect on the Court's review of Judge Scanlon's determinations.

Accordingly, Defendants' request to have the Court consider the proffered new evidence is denied.

## CONCLUSION

The Court affirms, in its entirety, the Memorandum and Order issued in this matter by Magistrate Judge Vera M. Scanlon on November 1, 2013.

SO ORDERED:

_____/s/_____
PAMELA K. CHEN
United States District Judge

Dated: January 21, 2014
         Brooklyn, New York

17