## EXHIBIT A[1]

### 1.  Document No. 8, ECF at 3

-----Original  Message-----
From: Bradley, Ann K.
[mailto:AKBradley@duanemorris.com] Sent:  Tuesday,
December  02,2008 8:07AM
To: Claudia Mellon
Subject:  RE: Call with James Griffin

Confidential  investigation  report to file and closing memo to Tasso [Koumoulis]  with
copy of memo to Lou.  ==Definitely document  in detail in the report each conversation  with==
==Tasso, as his change in story (should we ever need it) will tend to undermine his credibility.==
The memo can then be a summary of your findings.  We will need to memorialize  that we
were unable to speak with Griffin.  I am happy to review  your drafts.  You can use the formats
provided during the investigations  workshop.
Ann

-----Original  Message-----
From: Claudia Mellon
[mailto:Claudia.Mellon@lpl.com] Sent:  Tuesday,
December  02, 2008 7:11 AM
To: Bradley, Ann K.
Subject:  FW: Call with James Griffin

Ann,
I spoke with Tasso and used the approach you suggested.  He immediately made the connection
and definitely wanted to get back to work.  No issues with James or Matt being his supervisors.
We talked about the expectation that he be professional and to continue working with Matt on
the expectations.
I told him he could go back to work tomorrow.  Spoke to Lou and told him to continue working
on the plan.
How do you recommend we document?  Letter to Tasso?
Thanks,
Claudia

---

[1] ECF access to this exhibit has been restricted to the parties.  All documents referenced herein
are contained in Docket No. 49.  Reference to page numbers refer to the ECF pagination and not
the internal pagination of the individual documents contained in Docket No. 49.  All highlighted
information was found by Judge Scanlon to be protected by attorney-client and/or work-product
privilege.

**2.  Docket No. 49, Document No. 9, ECF at 7-8**

**From:** Bradley, Ann K.
**To:** Claudia Mellon
**Sent:** Wed Dec 03 09:11:19 2008
**Subject:** RE: Follow up

Claudia,
I'd keep it low key ... and keep the communications door wide open with him. Perhaps "Unfortunately, we were not able to speak with Mr. Griffin, so we completed the investigation based on the information available. Please contact me if you have any new or continuing concerns."

We should probably provide Marjory and Lynnette with a brief update as promised. Perhaps "We wanted to let you know the investigation has been completed, no adverse action was taken and Tasso has returned to work. He is mindful of his obligation to maintain professionalism in all business-related communications. He will continue to work with Lou on strategies to improve bank relationships and quality lead generation. The matter has been documented. We will be following up periodically."

Ann K. Bradley
Partner
Duane Morris LLP
101 West Broadway, Suite 900
San Diego, CA 92101-8285
P: 619.744.2269 F: 619.744.2201
akbradley@duanemmTis.com
www.duanemorris.com

-----------------------------------------------------------------

**From:** Claudia Mellon [mailto:Ciaudia.Mellon@lpl.com]
**Sent:** Wednesday, December 03, 2008 6:37AM
**To:** Bradley, Ann K.
**Subject:** FW: Follow up
**Sensitivity:** Confidential

Interesting question-thoughts on needing to respond that we were not afforded access?

-----------------------------------------------------------------

2

**From:** Tasso Koumoulis
**Sent:** Wednesday, December 03, 2008 6:34AM
**To:** Claudia Mellon
**Subject:** RE: Follow up
**Sensitivity:** Confidential
Claudia,
Thank you for your response.
Just one thing I forgot to ask you yesterday, did you ever speak with James Griffin about this situation.
If so, what was his response?
Thanks.
Tasso


3. **Document No. 22, ECF at 15**

**From:**        Claudia Mellon <Claudia.Mellon@lpl.com>
**Sent:**   Friday, July 10, 2009 3:11 PM
**To:**     Bradley, Ann K. <AKBradley@duanemorris.com>
**Subject:**  RE: Tasso Koumoulis

Thanks Ann. That should work.
As an FYI, I did speak with him and he did not specifically call out Lou. He did read the LPL Handbook provision on retaliation and asked repeatedly "Do I fall into that". I told him we had received his complaint and that I understood that retaliation was one of his allegations and that we would investigate whether retaliatory behavior had taken place. He said that the asked repeatedly whether I was aware of the EEOC claim.

Claudia

-----------------------------------------------------------------

**From:** Bradley, Ann K. [mailto:AKBradley@duanemorris.com]
**Sent:** Friday, July 10, 2009 11:02 AM
**To:** Claudia Mellon
**Subject:** Tasso Koumoulis

Hi Claudia,
You may want to revise this after talking with Tasso; however, here is the brief content I was thinking about for your acknowledgment.

Dear Tasso,

Lou Mastropietro has referred your memo dated July 9, 2009, regarding "Complaint of Discrimination, Harassment and Retaliation" to Human Resources. Please be assured LPL Financial takes these type of allegations very seriously and will immediately undertake an investigation.

We will be in touch with you next week regarding an interview to discuss your concerns. We appreciate your anticipated cooperation in the investigation process.
Please contact me, Kathy Bakke or Anna Orsenigo in Human Resources if you have any questions.

Sincerely,

Claudia Mellon


**4. <u>Document No. 27, ECF 24-25</u>**

**From:** Bradley, Ann K. [mailto:AK8radley@duanemorris.com]
**Sent:** Monday, March 02, 2009 3:11 PM
**To:** Claudia Mellon
**Subject:** RE: YOUR MEMO OF 2/5/09 SUBJECT:FINDINGS AND CONCLl)SION OF INVESTIGATION

Hi Claudia,
As we discussed, I think this might go best with a phone call first from you to express concern and disappointment, identify the fundamental problem and find out who he trusts to advise him. We need to get through to him that no one is trying to set him up; we are just trying to resolve the strained working relationship between him and the bank ... and we don't control the bank!

Here are some points for the call and/or the email to Tasso that responds to his 2/24 communication:

As a threshold matter, we need to clarify that James Griffin and the bank employees do not work for LPL Financial. We cannot make them understand ....and we cannot prevent them from complaining, even if you think they are in the wrong. The bank is LPL's customer!  Blaming the customer for failures in the relationship is nonproductive and will not solve the problems.

We are concerned that you now distrust not only your former employer IFMG and your former supervisor Matt Baval, but Lou Mastropietro and LPL's Human Resources department We only want to resolve the issues between Astoria Bank (our customer) and Tasso Koumoulis (our employee who serves this customer), but we cannot do that if you do not trust your employer to help you. Is there someone within LPL that you would prefer advise you on these issues?

4

You and I had some very good communications previously. If you are willing, I would like to walk through the investigation report that Lou provided to you and go over your concerns so we can agree on a plan to move ahead.

**[If Tasso agrees]**

1. Prequalifying bank customers - what can be done when you say you have effectively communicated but the bank employees "refuse to understand" because they want all prospects qualified? How can we address this with the bank? How can we demonstrate that you are correct in your assessment without undermining our customer's employees? How can we work more closely together with them to reach mutually desirable results?

2. Professional behavior - as you now know, your joking behavior is not appreciated, so how can we repair that relationship to avoid future complaints? Because the bank is our customer and LPL is the service provider, we need you to go the "extra mile" in improving the relationship and demonstrating that we respect them and value thier business.

3. Schedule at branches - even if the Bank does not meet our expectations, we cannot fail to perform as promised without being viewed negatively by the customer and risking loss of this account. Is there some reason you cannot maintain the schedule that was previously set at least through first quarter as Lou requested? Again, if LPL goes the extra mile, we will be in a better position to approach the Bank about the referral volume and such.

4. Bank customer issue - saying the "bank is in the wrong" does nothing to solve the problem. How can we get on the same side with the Bank and serve the Bank's customer? Treating the Bank as an adversary is unlikely to be successful, so we need to come up with a more constructive and effective approach.

5. Timely completion of business plans - Again, passing the blame to the Bank is nonproductive. There needs to be a fundamental change in outlook and strategy if this relationship is to be preserved and improved. Do you think you can do that? If not, what alternatives do you see?

Tasso, your statement that you are fully professional and effective in your communications may be true in your mind, but this perception is not shared by our customer-- Astoria Bank. Suggesting that the bank employees are the ones who need to improve their professionalism and communications is not a solution we can implement, as we do not control those employees. All we can control is how we act and how we communicate. So let's look at changing what is within our control.

Claudia, I hope this is helpful. Let's discuss at your convenience. The two action items you were going to take on were (1) a status on EEOC charges from Lynnette and (2) who else we might talk with at LPL in managed rep program on these issues and the view of the bank as the customer.

Ann

5. **Document No. 31, ECF 34-35**

**From:** Bradley, Ann K. [mailto:AKBradley@duanemorris.com]
**Sent:** Tuesday, July 14, 2009 2:19PM
**To:** Kathy Bakke
**Subject:** RE: Tasso Complaint

Hi Kathy,

I have time on Wednesday between 9:30 and 11:30 Pacific or after lunch. I know you need to leave these days, so I can adjust my commitments somewhat to work around your schedule and the time difference.

I will pull out the key documents from prior complaints and counselings, so I have quick reference. In think our focus with Tasso has got to be pinning him down on the "who, what, when, where, why and how" of these allegations of discrimination, harassment and retaliation and then make a comparison to previous investigations.

We need to determine if there anything new going on ... or just a new look at prior issues.
I look forward to working with you again!

Ann

------------------------------------------------------------------

**From:** Kathy Bakke [mailto:kathy.bakke@UVEST.com]
**Sent:** Tuesday, July 14, 2009 11:01 AM
**To:** Bradley, Ann K.
**Subject:** RE: Tasso Complaint .

Hello Ann,
Do you have some time to discuss this tomorrow? My availability today is pretty poor except 2:30-3pm EST (11 :30 PST). Let me know what works best for you. Thanks!
Kathy

Kathy Bakke
AVP, Human Resources
Direct: 704-348-4123
Toll-free: 800-277-8802 I ext. 4123
Email: kathy.bakke@lpl.com

------------------------------------------------------------------

**From:** Sheila Hunter [mailto:Sheila.Hunter@lpl.com]
**Sent:** Tuesday, July 14, 2009 1:30 PM

**To:** Kathy Bakke; Claudia Mellon; akbradley@duanemorris.com
**Subject:** Re: Tasso Complaint .

I've spoken with Kathy and she'll be in touch with each of you regarding this complaint and internal investigation.

Sheila E. Hunter
SVP, Human Resources
LPL Financial
(858) 450-9606, ext. 6688

-----------------------------------------------------------------

**From:** Kathy Bakke
**To**: Sheila Hunter
**Sent:** Tue Jul 14 09:26:23 2009
**Subject:** Did you need to speak to me...

Regarding the Tasso matter? I got the materials this morning and Claudia mentioned you were going to call to discuss...

Kathy

6. **Document No. 32, ECF 38-39**

**From:** Kathy Bakke <kathy.bakke@UVEST.com>
**Sent:** Thursday, July 16, 2009 11 :48 AM
**To:** Bradley, Ann K. <AKBradley@duanemorris.com>; Sheila Hunter <Sheila.Hunter@lpl.com>
**Subject:** FW: Employee Discussion

- Attorney Client Communication

Ann,
Please see Tasso's message below. He's asking us to rescind his final warning in order to speak to me. I can certainly call him and tell him this isn't the way it works, that we're investigating the complaint of discrimination/retaliation not investigating why Lou put him on written warning. Even though they're related, I consider that already done in the conversations he's had with Claudia.

As you will, also, I have some questions around the LPL award which Anna doesn't know anything about either. I can reach out to Lou (or Tasso) to find out more, but wanted to get your perspective on getting Tasso to speak to me.

Thanks,
Kathy

Kathy Bakke
A VP, Human Resources
Direct: 704-348-4123
Toll-free: 800-277-88021 ext. 4123
Email: kathy .bakke@lpl.com

-----Original Message..; ___ _
From: Tasso Koumoulis [ mailto:Tasso.Koumoulis@lpl.com]
Sent: Thursday, July 16,2009 10:24 AM
To: Kathy Bakke
Subject: RE: Employee Discussion

Kathy,
I appreciate your effort to discuss this matter.
I am under the impression that an investigation should have been carried out before disciplinary action was taken.
In my case, the reverse is true. I was given a final warning letter first and now LPL wants to discuss it.
It took the frivolous accusations of a couple of individuals and based on that issued me a final warning letter without ever inquiring my side of the situation.
Ironically, one of the accusations mentions how I introduce myself and handle customers. Meanwhile, I have a 2009 LPL award on my desk for "Outstanding Customer Service".
I will discuss this matter with you, but only if LPL rescinds the final warning letter first.
Without that, I will take it to mean that LPL is not serious about having an objective and meaningful discussion and that this is nothing more than an attempt to "sweep things under the carpet" as has been done in the past.

I look forward to hearing from you.

Thanks.

Tasso

------------------------------------------------------------------

From: Kathy Bakke [mailto:kathy.bakke@UVEST.com]
Sent: Wed 7115/2009 3:05PM
To: Tasso Koumoulis
Subject: Employee Discussion
Hi Tasso,

I just left you a voice message and wanted to follow up via email. I'm hoping to schedule some time with you tomorrow to discuss the "Complaint of Discrimination, Harassment, and Retaliation" that you provided to us.
Are you available at 1 or 2pm tomorrow?  I look forward to hearing from you.

Thanks,

Kathy

Kathy Bakke
LPL Financial
AVP, Human Resources
Direct: (704) 348-4123
Toll-free: (800) 277-88021 ext. 4123
Fax: (704) 405-4762
Email: kathy.bakke@lpl.com

7. **Document No. 33, ECF at 42**

**From:** Kathy Bakke <kathy.bakke@UVEST.com>
**Sent:** Monday, July 20, 2009 4:02 PM
**To:** Bradley, Ann K. <AKBradley@duanemorris.com>
**Cc:** Sheila Hunter <Sheila.Hunter@lpl.com>
**Subject:** Tasso Complaint Update
**Attach:** Employee Discussion (84.9 KB).msg; Tasso Koumoulis Investigation.xls

_____

Ann,
Update on Tasso Compliant:

Tasso - Where do we want to go from here? I spoke to him Thursday and told him we won't
rescind the warning at this time, but if we need to modify or rescind following the investigation
we would. He does not want to discuss the complaint with me.  Do we need to follow up with
him in writing or only when the investigation is complete? I included my previous email
regarding this matter- attached.

Lou - spoke to Lou on the issues below:
- Scheduling at Branch Locations- there is another FC on final written notice for not
  adhering to schedule in the bank branch. Reps are told they need to be in the branch
  during banking hours. Tasso signed the Letter of Expectation in March of 2009 that says
  attendance is a major function of the job and he's expected to be in the bank during
  regular operating hours in accordance with a schedule agreed upon with your branches
  and sales manager. All other FCs receive the same information in their LOE- I have a
  generic template.
- Reviewing Schedule at the end of the month- Lou feels he's done this, perhaps not to the
  degree Tasso expected.
- And Lou admits he has not formally sat down with Tasso to discuss. He did, however,
  schedule time to discuss with Lou following the written warning. (see attached)
- Scheduled to speak to.Lou tomorrow regarding professionalism part of complaint

Numerous Awards received by Tasso-
- Spoke to Allison Cooper on LPL's Events Team about awards
- Tasso received an award for his production levels as a Patriot's Club Member
- Along with award he received a card that says "Congratulations on a terrific 2008! You have received this commemorative plaque because your year-end 2008 total gross production was between $450,000 and $599,999. We are proud to have you with us and wish you continued success. As always, thank you for giving us the opportunity to service your business." Signed by LPL Financial.
- The award is a table plaque that says "For Outstanding Client Service"

To do-
- Plan to speak to Claudia and Bruce Miller

Please let me know how you suggest we handle Tasso at this time. I think for the rest I can have that completed this week.
Kathy

Kathy Bakke
LPL Financial
AVP, Human Resources
Direct: (704) 348-4123
Toll-free: (800) 277-88021 ext. 4123
Fax: (704) 405-4762
Email: kathy.bakke@lpl.com

## 8. **Document No. 36, ECF at 58-59**[2]

**From:** Kathy Bakke <kathy.bakke@UVEST.com>
**Sent:** Friday, July 31, 2009 11:33 AM
**To:** Bradley, Ann K. <AKBradley@duanemorris.com>
**Cc:** Sheila Hunter <Sheila.Hunter@lpl.com>
**Subject:** Koumoulis, T. Investigation
**Attach:** Koumoulis Investigation Report.DOC

---

Ann - attached is the investigation report.

Lou and Warren met with Tasso on Wed to discuss whether Tasso had any recommendations or ideas to alleviate the 29th street coverage issues that are continually raised. His suggestions:
- Changing his coverage days at 29th Street from Mondays and Fridays to Mondays and Thursdays and supplementing the branch with one Saturday a month. Jim Griffin agreed to this change effective next week.

---

[2] Judge Scanlon permitted the highlighted portion of this document to be redacted based on privilege.

■ To spend this week at Main Office as Andy Keating was on vacation. Jim felt Main Office is more self-sufficient, because it has three LBEs to only one at 29th street.

Warren noted: Tasso was agreeable and expressed surprise that we were able to accomplish the schedule change so quickly.

Warren also added the following from his discussion with Jim Griffin:
Spoke to James about the lack of referral support in branch 9. He acknowledged the staff does not make appointments for Tasso, and that nobody, including Tasso, is doing anything there. He indicated the appointments are being made for the LBEs, because the staff has no confidence in Tasso. For these reasons, James felt he could not manage his subordinates too intensely because the situation is "too far gone." He observed that the branch exceed all of its other goals in Q2 except for GIS and Insurance. James indicated his approach of late was "to endure the process until Lou and Warren do the right thing," i.e. get rid of Tasso.

By the end of the conversation, James agreed it was up to him and the Branch Manager to break the cycle of non-support. He agreed to have a discussion with the Branch Manager, and I said I would contact the Manager too to offer whatever support I could.

I'm going to follow up with Lou and Warren to make sure they document the new schedule in a clear format to Tasso. The good news is that he came up with this schedule so should adhere to it. Maybe this is something we need to add to recommendation/resolution?

Kathy

Kathy Bakke
AVP, Human Resources
Direct: 704-348-4123
Toll-free: 800-277-8802 1 ext. 4123
Email: kathy.bakke@lpl.com

_____

**From:** Bradley, Ann K. [mailto:AKBradley@duanemorris.com]
**Sent:** Thursday, July 30, 2009 12:50 PM
**To:** Kathy Bakke
**Cc:** Sheila Hunter
**Subject:** RE: Koumoulis, T. Investigation

Hi Kathy,
This looks very good. I will make some suggested revisions to the closing memo to Tasso and may have a few questions for you. Were you planning to pull together a report? I think you should, as this situation looks so ripe for litigation. You almost have everything you need. Let me know if you need the report format in electronic form or would like us to pull it together from what you have provided.

Did Lou meet with Tasso yesterday as planned? How did it go? I think HR needs to be in the loop on all employment-related events involving Tasso, even things like the production awards.

Ann

Ann K. Bradley
Partner
Duane Morris LLP
101 West Broadway, Suite 900
San Diego, CA 92101-8285
P: 619.744.2269 F: 619.744.2201
akbrad1ey@duanemorris.com
www.duanemorris.com

**9.** **Document No. 37, ECF at 65-66**

**From:** Bradley, Ann K. [mailto:AKBradley@duanemorris.com]
**Sent**: Monday, August 03, 2009 6:08PM
**To:** Kathy Bakke
**Cc:** Sheila Hunter
**Subject:** RE: Koumoulis, T. Investigation

Hi Kathy,

Good news on the schedule change. Report looks good, but I think we should flesh out a couple things:

1 - the fact that Tasso declined to be interviewed. We can use what you have in draft closing memo. Cite to date of your conversation and that you told him you would proceed but really wanted to get his input.

2 - the findings need to be a bit more specific, drawing on the documents and interviews. You can pull this from your allegations matrix. A specific finding might be "Adherence to schedule seems justified because repeated written complaints from client (cite dates and docs), Tasso was repeatedly counseled on this topic (dates and docs), LOE's for 2008 and 2009, which he signed, reflect schedule adherence as job requirement and he admitted in interview with Lou that he left early on ___ [date of most recent complaint]. Warren denies ever giving him permission to leave early. Warren's version credible given other support, such as LOE signed by both Tasso and Warren on [date].

(LPL needs to go the extra mile on this one since Tasso thinks LPL cannot be objective. Therefore, objective data and not opinion are critical.)
3 - the matrix (and report) could be expanded to include the feedback from Warren on talking with James Griffin and perhaps event he schedule change meeting.

12

I can make revisions for your review, if you would like. (I know it is a long process to do all this and I am sure you are anxious to be done!) Just let me know. I will also take another look at the background, as you asked how much we need to include.

Ann

Ann K. Bradley
Partner
Duane Morris LLP
101 West Broadway, Suite 900
San Diego, CA 92101-8285
P: 619.744.2269 F: 619.744.2201
akbradley@duanemorris.com
www .duanemorris.com

## 10. __Document No. 39, ECF at 90-91__

**From:** Bradley, Ann K. [mailto:AKBradley@duanemorris.com]
**Sent:** Tuesday, August 11, 2009 3:07PM
**To:** Kathy Bakke
**Cc:** Sheila Hunter
**Subject**: RE: Tasso Koumoulis- Revised Closing Memo

Hi Kathy,

If my revision accurately reflects your findings and the reasons for your findings, then I would hold a telephone "closing conference" with Tasso to cover these points and tell him you are sending him a memo with the same info. If he now wants to talk, you could reopen the investigation, but I would wrap up this step, so we can show timely investigated and reached conclusions based on info we had.

The report for your file should be updated to reflect the changes in the memo.

Ann

Ann K. Bradley
Partner
Duane Morris LLP
101 West Broadway, Suite 900
San Diego, CA 92101-8285
P: 619.744.2269F: 619.744.2201
akbradley@duanemorris.com
www.duanemorris.com

---

**From**: Kathy Bakke [mailto:kathy.bakke@UVESf.com]
**Sent**: Tuesday, August 11, 2009 11:54 AM
**To:** Bradley, Ann K.
**Cc:** Sheila Hunter
**Subject:** RE: Tasso Koumoulis- Revised Closing Memo

It looks to include the information we need. Should I send it to Tasso at this point or do we need to discuss further?

Thanks!

Kathy

Kathy Bakke
AVP, Human Resources
Direct: 704-348-4123
Toll-free: 800-277-8802 I ext. 4123
Email: kathy.bakke@lpl.com

---

**From:** Bradley, Ann K. [mailto:AKBradley@duanemorris.com]
**Sent**: Friday, August 07, 2009 7:00 PM
**To**: Kathy Bakke
**Cc:** 'Sheila Hunter'
**Subject**: Tasso Koumoulis - Revised Closing Memo

Hi Kathy,

Attached is a revised closing memo to Tasso for your consideration. You will see I expanded the findings and reformatted them. I also tried to add a bit more support to some of them. It makes the memo long, but we know generalities will not work with him.

Please review carefully for factual accuracy. This will be evidence in his lawsuit, so we don't want to overstate or mis-state and have to backtrack later.

If you would like me to make similar revisions to the report, please let me know. I would be happy to do so.

Have a good weekend.

Ann

Ann K. Bradley
Partner
Duane Morris LLP

14

1 0 1 West Broadway, Suite 900
San Diego, CA 92101-8285
P: 619.744.2269 F: 619.744.2201
akbradley@duanemorris.com
www.duanemorris.com

## 11. **Document No. 48, ECF at 93**

**From**: Bradley, Ann K. [AKBradley@duanemorris.com]
**Sent**: Monday, July 20, 2009 9:17 PM
**To**: Kathy Bakke
**Cc**: Sheila Hunter
**Subject**: RE: Tasso Complaint Update

Hi Kathy,

Good job so far! I think you have told Tasso in writing that you will proceed with investigation and encourage him to participate (I am looking at your email to him on July 16 at 3:28 pm.) We can try him again once you have completed all other witnesses.

In terms of other witnesses, what about talking to Warren about the validity of the complaints from Astoria, etc. He was involved with the schedule issue, the LOE, the final warning conference. Could even ask him if he believes Tasso being treated differently. Could ask about discrimination...what basis? Has he seen Lou treat Tasso more harshly? If so, why.

In terms of your chart and interviews, it might be good to ask and memorialize (perhaps more than you have) that the final warning was due to new customer complaints from specific people on specific dates and that they were verified if they were)~Could also reference the prior warning re same issues: Could reference the Astoria emails as documents to support complaints.

The whole "adherence to schedule" issue is well-documented; so let's get all those on the chart-see prior complaints, prior warnings, 2008 performance eval, March 2009 LOE, latest complaint from Astoria, admission by Tasso in final warning meeting.  I think we need to dig down in the details to counter Tasso's generalities.

Also, didn't Lou talk with Tasso about the latest complaints before the final warning? Tasso suggests he was completely unaware. Lou should be able to tell you and there may even be emails. (This may become apparent through your interviews with Claudia.)

I suggest we get more on the award and the program. Were there lots given out both above and below his # levels? Is there anything in writing about the Patriot Club and that it is strictly based on production? Did Allison indicate why it says "Outstanding Customer Service" if it is just for sales results? Did Lou and Warren know about the award at time of warning and decide not relevant? I double-checked Tasso's year-end eval for 2008 and it is not that stellar (he had 3 "partially met" goals and 2 "missed" goals with an overall goal rating of "moderate performance."

15

What is status of his current eval and YTD 2009 performance? Also, we really do need to pin down any objective data like the number of referrals.

Let me know how I can help further.

Thanks,

Ann

Ann K. Bradley
Pa11ner
Duane Morris LLP
101 West Broadway, Suite 900
San Diego, CA 92101-8285
P: 619.744.2269 F: 619.744.2201
akbradley@duanemonis.com